**TERRANCE WALKER**
*Plaintiff, in propria persona*
212 Hillcrest Drive # 1
Reno, NV  89509
Tel: +1.775.971.8679
Email: walkerbillion@gmail.com

### IN THE UNITED STATES DISTRICT COURT FOR NEVADA

| | |
|---|---|
| Terrance Walker | : **CIVIL CASE NO.** 3:18-CV-0132-MMD (CBC) |
| Plaintiff, | :REPLY TO RESPONSE ON MOTION TO QUASH |
| vs. | :SUBPOENA TO NON-PARTY JAMES WINTERS |
| Intelli-heart Services Inc., | :RE: TRADE SECRET & BUSINES INFORMATION |
| Defendant. | : CHALLENGE TO SEALED EXHIBITS |

### I. BACKGROUND

Plaintiff is seeking to quash (EFC 66) a subpoena that was served on non-party James Winters due to his right to protect trade secrets and proprietary business information. This matter was filed with federal jurisdiction (EFC 4, pg 2-5). The subpoena was not limited to the tortious interference alleged on the part of Defendant in connection with the contract between Winters and Walker (EFC 4, para 117-118), which also involved contracting and federal rights (of Walker EFC 4, para 116) and monies emanating from the federal contracts under the US. Dept of Veteran Affairs ("VA") (as described in EFC 4) . Defendant's subpoena categories were so broad so as to include confidential business information and trade secrets between Walker's and Winter's that do not even involve Defendant. Defendant has not mentioned this information in any defense (EFC 26). Worse yet, Defendant appears (as stated at the hearing) to have served James Winters prior to providing Plaintiff on notice Jan 23, 2019 (at odds with Rule 45). Defendant does not say when service was effected on Winters but indicted it had already served James Winters by the date of the hearing, but serves a distorted response (EFC 69)

Defendant gets one thing right in its response (EFC 69, pg 2) as it concerns Plaintiff's claim of tortious interference: "The thrust of Walker's claims is that he did not get paid, or was not timely paid, by Winters for at least four IHS-VA contracts, due to IHS' alleged tortious interference….." ; Yet, the rest of that sentence and the remaining part of its response (EFC 69) are an amalgamation of distortions and unrelated or unsubstantiated legal assertions. Defendant

asks to file scurrilous supporting documents under seal (Ex 69, Exhibits 1-2) to which Plaintiff objects. See Div. III. E.

### A. DEFENDANT'S DISTORTIONS IN RESPONSE

Among the many misguided remarks (and new defenses) made by Defendant which neither have no bearing on this matter, are not substantiated, or are in dispute are that:

1) "IHS has denied that Walker was a bona fide subcontractor on any of its VA contracts. (See e.g. ECF 026, p. 4, ll. 18-27.) (See EFC 69 pg 2) *(no bearing on Defendant's false statements and fraud-related tort. See EFC 71, pg 3-4, 14-15; EFC 4, para 54-118)*

2) "Walker has not sued Winters in this action, but only IHS. (See generally Amended Complaint, ECF 004.)"    pg 2 (See EFC 69 pg 2) *(no bearing on Defendant's false statements and fraud-related tort. See EFC 71, pg 3-4, 14-15; EFC 4, para 54-118)*

3) "The crux of IHS' defense is that it did not interfere with Walker's contractual relationship with Winters, but merely ended its own business relationship with Winters." (See EFC 69 pg 2; EFC 72, pg 1 ) *(and, so…..?  Walker alleges that Defendant breached Winter's agreement in fraud in response to being reported for abuse of authority and illegally withholding/delaying payments. EFC 4, para 54-118; See EFC 71, pg 3-4, 14-15 )*

4) "IHS did not even know of Walker's existence until he began sending threatening emails to IHS in or about November of 2017." (See EFC 69 pg 3) *(no bearing on Defendant's false statements and fraud-related tort. See EFC 71, pg 3-4, 14-15; EFC 4, para 54-118)*

5) "IHS was perfectly within its rights to break up with Winters, and to the degree that there are any disputes over such a divorce, it is for Winters to assert such a dispute, not Walker, who has no standing to do so." (See EFC 69 pg 3)  *(not with the false statements and fraud alleged -  EFC 4, para 54-118; fraud-related tort. See EFC 71, pg 3-4, 14-15 )*

6) " if Winters wanted to assert a wrongful-termination claim against IHS, he would have to do so in the AAA arbitration forum. " (See EFC 69 pg 3)   *(irrelevant)  (no bearing on Defendant's false statements and fraud-related tort. See EFC 71, pg 3-4, 14-15; EFC 4,para. 54-118)*

7) "At no time did Walker have any contract, **subcontract**, agreement, or arrangement with IHS in any form, shape, or manner." (See EFC 69 pg 3) *( Though, Defendant was a subcontractor by definition FAR part 52.203-19(a); Far part 44.101   )*

8) "At no time did Walker have privity to any IHS contract, **subcontract**, or business agreements with IHS clients, including the VA" (See EFC 69 pg 3) *(defense of no privity to a "subcontract" was not alleged before (EFC 26); Nonetheless, Walker DID allege privity with Winter's subcontract EFC 4; para 33, 117.  Defendant's assertions have no bearing on this matter)*

9) "Walker claims to be a "subcontractor" of IHS, merely because he entered into a secret business relationship with Winters, who was not authorized by IHS to make such secret deals.

2

1  "(See EFC 69 pg 3) *(this is a distortion;  See EFC 4; para 32, 33, 117. Also, Defendant had not right to prohibit Winter's and Walker's contract given its admitted lack of contract with Walker AND a NO anti-assignment clause in Defendant's agreement with Winters. The only secret relationship in this matter is between Defendant and attorney Daniel Germain, their lawyer-pal who sent fraudulent emails to the VA about Winters and Walker. See EFC 71 pg 3-4, 14-15)*

10) "Walker's clandestine agreement with Winters was never known about or authorized by IHS. " (See EFC 69 pg 3) *(this is a distortion since Walker and Winters contracted freely as was their right;  See EFC 4; para 32, 33, 117. Also, Defendant had not right to prohibit Winter's and Walker's contract given its admitted lack of contract with Walker AND a NO anti-assigment clause in Defendant's agreement with Winters. The only thing clandestine is Defendant's termination of Winters, which it still has not revealed ANY contemporaneous documentation whereas it provided Winters prior notice of contract deficiencies AND Defendant (secretly)  seeks to withhold and/or seal all of its discovery)*

11) "IHS expressly prohibited Winters from making such side-deals: 13. Distributors inability to Contract for IHS: in spite of anything contained in this Agreement to the contrary, Distributor shall not have the right to make any contracts or commitments for or on behalf of IHS without first obtaining the express written consent of IHS" (See EFC 69 pg 3) *(this is a distortion since Walker and Winters contracted freely as was their right;  See EFC 4; para 32, 33, 117. Also, Defendant had no right to prohibit Winter's and Walker's contract given its admitted lack of contract with Walker AND a NO anti-assigment clause in Defendant's agreement with Winters. The only thing clandestine is Defendant's termination of Winters, which it still has not revealed ANY contemporaneous documentation whereas it provided Winters prior notice of contract deficiencies AND Defendant (secretly)  seeks to withhold and/or seal all of its discovery)*

12) "IHS went to great lengths to protect the confidentiality of its business information, including the Distributor Agreement, itself, which apparently Winters divulged to Walker" *(this is a distortion since Defendant points to no provision which states that Winters was forbidden from sharing his Distributor Agreement, which itself, was violative of FAR part 52.203-19. Defendant's assertions are, itself, proof that it violated restrictions on confidentiality and reporting of its fraud and abuse (of authority). FAR part 52.203-19.   This was no top-secret contract and no provision provided that the agreement itself could not be shared. Nor does this statement relate to the motion)*

13)  "Winters violated the terms of this agreement in many ways, including by: (1) divulging the contents of the Distributor Agreement to Walker (a § 8(9) violation); (2) discussing IHS clients, including the VA, with Walker (violations of § 8(3) and § 8(5)); and divulging confidential financial information, including that regarding payment on contracts, earnings by Winters, and that concerning IHS' customers, including the VA (violations of §§ 8(2)-(3), §8(5), and §§ 8(8)-(9). (See IHS' Termination Letter to Winters, produced in this litigation as IHS-00176, Exhibit 2 (requested to be produced under seal), at ¶¶ 5 and 7). IHS learned of these violations by Winters, it commenced an investigation, and ultimately **fired** him. "  (See EFC 69 pg 3) *(this is a distortion since Defendant points to no provision which states that Winters was forbidden from sharing his Distributor Agreement or earnings, which itself, was violative of FAR part 52.203-19.  This was not a top-secret contract. It was for HEART MONITORS (EFC 4, ex 2) No provision provided that Defendant's agreement itself could not be shared or  that Winters could not share his earnings. Defendant's assertions are, itself, proof that it violated restrictions*

3

*on confidentiality and reporting of its fraud and abuse (of authority).FAR part 52.203-19 The rest of the assertions have not been proven and are bare assertions which the Defendant has not provided ANY proof.  Nor does Defendant's statement relate to the motion to quash. Winter's was not an EMPLOYEE subject to being **fired** under its Distributor agreement, but a subcontractor by definition FAR part 52.203-19(a); Far part 44.101 (EFC 4, Ex. 2,unsigned version)*

The Court should disregard these blatant distortions of Defendant.

**B. DEFENDANT'S DEFENSE TO PLAINTIFF'S MOTION TO QUASH**

Although Defendant seeks an unlimited exposition of documents and communication between Winters and Walker in its subpoena, Defendant never said such was the basis for its termination of Winter's contract (IHS-00176), nor was such mentioned in any defense (EFC 26). Defendant claimed lack of information on almost every line of its answer (EFC 26). Yet, lack of information is no reason for Defendant to have breached and terminate Winter's contract (IHS-00176). It is too late for Defendant to go on a fishing expedition for grounds to justify the ill-gotten termination of Winter's agreement with a broad subpoena. Defendant portrayed its defense hinging on Winter's supposed inability to subcontract, albeit, without a valid anti-assignment clause.

**II. LAW**

**A. QUASHING A RULE 45 SUBPOENA FOR TRADE SECRETS &  BIZ. INFO**

Courts may quash or modify a subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). In analyzing an objection made under Rule 45(d)(3)(B)(i), the Court first must determine if the subpoenaed party has shown that the requested information is protected as a trade secret or confidential commercial information. *See., e.g., Gonzales v. Google, Inc.,* 234 F.R.D. 674, 684 (N.D. Cal. 2006). The party resisting discovery "must make a strong showing that it has historically sought to maintain the confidentiality of this information." *Id.* (quoting *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,* 163 F.R.D. 329, 338 (N.D. Cal. 1995)). Allegations of harm or prejudice must be supported with specific examples or articulated reasoning. *AFMS LLC v. United Parcel Serv. Co.,* 2012 WL 3112000, * 3 (S.D. Cal. July 30, 2012) Where a party meets that initial burden of showing the information is a trade secret or confidential commercial information, "the burden shifts to the requesting party to show a `substantial need for the testimony or material that cannot be otherwise met without the undue hardship.'" *Gonzales,* 234 F.R.D. at 684. Courts have discussed "substantial need" as requiring a showing that "the requested discovery is relevant and essential to a judicial determination of [the

party's] case." *Id.* at 685 (citing *Upjohn Co. v. Hygieia Biological Labs.,* 151 F.R.D. 355, 358 (E.D. Cal. 1993)). The Court must "balance the need for the trade secrets [or confidential information] against the claim of injury resulting from disclosure." *Id.* (citing *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1025 (Fed. Cir. 1986)). "The determination of substantial need is particularly important in the context of enforcing a subpoena when discovery of a trade secret or confidential commercial information is sought from non-parties." *Id.* (citing *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 814 (9th Cir. 2003)).

Where the requesting party establishes a substantial need, courts will look to whether procedures exist to mitigate any burden or prejudice to the nonparty. *See* Rule 45(c)(3)(C)

### 1. A PARTY *CAN* MOVE TO QUASH A SUBPOENA TO A THIRD PARTY UNDER THE 2013 RULES AMENDMENTS

Several courts hold that, under the new 2013 rule Amendments:

"A party, although not in possession or control of the materials sought in a subpoena duces tecum and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under Rule 45(c)(3) if it has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. (citation omitted)." *Orchestrate HR, Inc. v. Trombetta,* 3:13-CV-2110-P, 2014 WL 884742, at *5 (N.D. Tex. Feb. 27, 2014)

Defendant wastes the court's time with 5 pages of old case-law.(EFC 69, pg 7-12)

This is especially true if the Notice was served AFTER it was served. F.R.Civ.P. 45(a)(4).

### 2. TRADE SECRET OR COMMERCIAL INFORMATION SHOWING

"Trade secret or commercially sensitive information must be 'important proprietary information' and the party challenging a subpoena must make 'a strong showing that it has historically sought to maintain the confidentiality of this information.'" Id. (quoting Compaq Computer Corp. v. Packard Bell Electronics, Inc., 163 F.R.D. 329, 338 (N.D. Cal. 1995)).

Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697 (D. Nev. 1994).

### B. SCOPE OF DISCOVERY AS ORDERED AND MANDATED BY RULE 26

This court has stated, "the Court clarifies that the scope of discovery in this case is limited to the relevant issues as pled in the plaintiff's amended complaint (ECF No. 4) and defendant's amended answer (ECF No. 26)." ( EFC 68, pg 2)

5

It must also be noted by the court, although not raised in Plaintiff's motion, following the 2015 amendments, Rule 26 explicitly requires that discovery, including non-party discovery, be proportional to the needs of the case. Fed. R. Civ. P. 26(a)(1). Also, given the burden and expense that discovery, particularly discovery of ESI, can impose, nonparties "deserve extra protection from the courts." *High Tech Med. Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995)(citing *United States v. Columbia Broad. Sys.*, 666 F.2d 364, 371-72 (9th Cir. 1982)).

1.  **IF WINTERS WAS ENGAGING IN *OTHER* GOVERNMENT CONTRACTS, HE WAS NOT RESTRICTED FROM SO DOING AND SUCH IS NOT GERMANE**

Federal law, 48 CFR § 52.203-6(a) Restrictions on Subcontractor Sales to the Government.", dictates that Federal contractors, like Defendant, "shall not enter into any agreement with an actual or prospective subcontractor, nor otherwise act in any manner, which has or may have the effect of restricting sales by such subcontractors directly to the Government". This is a term which is included in Defendant's VA Contracts (See e.g. EFC 4, Ex. 7, pg 33) and forbids Defendant from restricting direct contract sales to the VA or any other governmental entity.

If Defendant is claiming it made such a restriction, it presents more evidence for Plaintiff's claim.  Also, if Defendant is stating evidence pertaining to Winter's selling directly to the government supports a defense, its argument is not supported by 48 CFR § 52.203-6(a)

2.  **DEFENDANT CANNOT RESTRICT WINTERS FROM SUBCONTRACTING WITHOUT AN ANTI-ASSIGNMENT CLAUSE -- WHICH IT DID NOT HAVE IN ITS CONTRACT WITH WINTERS**

Defendant claims "Walker's …..agreement with Winters was never…..authorized by IHS" (See EFC 69 pg 3) alluding to its contract term with Winters:

"Distributor shall not have the right to make any contracts or commitments for or on behalf of IHS without first obtaining the express written consent of IHS" (See EFC 69 pg 3)"

Honorable Judge Du has already ruled against such a construction as Defendant urges:

" 'To be effective, an anti-assignment clause should contain a <u>specific prohibition on the power to make an assignment</u> and specifically <u>state that any attempted assignments will be void or invalid</u>.' (citations omitted)" <u>Erection Co. v. Archer W. Contractors, LLC</u>, No. 2:12-CV-00612-MMD-NJ, 2015 WL 926782, at *7–8 (D. Nev. Mar. 4, 2015) (finding that the agreement "contains no express prohibition" on the power to make an assignment. Where the subcontract stated "This Subcontract shall not be subcontracted or assigned in whole or in part by the subcontractor [TEC] except with the written consent of the Company [Postel]. Any attempt to effectuate a subcontract or an assignment shall be null and void *ab initio"* though holding the Miller Act claim pre-empted)  [Note: Walker does assert a Miller Act, Construction contract claim]

In Winter''s distibutor Agreement (EFC 4, Ex. 2) there was not "**specific prohibition on the power to make an assignment**" (of subcontracting) NOR, was there any term which

specifically "**state[d] that any attempted assignments will be void or invalid**" <u>Erection Co. v. Archer W. Contractors, LLC</u>, Id. Defendant's agreement with Winters merely states that: "Distributor shall not have the right to make any contracts or commitments for or on behalf of IHS without first obtaining the express written consent of IHS" (See EFC 69 pg 3)"
Neither the word "subcontract", "assign", "restrict", nor "void" appear in Winter's agreement (EFC 4, Ex. 2, unsigned version). Thus, Winter's was free to subcontract. <u>Erection Co.</u> Id.

### III. ANALYSIS

Too frequently, a party perceives that it can gain leverage by trying to use discovery on this basis as a pressure point to secure an unfair tactical or strategic advantage. The purpose of the request may be to cause delay, distract the court from the merits of the dispute, to squeeze the opposing party to make him or her feel further at risk, or to simply wear down an adversary with the potential cost associated with this discovery.  This is precisely what Defendant seeks to do with its far-reaching subpoena and its meritless bare-assertions in response to Plaintiff's motion to quash.

**A. WALKER *CAN* ATTACK A SUBPOENA TO A NON-PARTY, EPECIALLY IF SERVED BEFORE NOTICE.  DEFENDANT'S PRE-2013 DECISIONS ON THIS POINT ARE BAD LAW**

Court's overwhelmingly hold that they parties have standing to make a motion to quash a third-party subpoena alleging a"personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. (citations omitted)" ***Orchestrate HR, Inc. v. Trombetta*, 3:13-CV-2110-P, 2014 WL 884742, at *5 (N.D. Tex. Feb. 27, 2014)** CROSS-FIT, INC. v. NATIONAL STRENGTH AND CONDITIONING ASSOCIATION Case No. 14cv1191-JLS(KSC) (S.D. October 7, 2016)(quashing subpoena seeking "un-redacted copies of certain publishing agreement")

    Defendant has not shown that the service of the subpoena was done BEFORE it provided notice to Plaintiff, as required.  F.R.Civ.P 45 (a)(4) (*Notice to Other Parties Before Service*) This Clearly, Plaintiff has standing to assert. The Jan. 23, 2019 email service was late and defective. (See EFC 66 para 1, 5)

**B. WALKER MADE A STRONG SHOWING THAT HE HISTORICALLY SOUGHT TO PROTECT TRADE  SECRETS AND COMMERCIAL INFORMATION**
    As already urged on Walker's motion to quash (EFC 66),   Walker historically sought to protect trade secrets and commercial information, as is shown by the contract with Winters (EFC 4, Exhibit 1, page 2)  ("WALKER is a government bidding consultant …..[with] trade secrets")

Also see "CONFIDENTIALITY" agreement provisions (EFC 4, Ex 1, page 2-3) which requires each party not to reproduce such trade secret, buyer, or supplier information without written consent. Walker, further, shown how this is 'important proprietary information' and which he historically sought to "maintain the confidentiality of'" Id. (quoting Compaq Computer Corp. v. Packard Bell Electronics, Inc., 163 F.R.D. 329, 338 (N.D. Cal. 1995)). (EFC 4, Exhibit 1, page 2) ("WALKER is a government bidding consultant …..[with] trade secrets")

Walker has, notably, landed millions of dollars in contracts (EFC 4, para. 30-53) and has done so outside of the scope of the VA contracts of Defendant. Walker has also been doing a variety of government contract work and consulting, even before Defendant signed a contract with Winters. (EFC 4, para 7, 8, 33). Now that Defendant is without anyone to land their contracts, if Walker's expertise is disclosed, it would cause substantial economic harm to the competitive position of the entity (Walker) from whom the information was obtained. Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697 (D. Nev. 1994). As of now, Walker is free to win bids for other heart monitoring companies. If his techniques are discovered by Defendant, Walker would suffer harm from having to compete with someone (Defendant) who, basically, has set on a path to steal his techniques to win bids.. Defendant is not entitled to benefit from Walker's specialized knowledge, given it has terminated Winter's contract.

Defendant has not disputed Walker's contentions. Defendant merely claims that this is a "boilerplate" objection. Defendant's claim is tenuous. As another intentional tort case states,

"Plaintiff argues that, because Defendants have not offered any evidence showing they have a right or privilege to the documents subpoenaed, they have not met their burden to show that they have a personal right or privilege to the requested documents or a sufficient interest in them. In their motion to quash, however, Defendants claim that Plaintiff seeks information communicated between Defendants, whom Plaintiff asserts are its competitors, and the non-parties, who work closely with Defendants on complex insurance agreements and coverage, and that the subpoenas require the non-parties to disclose trade secrets and confidential information. The Court finds that these allegations demonstrate a sufficient interest in the documents to establish Defendants' standing"
***Orchestrate HR, Inc. v. Trombetta,* Id.**

Similar to Walker's case, the requesting party wanted lists of other contracts not relevant to the case. (though the requesting party was plaintiff in **ORCHESTRATE** Id.)

In Walker's case, it is Defendant that is arguing that Plaintiff has "not offered any evidence showing they have a right or privilege to the documents subpoenaed" or "privilege to the requested documents or a sufficient interest in them"

8

Plaintiff (similar to the movant in **ORCHESTRATE** Id.**)** argues that Defendant:

1) "seeks information communicated between" Walker and Winters, with whom Plaintiff "assert are its competitors, and the non-parties, who work closely with [Plaintiff] on complex" **government** contracts.

2) "the subpoenas require the non-parties to disclose trade secrets and confidential information."

Walker, like the movant in **ORCHESTRATE** Id. makes "allegations demonstrate a sufficient interest in the documents" establishing standing and makes the required showing. Also see *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,* 163 F.R.D. 329, 338 (N.D. Cal. 1995)).

Walker's argument is supported with specific examples or articulated reasoning. *AFMS LLC v. United Parcel Serv. Co.,* 2012 WL 3112000, * 3 (S.D. Cal. July 30, 2012)

### C. DEFENDANT HAS NOT MADE A SHOWING OF SUBSTANTIAL NEED THAT THEY NEED INFORMATION OR MATERIAL OUTSIDE OF THE CONFINES OF THE WORK THAT WINTER'S DID FOR DEFENDANT

The Court must "balance the need for the trade secrets [or confidential information] against the claim of injury resulting from disclosure." *Id.* (citing *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1025 (Fed. Cir. 1986)). "The determination of substantial need is particularly important in the context of enforcing a subpoena when discovery of a trade secret or confidential commercial information is sought from non-parties." *Id.* (citing *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 814 (9th Cir. 2003)).

1. **"other "deals" with Walker are outside the scope of the claim (EFC 4) and the Defense (EFC 26)**

Defendants content that they

"have asserted that Walker violated the terms of his Distributor Agreement by 'contracting' with Walker. Defendants are entitled to know the scope of such agreements—whether or not they limited to IHS contracts. For example, Defendants will be able to determine whether Winters was unavailable to work on IHS matters because he was too busy working on "*other deals with Walker*." (EFC 69, pg 15)

Defendant continues with other specious arguments concerning "other deals" :

"if such records exist for contracts outside of the IHS-VA contract context, then such records would tend to show coordination between Walker and Winters, making Winters unavailable for performance of IHS work and otherwise harming IHS' business, including if evidencing a violation the non-compete clauses of the Distributor Agreement. This would be relevant to support IHS' defenses and to undermine Walker's "pretext" theory."   (EFC 69, pg 19). Also, claiming such would be relevant to establish Walker's "bad faith" , "unclean hands" and bear on Walker's "credibility". Defendant claims "payments" outside of the VA contract show "economic

harm" (EFC 16)

Undeterred by its lack of cited authority, Defendant rambles on,

"this evidence may show a timeline of Winters communicating with Walker about this lawsuit, including after the lawsuit was filed, which would go to the issue of Winters' bias and violation of the confidentiality restrictions of the Distributor Agreement" (EFC 69, pg 19)

      Defendant's argument falls flat because the " scope of such agreements" is a matter of law, not fact (EFC 4, Ex. 1). Walker's contract was not limited to working with Winter's deals involving Defendant and the VA. Walker's Contract does not even mention Defendant and that much is clear from the face of the contract (EFC 4, Ex. 1) Defendant can assert Winters was "unavailable to work" without a wholesale fishing expedition of texts, phone records, emails, etc. not concerning this matter. Defendant should already have such materials from the VA officials, or its staff, evidencing such claims that Winters was "unavailable to work".  As of now, it's failed. That does not mean "*other deals with Walker*" Defendant's bad faith and unclean hands fail as a matter of law because courts "refuse to acknowledge the doctrine of unclean hands as a valid defense to an intentional-tort claim" <u>Wood v. Cowart Enters., Inc.,</u> 809 So.2d 835, 837 (Ala. Civ. App. 2001) (citation omitted) and Defendant has not shown that Courts do. Also, Winter's was not foreclosed from making other deals because of Winter's agreement with Defendant due to the lack of an anti-assignment clause  <u>Erection Co. v. Archer W. Contractors, LLC</u>, Id.

      If Walker communicated with Winters after the lawsuit after Defendant BREACHED the agreement multiple times, it would have no bearing on it since this lawsuit was fired after such final, material breach (Defendant calls a termination) (IHS-00176, Feb. 8, 2018)(Compare EFC 4, Sept. 2018).  Even presuming there was a valid confidentiality agreement (when such is questionable in light of FAR part 52.203-19), Winters was not obligated to, then, follow Defendant's contract due to the Defendant's, admitted, termination thereof.

      That Winters was "unavailable to work"  because of "*other deals with Walker*" was not presented as a Defense, anyway (EFC 26).   Defendant is, thus, foreclosed from asserting "*other deals with Walker*" as some sort of Defense. This information sought has no conceivable bearing on the case. Miller, 141 F.R.D. at 296. There is no showing that there is `substantial need for the testimony or material that cannot be otherwise met without the undue hardship.'" *Gonzales,* 234

F.R.D. at 684.  Nor is there a showing that "the requested discovery is relevant and essential to a judicial determination of [the party's] case." *Id.* at 685 (citing *Upjohn Co. v. Hygieia Biological Labs.,* 151 F.R.D. 355, 358 (E.D. Cal. 1993)).

### 2. Whether Walker "intentionally interfered" with Defendant is outside the scope of the Defense (EFC 26) and is not cognizable as neither an "unclean hands" defense, nor a "bad faith" defense

Defendant distorts the record claiming (falsely), "Walker *knew* non-compete clauses, as he had a copy of the IHS-Winters' agreement that he produced as Exhibit 2 to his Amended Complaint. Thus, such documents would be relevant to show that Walker acted in bad faith—essentially interfering with IHS' contractual relations with Winters" (EFC 69, pg. 16)

Nonetheless, had violation of the purported non-compete clause been Defendant's cause for breaching its contract with Winters it would have been in the termination documentation (IHS-00176). Also, it would have been asserted as a defense.  Yet, "interfering with IHS' contractual relations with Winters" was never presented as a defense (EFC 26).

Furthermore, Defendant's claim this  "unclean hands" defense relates to Plaintiff's intentional tort claim is specious (EFC 4, para 117-118).  In fact, most courts "refuse to acknowledge the doctrine of unclean hands as a valid defense to an intentional-tort claim" <u>Wood v. Cowart Enters., Inc.,</u> 809 So.2d 835, 837 (Ala. Civ. App. 2001) (citation omitted).

Defendant also fails to cite any authority to establish that relevance of its "unclean hands" and "bad faith" defenses, so they are waived.

Defendant is, thus, foreclosed from asserting that Walker "intentionally interfered" with Defendant's contract with Winters as some sort of Defense. This information sought has no conceivable bearing on the case. Miller, 141 F.R.D. at 296. There is no showing that there is `substantial need for the testimony or material that cannot be otherwise met without the undue hardship.'" *Gonzales,* 234 F.R.D. at 684.  Nor is there a showing that "the requested discovery is relevant and essential to a judicial determination of [the party's] case." *Id.* at 685 (citing *Upjohn Co. v. Hygieia Biological Labs.,* 151 F.R.D. 355, 358 (E.D. Cal. 1993)).

### 3. WALKER'S "methods, techniques, trade secrets, proprietary Information" are facially evident from the contract ("marketing strategy", "price points", "competition" and "market conditions" See EFC 4, Ex 1, pg 1) , are not boilerplate, and have no bearing on Defendant's defenses (EFC 26)

11

Defendant, unconvincingly, asserts that Walker's "proposals, methods, techniques, trade secrets, proprietary information, and sales" (EFC 69, pg 20) must be boilerplate because they were, supposedly, not explained. Yet, like the movant in **ORCHESTRATE** Id. Walker makes "allegations demonstrate a sufficient interest in the documents"  See Div. III. B..  Thus, allegations are not boilerplate and Defendant cites no authority which holds so.

Defendant did not make any showing of need for methods, techniques, trade secrets, proprietary   Information" ("marketing strategy", "price points", "competition" and "market conditions") and such was not mentioned in any defense (EFC 26) This information sought has no conceivable bearing on the case. Miller, 141 F.R.D. at 296. There is no showing that there is `substantial need for the testimony or material that cannot be otherwise met without the undue hardship.'" *Gonzales,* 234 F.R.D. at 684.  Nor is there a showing that "the requested discovery is relevant and essential to a judicial determination of [the party's] case." *Id.* at 685 (citing *Upjohn Co. v. Hygieia Biological Labs.,* 151 F.R.D. 355, 358 (E.D. Cal. 1993)).

**D. PLAINTIFF'S BACKGROUND INFORMATION ON HIS COMPLAINT AND SUBMISSION OF HIS PROOF HE'S ALWAYS SOUGHT HISTORICAL PROTECTION OF HIS TRADE SECRETS DOES NOT "OPEN THE DOOR" FOR DEFENDANT TO ENGAGE IN BROAD, UNLIMITED, DISCOVERY IN HIS COMMUNICATIONS AND OTHER DEALINGS WITH WINTERS**

Defendant tries to justify is broad discovery request by stating that (EFC 69, page 14)"Walker also waived his confidentiality privilege for the Winters-Walker documents, when he placed the subject of his business relationships with Winters"  (Also see EFC 69, page 24)

Yet, Defendant fails to account for the fact that Walker's claim only relates to the alleged misrepresentations (and omissions) , and other actions that Defendant did in relation to Walker's "expected gain from the VA contracts under the subcontract that Walker had with Winters" (EFC 4,  para 21) .( Also See EFC 4, para. 30-118)

This does not cover the entire "subject of his business relationships with Winters" (See e.g. EFC 4, Ex 1, no mention of the Defendant or the VA appears) The scope of said agreement is purposefully broad, unlike the allegations pertaining to the Defendant and the VA (in EFC 4).

The fact that Plaintiff mentions he is an expert government contract consulting who has been doing a variety of government contract work and consulting, even before Defendant signed a contract with Winters. (EFC 4, para 7, 8, 33), does not relate to the claim or defense (See EFC 26) such that it requires Plaintiff to divulge his trade secrets.  Walker's claim does not cover the entire

"subject of [Walker's] business relationships with Winters". Furthermore, this information sought has no conceivable bearing on the case. Miller, 141 F.R.D. at 296.

### D. WALKER NEED NOT PRODUCE A PRIVILEGE LOG OF TRADE SECRETS

Defendant, lastly, assert that Walker must produce a privilege log. (EFC 69, pg 14). Plaintiff did not assert any attorney client or work product privilege on its motion to quash (EFC 66). Walker asserts <u>trade secret and business information privacy rights</u>. Defendant cites no authority requiring these to be in a privilege log. Nor does Plaintiff have control over Winters to effectuate a log.

### E. DEFENDANT HAS NOT ESTABLISHED SPECIFIC HARM TO FILE ITS INTERROGATORIES UNDER SEAL

conclusory assertion that the Exhibits (EFC 69, Ex 1-2) contain "confidential business information" is insufficient to meet its burden of making a particularized showing of good cause for each excerpted page it seeks to file under seal. Defendant must make the particularized showing for each document it seeks to seal by showing that "specific prejudice or harm will result." *See, e.g., San Jose Mercury News, Inc. v. U.S. Dist. Ct.,* 187 F.3d 1096, 1103 (9th Cir. 1999).' *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003 (citing *Beckman Ind., Inc. v. Internat'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992)). <u>KRISTENSEN v. CREDIT PAYMENT SERVICES, INC</u> Case No. 2:12-cv-00528-APG-PAL (D. Nev. November 19, 2014 )

**WHEREFORE**, PLAINTIFF requests that Defendant subpoena for James Winters (Exhibit 1) be quashed, in its entirety. The Court should require Defendant to make their required showing before sealing Exhibits 1-2 of EFC 69.

RESPECTFULLY SUBMITTED,

/s/ Terrance Walker_____   Dated Feb.16, 2019

Terrance Walker

CERTIFICATE OF SERVICE

The undersigned certifies that the undersigned is over the age of 18 and that on Feb 16, 2019, that he personally served all parties to this case by the electronic filing system one copy of this filing to the parties at the address listed below.

/s/ TERRANCE WALKER

signed, Terrance Walker/s/ TERRANCE WALKER
Copy to: Will Geddes, Esq. THE GEDDES LAW FIRM, P.C. 8600 Technology Way, Suite 107 Reno, Nevada 89521
Phone: (775) 853-9455 Fax: (775) 853-6899 E-Mail: Will@TheGeddesLawFirm.com