DEFENDANT'S FEB. 5, 2019 INTERROGATORY RESPONSE

EXHIBIT  NUMBER  "1"

DEFENDANT'S FEB. 5, 2019 INTERROGATORY RESPONSE

1  WILLIAM J. GEDDES
   Nevada Bar No. 6984
2  THE GEDDES LAW FIRM, P.C.
   8600 Technology Way, Suite 107
3  Reno, Nevada 89521
   Phone: (775) 853-9455
4  Fax: (775) 299-5337
   Email: Will@TheGeddesLawFirm.com
5  *Attorneys for Defendant Intelli-Heart Services, Inc.*

6                **UNITED STATES DISTRICT COURT**

7                      **DISTRICT OF NEVADA**

8  TERRANCE WALKER, an individual,          CASE NO:  3:18-cv-00132-MMD-CBC

9                  Plaintiff,
                                                   **DEFENDANT'S**
10 vs.                                      **RESPONSES TO PLAINTIFF's**
                                                   **Interrogatories**
11 INTELLI-HEART SERVICES, INC.,             **(Set No. 1, Nos. 1-24)**

12                  Defendant.

13

14 To:       Plaintiff Terrance Walker

15 From:     Defendant Intelli-Heart Services, Inc. and its attorney, William J. Geddes

16 Set No.   One (Interrogatory Nos. 1-24)

17         Defendant Intelli-Heart Services, Inc. ("Defendant" and "Responding Party"), by and through

18 its counsel William J. Geddes, of the Geddes Law Firm, P.C., herein responds to the interrogatories

19 propounded by Plaintiff, Set No. 1, Nos. 1-24, pursuant to Federal Rule of Civil Procedure ("Fed. R.

20 Civ. P.") 33, upon the objections stated herein, as follows.

21 **I.    PRELIMINARY STATEMENT**

22         Defendant has not yet completed formal discovery of the witnesses and parties to this case, nor

23 has Defendant completed its own internal investigation, with respect to this litigation. Accordingly, the

24 following responses are based upon the limited information and documents that are presently available

25 and known to Defendant.  The following interrogatory responses are given without prejudice to

26 Defendant's right to produce evidence of any subsequently discovered fact or facts which this

27 responding party may later recall. Defendant, accordingly, reserves the right to change any and all

28 answers herein as additional facts are ascertained, analyses are made, and investigations are completed.

The Geddes Law Firm, P.C.,
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  The answers contained herein are made in a good-faith effort to supply as much information as is
2  presently known, but should in no way be to the prejudice of this Responding Party in relation to
3  further discovery or investigation.

4  **II.     RESPONSES TO INTERROGATORIES**

5  <u>INTERROGATORY NO. 1</u>

6         Identify the full name, business addresses, email address, and telephone numbers of each
7  individual with whom Defendants have discussed or consulted with regarding any of the facts or
8  allegations set forth in the Complaint (EFC 4) in this matter and the dates of each such discussion.

9  <u>RESPONSE TO INTERROGATORY NO. 1</u>

10         OBJECTION: overly broad and unduly burdensome with respect to the phrase, "any of the facts
11  or allegations set forth in the Complaint (EFC 4) in this matter."" *See Krause v. Nev. Mut. Ins. Co.*, No.
12  2:12-cv-00342-JCM-CWH, 2014 U.S. Dist. LEXIS 14872, at *16 (D. Nev. Feb. 6, 2014) ("A discovery
13  request is overly broad and unduly burdensome on its face if it uses an omnibus term such as 'relating
14  to,' 'pertaining to,' or 'concerning' to modify a general category or broad range of documents or
15  information"") quoting *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 261 (E.D. Wisc. 2013).
16  This interrogatory ostensibly seeks the identity of persons concerning any "fact" or "allegation" alleged
17  in the *Amended Complaint*, which covers a large number of alleged facts, whether core facts or fringe
18  or contextual facts.  Moreover, this interrogatory arguably seeks information concerning myriad,
19  tangential business operations and contracts occurring prior to any communication by Plaintiff to
20  Defendants concerning his dispute and prior to the filing of any legal pleading in this action.
21  OBJECTION:  vague and ambiguous as to time frame, including as to whether this interrogatory seeks
22  the identity of persons involved in communications prior to the notification by Plaintiff of any dispute
23  to Defendant, or prior to the filing of the *Amended Complaint*, or after the filing of the amended
24  complaint.    OBJECTION:  vague and ambiguous as to the phrase, "each individual with whom
25  Defendants have discussed or consulted with regarding any of the facts or allegations set forth in the
26  Complaint (EFC 4) in this matter," including because it is not clear whether the question requests
27  information concerning pre-litigation conversations regarding any topic that might be considered part
28  of any alleged "fact" or allegation of the pleadings, including wide-ranging contracts and business

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-8455

1  operations, or whether the interrogatory seeks information confined to the core allegations of the
2  amended complaint. OBJECTION: not relevant and not reasonably calculated to lead to the discovery
3  of relevant evidence, to the degree that this interrogatory, which ostensibly seeks the identity of persons
4  with whom communications were held regarding any alleged "fact" or allegation of the *Amended*
5  *Complaint*, seeks information concerning myriad business operations not relevant to the claims of this
6  case. As well, information concerning Responding Party's communications with its attorney William
7  Geddes, all of which occurred *after* the filing of the above-captioned lawsuit, is not relevant to the
8  claims of this case, nor is such information reasonably calculated to lead to the discovery of relevant
9  evidence.

10  Notwithstanding these objections, and without waiving them, Defendant responds as follows:

11  (1) William Geddes, Esq., The Geddes Law Firm, P.C., 8600 Technology Way, Suite 107,
12  Reno, NV 89521, 775-853-9455, will@thegeddeslawfirm.com, all such communications occurring
13  after the filing of ECF 004, during the period of September 7, 2018, to the present;

14  (2) Daniel Germain, Esq., Rosman & Germain LLP, 16311 Ventura Blvd Ste 1200, Encino, CA
15  91436, (818) 788-0885, Germain@lalawyer.com, such communications occurring during the
16  approximate time frame of December 2017 through May of 2018;

17  (3) Vanessa Parsons, CEO of Intelli-Heart Services, Inc., c/o William Geddes, Esq., The Geddes
18  Law Firm, P.C., 8600 Technology Way, Suite 107, Reno, NV 89521, 775-853-9455,
19  will@thegeddeslawfirm.com, such communications occurring during the approximate time frame of
20  when Intelli-Heart Services, Inc. first learned of Terrance Walker in November of 2017 until January of
21  2019;

22  (4) Danny Weisberg, President of Intelli-Heart Services, Inc., c/o William Geddes, Esq., The
23  Geddes Law Firm, P.C., 8600 Technology Way, Suite 107, Reno, NV 89521, 775-853-9455,
24  will@thegeddeslawfirm.com, such communications occurring during the approximate time frame of
25  when Intelli-Heart Services, Inc. first learned of Terrance Walker in November of 2017 until January of
26  2019;

27  (5) Andrew Simonian, Consultant Operations for Intelli-Heart Services, Inc., c/o William
28  Geddes, Esq., The Geddes Law Firm, P.C., 8600 Technology Way, Suite 107, Reno, NV 89521, 775-

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  853-9455, will@thegeddeslawfirm.com, such communications occurring during the approximate time
2  frame of when he came on as an independent contractor to IHS on March 1, 2018 until now, from the
3  time he learned of Plaintiff's complaint until now.

4  Moreover, responding party further responds as follows: Pursuant to Fed. R. Civ. P. 33(d),
5  information responsive to this interrogatory may be determined by examining, auditing, compiling,
6  abstracting, or summarizing Defendant IHS' business records or electronically stored information,
7  consisting of emails and other records, identified below. The burden of deriving or ascertaining such
8  additional information responsive to this interrogatory will be substantially the same for Plaintiff and
9  Responding Party. Accordingly, pursuant to Fed. R. P. 33(d), Responding Party further responds to this
10 interrogatory by: (1) specifying the records that must be reviewed, in sufficient detail to enable the
11 interrogating party to locate and identify them as readily as the responding party could; and (2) giving
12 the interrogating party a reasonable opportunity to examine and audit the records and to make copies,
13 compilations, abstracts, or summaries of such records (which have already been produced in this
14 litigation). Such business records or electronically stored information are those records produced in
15 this litigation, identified as follows: IHS00083-88 (James Winters' Email regarding his relationship
16 with Terrance Walker); IHS00089-90 (Email: Threatening Breach); IHS00091-00094 (Email: Re: Fw:
17 James Winters Commissions from July to Present); IHS00095 (Andrew Simonian Email to James
18 Winters re Acknowledgment Points re Walker); IHS00096-00108 (I.H.S.-Winters-Distributor Agrmt);
19 IHS00139-00140 (James Winters Signed Contract); IHS00141 (Checks cashed by JW from Intelli-
20 Heart); IHS00142-00145 (Email Thread: Subcontractor payment: Walker Requests VA Discontinue
21 Payments on VA24617C0183); IHS00146 (Danny Weisberg email Disclaiming that Walker has no
22 affiliation or Contract with I.H.S., also noting I.H.S. Relationship with James Winters is suspended);
23 IHS00148-00153 (Emails from Walker re Claim that I.H.S. is Violating FAR 52.242-5 - Payments to
24 Small Business Subcontractors and 52.232-40(c)); IHS00154 (Email from James Winters re his
25 "subcontract" with Terrance  Walker and request for payments from I.H.S. to pay Terrance Walker);
26 IHS00155-00161 (Emails regarding Terrance Walker demands and Dan Germain disclaimer of any
27 I.H.S.-Terrance Walker affiliation); IHS00162 (JW email alleging to the VA that I.H.S. won't pay
28 James Winter because it needs to pay lawyer re Walker's correspondence); IHS00176 (Distributor

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89501
Phone 775-853-9455

4

1   Termination Letter); IHS00177-00189 (signed Distributor Agreement with JW); IHS00190 (Text
2   Message Between Vanessa Parsons and James Winters Re Terrance Walker); IHS00191-192 (Payment
3   History to JW up to Breach Notice); and IHS00219-00226 (attachments to James Winter's email of IHS
4   00083-00088).

5   **INTERROGATORY NO. 2**

6       Identify all documents showing Defendant's payments from (and corresponding invoices to) the
7   VA in regardsto VA contracts VA24617C0183, VA24918C10329, VA26317D0109, and
8   VA69D17D0167.

9   **RESPONSE TO INTERROGATORY NO. 2**

10      OBJECTION: not relevant and not reasonably calculated to lead to the discovery of relevant
11  evidence, as this interrogatory, seeks documents concerning Responding Party's private contracts with
12  the Veterans' Administration, to which Plaintiff was not a party and had no contractual rights or privity.
13  The lawsuit concerns Defendant's alleged tortious interference with the alleged contractual relations
14  with James Winters and Plaintiff, not Defendant's own contractual relations with the Veteran's
15  Administration, to which Plaintiff was not a party and to which Plaintiff had no contractual privity or
16  rights against Responding Party.    OBJECTION: calls for confidential business information.
17  Responding Party expressly prohibited James Winters from entering into any contract or commitment
18  with any third party for or on behalf of IHS, including you.  This prohibition, contained in the
19  Distributor Agreement is set forth as follows: "**Distributors Inability to Contract for IHS**: In spite of
20  anything contained in this Agreement to the contrary, Distributor shall not have the right to make any
21  contracts or commitments for or on behalf of IHS without first obtaining the express written consent of
22  IHS." (*Distributor Agreement*, § III (14), produced as a confidential document at IHS-00181-00182
23  (emphasis in original).)  Moreover, Responding Party expressly reserved its right of confidentiality to
24  its trade secrets, commercially useful confidential information, proprietary and/or private information,
25  in § III (7) of its Distributor Agreement, set forth as follows:

26          IHS's competitive success depends upon the proper
27          safeguarding of trade secrets and confidential information
            developed within IHS or entrusted to by its customers. Some of
28          the information Distributors receive also may involve the
            privacy interests of individuals and must be safeguarded for that

5

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1    reason as well, Distributor promises to preserve the
2    confidentiality of IHS's trade secrets and commercially useful
     confidential information learned through Distributor at IHS and
3    to use all such information only as necessary and appropriate
     for IHS's legitimate business purposes. Distributor also
4    promises to safeguard against disclosure without the consent of
     affected persons all information touching on the privacy
5    interests of employees of IHS or customers or employees of
     customers. Such trade secrets, commercially useful confidential
6    information, proprietary and/or private information include
     without limitation (1) information about IHS's marketing
7    strategies, (2) **financial information about IHS, its**
     **shareholders, customers, or prospective customers**, (3) the
8    identity of IHS's customers and/or contact persons at such
     customers or prospective customers, (4) communications
9    between IHS and any customers or potential customers, (5) the
     contents of IHS's business plans, its products or its proposals to
10   present to potential customers, (6) the names, locations,
     practices or requirements of any vendors, suppliers, personnel
11   or any other persons having a business relationship with IHS,
     (7) any confidential or secret development or research work of
12   IHS, including information concerning any future or proposed
     services or products, (8) **all of IHS's accountings, costs,**
13   **revenue and other financial records and documents, as well**
     **as the contents thereof**, (9) IHS's documents, contracts,
14   agreements, correspondence and all other similar business
     records, and (10) any other confidential or secret aspect of the
     business of IHS, or its subsidiaries, affiliates or divisions.

15 (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182

16 (emphasis added).) In *Carpenter v. United States*, 484 U.S. 19, 26, 108 S. Ct. 316, 98 L. Ed. 2d 275

17 (U.S. 1987), the Supreme Court held, Confidential business information has long been recognized as

18 property." *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26

19 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001-1004, 104 S. Ct. 2862, 81 L. Ed. 2d 815

20 (1984); *Dirks v. SEC*, 463 U.S. 646, 653, n. 10, 103 S. Ct. 3255, 77 L. Ed. 2d 911 (1983); *Board of*

21 *Trade of Chicago v. Christie Grain & Stock Co.*, 198 U.S. 236, 250-251, 25 S. Ct. 637, 49 L. Ed. 1031

22 (1905); 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in

23 the course and conduct of its business is a species of property to which the corporation has the

24 exclusive right and benefit, and which a court of equity will protect through the injunctive process or

25 other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W.

26 Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote

27 omitted)); *see also MCI Worldcom, Inc. v. GSA*, 163 F. Supp. 2d 28, 38 (D.D.C. 2001) (the GSA's

28 decision to disclose the pricing data contained in a business' contract, in response to a FOIA request

1  violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI*
2  *Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may
3  withhold information if it constitutes 'trade secrets and commercial or financial information obtained
4  from a person, and is privileged or confidential." OBJECTION: seeks information which is not
5  proportionate to the needs of this case including because information concerning such records is not
6  relevant to the claims of this case or reasonably calculated to lead to the discovery of relevant evidence.
7  OBJECTION: Overly broad and unduly burdensome with respect to the phrase, "all documents
8  showing Defendant's payments from (and corresponding invoices to) the VA in regards to VA
9  Contracts VA24617C0183, VA24918C10329, VA26317D0109, and VA69D17D0167," which seeks
10 over-inclusive information and records, potentially including Respondent's banking records, which the
11 Court has ordered are not discoverable in this case, per ECF 054 *See Krause supra*, 2014 U.S. Dist.
12 LEXIS 14872, at *16; and *Dauska*, 291 F.R.D. at 261. On these objections, responding party refuses to
13 respond to the interrogatory.

14 **INTERROGATORY NO. 3**

15     Identify the full name, title, business addresses, email addresses and telephone numbers of each
16 individual that was involved in the termination of Winter's contract (distributor agreement) and the
17 dates of each individual's involvement.

18 **RESPONSE TO INTERROGATORY NO. 3**

19     OBJECTION: Vague, ambiguous, and overly broad as to the phrase, "each individual that was
20 involved in the termination of Winter's contract." OBJECTION: may call for speculation as to the
21 dates of James Winters' involvement. Notwithstanding these objections, and without waiving them,
22 Responding Party responds as follows:

23     1. James Winters, 18318 Edwards Bluff, San Antonio, Texas 78259, 515-681-4144, email:
24 jameswinters12345@yahoo.com. James Winters' involvement in the termination of his contract with
25 IHS occurred when he failed to maintain the accounts of the region of his Distributor Agreement. In or
26 about January of 2017, James Winters moved out of IOWA, which was the location of his
27 distributorship region. Subsequently, in or about late Summer of 2017, James advised Responding
28 Party that he not only had moved but had taken a full time job at a car dealership, and he would not be

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

7

1   able to do his duties anymore. IHS was required to hire a 2nd and 3rd representative to cover James
2   Winters' region. Moreover, in or about November, 2017, IHS learned that James Winters that had
3   previously violated the terms of the Distributor Agreement, in connection with his involvement with,
4   and prohibited disclosures to, Terrance Walker regarding IHS business matters.     James Winters
5   specifically told Vanessa Parsons that he was going to walk away from the IHS-VA accounts in
6   December 2017. So this was a process that was initiated by Winters and his actions;

7        2. Vanessa Parsons c/o William Geddes, Esq., The Geddes Law Firm, P.C., 8600 Technology
8   Way, Suite 107, Reno, NV 89521, 775-853-9455, will@thegeddeslawfirm.com. Vanessa Parsons'
9   involvement in the termination of Winters' contract occurred when learning information stated above
10  for James Winters' involvement, and continued with her communications with her legal counsel, Daniel
11  Germain, and culminated in the issuance of the termination letter to Winters, on February 8, 2018. (See
12  IHS00176.);

13       3. Danny Weisberg c/o William Geddes, Esq., The Geddes Law Firm, P.C., 8600 Technology
14  Way, Suite 107, Reno, NV 89521, 775-853-9455, will@thegeddeslawfirm.com. Danny Weisberg's
15  involvement in the termination of Winters' contract occurred during the same, general time frame as
16  did Vanessa Parson's involvement as stated above, and consisted of his generally being aware of such
17  matters, including the termination of James Winters, prior to his termination; and

18       4. Daniel Germain, Esq., Rosman & Germain LLP, 16311 Ventura Blvd Ste 1200, Encino, CA
19  91436, (818) 788-0885, Germain@lalawyer.com. Daniel Germain's involvement occurred during the
20  period of December, 2017 through the termination of Winters, in early February 2018.

21  **INTERROGATORY NO. 4**

22       Identify all documents that involve the termination and suspension of Winter's distributor
23  agreement.

24  **RESPONSE TO INTERROGATORY NO. 4**

25       OBJECTION: Vague, ambiguous, and overly broad as to the phrase, "all documents that
26  involve the termination and suspension of Winter's distributor agreement." OBJECTION: Compound
27  and/or improper use of subparts, the effect of which causes this set of interrogatories to exceed the
28  number that may be propounded without leave of Court. *See Kendall v. GES Exposition Servs.*, 174

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1   F.R.D. 684, 685 (D. Nev. 1997) (subsequent questions contained in an interrogatory, which can "stand
2   alone," are to be counted as separate interrogatories). Here, the first part of the interrogatory requests
3   the identity of documents that involve the termination of Winter's distributor agreement. The second
4   part of the interrogatory requests the identity of documents that involve the suspension of Winter's
5   distributor agreement.

6       Notwithstanding these objections, and without waiving them, Responding Party responds as
7   follows:    The following documents are responsive to this interrogatories:    IHS00083-88 (James
8   Winters' Email regarding his relationship with Terrance Walker); IHS00095 (Andrew Simonian Email
9   to James Winters re Acknowledgment Points re Walker); IHS00146 (Danny Weisberg email
10  Disclaiming that Walker had no affiliation or Contract with I.H.S., also noting I.H.S. Relationship with
11  James Winters is suspended);    IHS00155-00161 (Email from Dan Germain disclaiming any I.H.S.-
12  Terrance Walker affiliation); IHS00176 (Distributor Termination Letter); IHS00177-00189 (IHS-James
13  Winters Distributor Agreement); and IHS00190 (Text Message Between Vanessa Parsons and James
14  Winters Re Terrance Walker).

15  **INTERROGATORY NO. 5**

16      Identify all VA contracts that James Winters helped Defendants with since September 2014.

17  **RESPONSE TO INTERROGATORY NO. 5**

18      OBJECTION: not relevant and not reasonably calculated to lead to the discovery of relevant
19  evidence, as this interrogatory, seeks documents concerning Responding Party's private contracts with
20  the Veterans' Administration, to which Plaintiff was not a party and had no contractual rights or privity.
21  The lawsuit concerns Defendant's alleged tortious interference with the alleged contractual relations
22  with James Winters and Plaintiff, not Defendant's own contractual relations with the Veteran's
23  Administration for which James Winters may have had some involvement under contract with IHS.
24  Plaintiff was not a party to IHS' contracts, including its VA contracts and its Distributor Agreement,
25  and he had no contractual privity or rights against Responding Party regarding such matters.
26  OBJECTION: calls for confidential business information.    Responding Party expressly prohibited
27  James Winters from entering into any contract or commitment with any third party for or on behalf of
28  IHS, including you. This prohibition, contained in the Distributor Agreement is set forth as follows:

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9405

9

1  "**Distributors Inability to Contract for IHS**: In spite of anything contained in this Agreement to the

2  contrary, Distributor shall not have the right to make any contracts or commitments for or on behalf of

3  IHS without first obtaining the express written consent of IHS." (*Distributor Agreement*, § III (14),

4  produced as a confidential document at IHS-00181-00182 (emphasis in original).) OBJECTION: calls

5  for confidential business information. Responding Party expressly reserved its right of confidentiality

6  to its trade secrets, commercially useful confidential information, proprietary and/or private

7  information, in § III (7) of its Distributor Agreement, set forth as follows:

> IHS's competitive success depends upon the proper safeguarding of trade secrets and confidential information developed within IHS or entrusted to by its customers. Some of the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well, Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) **financial information about IHS, its shareholders, customers, or prospective customers**, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) **all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof**, (9) IHS's documents, contracts, agreements, correspondence and all other similar business records, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

25  (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis

26  added).)   Again, in *Carpenter*, 484 U.S. 19, 26, *supra*, the Supreme Court held that confidential

27  business information has long been recognized as property.  *ABM Indus.*, 2010 U.S. Dist. LEXIS

28  143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004;

The Geddes Law Firm, P.C.
8560 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  *Dirks, supra,* 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra,* 198 U.S. at 250-251; and 5 U.

2  S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and

3  conduct of its business is a species of property to which the corporation has the exclusive right and

4  benefit, and which a court of equity will protect through the injunctive process or other appropriate

5  remedy.'" *ABM Indus.,* 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of*

6  *Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI*

7  *Worldcom, Inc., supra,* 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained

8  in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable

9  statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption

10 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and

11 commercial or financial information obtained from a person, and is privileged or confidential."

12 OBJECTION: vague and ambiguous as to the phrase, "all VA contracts that James Winters helped

13 Defendants with."

14      Notwithstanding these objections, and without waiving them, Responding Party responds as

15 follows: CONFIDENTIALITY DESIGNATION: Responding Party herein designates the information

16 provided in response to this interrogatory as "Confidential," within the meaning of the protective order

17 in effect for this case, at ECF 055:

18      (1) VA San Diego:  VA262-15-C-0082;

19      (2) VA Los Angeles:  VA262-15-P-0778;

20      (3) VA Long Beach: VA262-15-C-0168;

21      (4) VA Durham: VA24616N539;

22      (5) VA Iowa City: VA26317D0109;

23      (6) VA Richmond: VA24617C0183;

24      (7) VA Lexington: VA24918C10329; AND

25      (8) VA Great Lakes: VA69D27Q0725.

26  **INTERROGATORY NO. 6**

27      Identify all documents showing Defendant's full compliance with the provision of the federal

28 contract (signed by James Winters), which states: "Contractor shall submit an electronic invoice by the

The Geddes Law Firm, P.C.
9500 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1    tenth (10th) of the following month services were performed to the Veterans Affairs Financial Services
2    Center (VAFSC) e-Invoice through the website at https://portal. tungsten-network.com/102mm " (See
3    EFC 4, Exhibit 7, page 2 Contract "VA69D1 7D0167").

4    **RESPONSE TO INTERROGATORY NO. 6**

5         OBJECTION: vague, ambiguous, and overly broad, with respect to the phrase, "all documents
6    showing Defendant's full compliance with the provision of the federal contract (signed by James
7    Winters)."   OBJECTION: not relevant and not reasonably calculated to lead to the discovery of
8    relevant evidence, as this interrogatory, seeks information concerning regulatory-compliance issues,
9    which are not at issue in this tortious-interference case. Moreover, this interrogatory seeks information
10   that is not relevant or reasonably calculated to lead to the discovery of relevant information regarding
11   Responding Party's private business affairs and contracts with the Veterans' Administration, to which
12   Plaintiff was not a party and had no contractual rights or privity.  The lawsuit concerns Defendant's
13   alleged tortious interference with the alleged contractual relations with James Winters and Plaintiff, not
14   Defendant's own contractual relations with the Veteran's Administration for which James Winters may
15   have had some involvement under contract with IHS.  Plaintiff was not a party to any IHS' contracts,
16   including its VA contracts and its Distributor Agreement with James Winters.   Plaintiff has no
17   contractual privity or rights against Responding Party regarding such matters.  OBJECTION: calls for
18   confidential business information.  Responding Party expressly prohibited James Winters from entering
19   into any contract or commitment with any third party for or on behalf of IHS, including you.  This
20   prohibition, contained in the Distributor Agreement is set forth as follows: "**Distributors Inability to**
21   **Contract for IHS**: In spite of anything contained in this Agreement to the contrary, Distributor shall
22   not have the right to make any contracts or commitments for or on behalf of IHS without first obtaining
23   the express written consent of IHS." (*Distributor Agreement*, § III (14), produced as a confidential
24   document at IHS-00181-00182 (emphasis in original).) OBJECTION: calls for confidential business
25   information.  Responding Party expressly reserved its right of confidentiality to its trade secrets,
26   commercially useful confidential information, proprietary and/or private information, in § III (7) of its
27   Distributor Agreement, set forth as follows:

28

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

12

IHS's competitive success depends upon the proper safeguarding of trade secrets and confidential information developed within IHS or entrusted to by its customers. Some of the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well. Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) **financial information about IHS, its shareholders, customers, or prospective customers**, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) **all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof**, (9) IHS's documents, contracts, agreements, correspondence and all other similar business records, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) As stated above, the Supreme Court has held that confidential business information has long been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1    request violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI*

2    *Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may

3    withhold information if it constitutes 'trade secrets and commercial or financial information obtained

4    from a person, and is privileged or confidential." On these objections, Responding Party refuses to

5    answer the Interrogatory.

6    **INTERROGATORY NO. 7**

7         Identify all documents establishing Defendant's compliance the monthly invoicing provisions of

8    federal contracts VA24617C0183, VA24918C10329, VA26317D0109 (i) Identify All persons involved

9    in the invoicing (their name, title, business address, email address, and phone numbers) involved in the

10   decision, the date and time(s).

11   **RESPONSE TO INTERROGATORY NO. 7**

12        OBJECTION: vague, ambiguous, and overly broad, with respect to the phrase, "all documents

13   establishing Defendant's compliance the monthly invoicing provisions of federal contracts" and "[a]ll

14   persons involved in the invoicing . . . involved in the decision, the date and time(s)." Here, it is not

15   clear to what compliance or monthly invoicing provisions you refer. As well, it is not clear what you

16   mean when you ask for the identity of persons who are "involved in the decision." OBJECTION:

17   Compound and/or improper use of subparts, the effect of which causes this set of interrogatories to

18   exceed the number that may be propounded without leave of Court. *See Kendall supra*, 174 F.R.D. at

19   685 (subsequent questions contained in an interrogatory, which can "stand alone," are to be counted as

20   separate interrogatories). Here, the first part of the interrogatory requests the identity of documents

21   "establishing Defendant's compliance the monthly invoicing provisions of federal contracts." The

22   second part of the interrogatory requests the identity of "[a]ll persons involved in the invoicing."

23   OBJECTION: not relevant and not reasonably calculated to lead to the discovery of relevant evidence,

24   as this interrogatory, seeks information concerning regulatory-compliance issues, which are not at issue

25   in this tortious-interference case. Moreover, this interrogatory seeks information that is not relevant or

26   reasonably calculated to lead to the discovery of relevant information regarding Responding Party's

27   private business affairs and contracts with the Veterans' Administration, to which Plaintiff was not a

28   party and had no contractual rights or privity. The lawsuit concerns Defendant's alleged tortious

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

14

1   interference with the alleged contractual relations with James Winters and Plaintiff, not Defendant's

2   own contractual relations with the Veteran's Administration for which James Winters may have had

3   some involvement under contract with IHS.  Plaintiff was not a party to any IHS' contracts, including

4   its VA contracts and its Distributor Agreement with James Winters.  Plaintiff has no contractual privity

5   or rights against Responding Party regarding such matters.  OBJECTION: calls for confidential

6   business information.  Responding Party expressly prohibited James Winters from entering into any

7   contract or commitment with any third party for or on behalf of IHS, including you.  This prohibition,

8   contained in the Distributor Agreement is set forth as follows: "**Distributors Inability to Contract for**

9   **IHS**: In spite of anything contained in this Agreement to the contrary, Distributor shall not have the

10   right to make any contracts or commitments for or on behalf of IHS without first obtaining the express

11   written consent of IHS." (*Distributor Agreement*, § III (14), produced as a confidential document at

12   IHS-00181-00182 (emphasis in original).)    Responding Party expressly reserved its right of

13   confidentiality to its trade secrets, commercially useful confidential information, proprietary and/or

14   private information, in § III (7) of its Distributor Agreement, set forth as follows:

> IHS's competitive success depends upon the proper
> safeguarding of trade secrets and confidential information
> developed within IHS or entrusted to by its customers. Some of
> the information Distributors receive also may involve the
> privacy interests of individuals and must be safeguarded for that
> reason as well. Distributor promises to preserve the
> confidentiality of IHS's trade secrets and commercially useful
> confidential information learned through Distributor at IHS and
> to use all such information only as necessary and appropriate
> for IHS's legitimate business purposes. Distributor also
> promises to safeguard against disclosure without the consent of
> affected persons all information touching on the privacy
> interests of employees of IHS or customers or employees of
> customers. Such trade secrets, commercially useful confidential
> information, proprietary and/or private information include
> without limitation (1) information about IHS's marketing
> strategies, (2) **financial information about IHS, its**
> **shareholders, customers, or prospective customers**, (3) the
> identity of IHS's customers and/or contact persons at such
> customers or prospective customers, (4) communications
> between IHS and any customers or potential customers, (5) the
> contents of IHS's business plans, its products or its proposals to
> present to potential customers, (6) the names, locations,
> practices or requirements of any vendors, suppliers, personnel
> or any other persons having a business relationship with IHS,
> (7) any confidential or secret development or research work of
> IHS, including information concerning any future or proposed

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

15

services or products, (8) **all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof**, (9) IHS's documents, contracts, agreements, correspondence and all other similar business records, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) As stated above, the Supreme Court has held that confidential business information has long been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and commercial or financial information obtained from a person, and is privileged or confidential." On these objections, Responding Party refuses to answer the Interrogatory.

**INTERROGATORY NO. 8**

Identify the contracts or commitments that Winters made for or on behalf of IHS without the permission of Defendant.

**RESPONSE TO INTERROGATORY NO. 8**

OBJECTION: assumes facts not established and may call for a legal conclusion as to the phrase "contracts or commitments," including as to whether such purported "contracts or commitments" are legally binding on Defendant. OBJECTION: may call for speculation as to contracts or commitments by Winters improperly attempted to be made on behalf of IHS without the permission of IHS, for which IHS does not have knowledge. OBJECTION: lacks foundation and misstates facts, to the degree that

1  the interrogatory assumes that Winters actually made a legally binding or enforceable contract or
2  commitment on behalf of IHS, without its permission; no such contract or commitment is legally
3  enforceable or binding on IHS.

4       Notwithstanding these objections, and without waiving them, Responding Party responds as
5  follows: Winters attempted to enter into contracts or commitments with Plaintiff on behalf of IHS,
6  without its permission, such contracts or commitments being identified or evidenced in the following
7  documents, already produced in this action:  IHS00083-88 (James Winters' Email regarding his
8  relationship with Terrance Walker); IHS00095 (Andrew Simonian Email to James Winters re
9  Acknowledgment Points re Walker); IHS00146 (Danny Weisberg email Disclaiming that Walker has
10 no affiliation or Contract with I.H.S., also noting I.H.S. Relationship with James Winters is suspended);
11 IHS00154 (Email from James Winters re his "subcontract" with Terrance Walker; IHS00155-00161
12 (Email by Dan Germain disclaiming of any I.H.S.-Terrance Walker affiliation); and IHS00219-00226
13 (apparent "contract" by and between James Winters and Terrence Walker).

14 **INTERROGATORY NO. 9**

15      Identify all documents establishing Defendant's full compliance with monthly payment
16 provisions of Winter's distributor agreement.

17 **RESPONSE TO INTERROGATORY NO. 9**

18      OBJECTION: assumes facts not established and may call for a legal conclusion as to the phrase
19 "full compliance with monthly payment provisions of Winter's distributor agreement," OBJECTION:
20 not relevant and not reasonably calculated to lead to the discovery of relevant evidence, as this
21 interrogatory, seeks information about Defendant's "full compliance with monthly payment provisions
22 of Winter's distributor agreement," which issues are not being litigated in this action, and such
23 information is not relevant or reasonably calculated to lead to the discovery of relevant information in
24 this action.  As well, it is immaterial to your cause of action for tortious interference with *your*
25 contractual relations how Responding Party carried out *its* contractual obligations with James Winters.
26 Again, you were not a party to any IHS' contracts, including its VA contracts and its Distributor
27 Agreement with James Winters.   OBJECTION: calls for confidential business information.
28 Responding Party expressly prohibited James Winters from entering into any contract or commitment

The Gaddes Law Firm, P.C.
6600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

17

1  with any third party for or on behalf of IHS, including you.  This prohibition, contained in the

2  Distributor Agreement is set forth as follows: "**Distributors Inability to Contract for IHS**: In spite of

3  anything contained in this Agreement to the contrary, Distributor shall not have the right to make any

4  contracts or commitments for or on behalf of IHS without first obtaining the express written consent of

5  IHS." (*Distributor Agreement*, § III (14), produced as a confidential document at IHS-00181-00182

6  (emphasis in original).)  In fact, Responding Party expressly reserved its right of confidentiality to its

7  trade secrets, commercially useful confidential information, proprietary and/or private information, in §

8  III (7) of its Distributor Agreement, set forth as follows:

> IHS's competitive success depends upon the proper safeguarding of trade secrets and confidential information developed within IHS or entrusted to by its customers. Some of the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well. Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) financial information about IHS, its shareholders, customers, or prospective customers, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) **all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof**, (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records**, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

26  (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis

27  added).)  Here you seek confidential information, prohibited from disclosure by Clauses 8-9 of this

28  section.  As stated above, the Supreme Court has held that confidential business information has long

The Geddes Law Firm, P.C.
6880 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

18

The Geddes Law Firm, P.C.
6060 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1 been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at \*17 (citing *Carpenter*,

2 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n.

3 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential

4 information acquired or compiled by a corporation in the course and conduct of its business is a species

5 of property to which the corporation has the exclusive right and benefit, and which a court of equity

6 will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist.

7 LEXIS 143570, at \*18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p.

8 260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the

9 GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA

10 request violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI*

11 *Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may

12 withhold information if it constitutes 'trade secrets and commercial or financial information obtained

13 from a person, and is privileged or confidential." On these objections, Responding Party refuses to

14 answer the Interrogatory.

15 **INTERROGATORY NO. 10**

16        Identify all communications (documented or not) that Defendant had with Winters in regards to

17 the deficiencies used by Defendant as a basis to terminate Winters' distributor agreement on or prior to

18 Feb. 8, 2018.

19 **RESPONSE TO INTERROGATORY NO. 10**

20        OBJECTION: overly broad and unduly burdensome with respect to the phrase "all

21 communications (documented or not) that Defendant had with Winters in regards to the deficiencies

22 used by Defendant as a basis to terminate Winters' distributor agreement." *See Krause supra*, 2014

23 U.S. Dist. LEXIS 14872, at \*16 ("[a] discovery request is overly broad and unduly burdensome on its

24 face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning' to modify a general

25 category or broad range of documents or information"); and *Dauska*, 291 F.R.D. at 261. OBJECTION:

26 calls for confidential business information.   Responding Party expressly reserved its right of

27 confidentiality to its trade secrets, commercially useful confidential information, proprietary and/or

28 private information, in § III (7) of its Distributor Agreement, set forth as follows:

IHS's competitive success depends upon the proper safeguarding of trade secrets and confidential information developed within IHS or entrusted to by its customers. Some of the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well. Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) financial information about IHS, its shareholders, customers, or prospective customers, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof, (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records**, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).)   Here you seek confidential information, prohibited from disclosure by Clause 9 of this section. As stated above, the Supreme Court has held that confidential business information has long been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)).  "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the

The Geddes Law Firm, P.C.
8560 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA
2  request violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI*
3  *Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may
4  withhold information if it constitutes 'trade secrets and commercial or financial information obtained
5  from a person, and is privileged or confidential."

6  Notwithstanding these objections, and without waiving them, Responding Party responds as
7  follows: CONFIDENTIALITY DESIGNATION: Responding Party herein designates the information
8  provided in response to this interrogatory as "Confidential," within the meaning of the protective order
9  in effect for this case, at ECF 055:

10  The following communications, or activities for which there were communications, relate to
11  Winters' deficiencies, which provided a basis to terminate his distributor agreement:

12  In or about 2014, James Winters signed on to be an independent distributor for IHS' monitoring
13  services in state of IOWA. But James Winters brought in only one account in Iowa, per the terms of
14  the contract, of which fact there were communications after the Distributor Agreement was signed. At
15  or about the end of year 2016, James Winters expressed more and more personal issues where he didn't
16  know what he could of for IHS anymore and would vacillate on the question of whether he would
17  continue with IHS. He was supposed to service the accounts he referred, but he failed to maintain the
18  accounts, and he visited only two accounts, one time each, at the VA Richmond and VA Great Lakes
19  sites. But he didn't service or maintain accounts at all prior to Richmond in 2017, and then performed
20  only the two, one-day visits referenced here. In or about February of 2017, James Winters
21  communicated a desire to try to get on track with his IHS obligations. During this period, James
22  Winters was not maintaining accounts, as required by the Distributor Agreement. The nurses and
23  medical teams were not serviced by James and this would put his burden of his duties on others.

24  In 2015-2016 James would disappear completely for periods of time. James Winters
25  communicated with IHS as to his particular failures to comply with the requirements of his agreement,
26  attributing his failures to personal issues he had. Sometime in 2016/2017, James Winters provided IHS
27  with various places to wire money (different states), and he admitted that he had moved to Texas in
28  July of 2017 and taken a job, and that he would not be available to do much for IHS. IHS replaced

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

21

1 | James Winters in Iowa with a full time representative.

2 |     In 2017, IHS picked up a VA account for the Richmond Area, by word of mouth. James
3 | Winters flew there and did an in-service call. In or about February 2017, James Winters informed IHS
4 | of a solicitation IHS could make a bid on for VA Great Lakes. For months after the bid was submitted,
5 | James Winters disappeared again and said he was moving on to a new job and could not move forward
6 | with IHS, as required by the Distributor Agreement. James Winters advised IHS that he could not carry
7 | out his obligations under the Distributor Agreement.

8 |     In or about July of 2017, IHS learned it was awarded the VA Great Lakes contract. IHS
9 | communicated with James Winters that he was going to need to get involved if he were going to be
10 | involved on that project. James Winters provided initial in-servicing calls for this account, but he was
11 | tied to a new job in Texas and was unable to carry out his obligations under the Distributor Agreement.
12 | Representatives from the Great Lakes account communicated to IHS great displeasure with James
13 | Winters' performance, stating that James Winters appeared not to care and appeared as if he did not
14 | want to be there. IHS let James Winters know that he was being paid as a goodwill gesture, but it was
15 | certainly not due to his performance, based on his failure to comply with these obligations under the
16 | Distributor Agreement.

17 |     In or about November of 2017, rude emails were sent to IHS by Plaintiff. IHS did not know
18 | what the matter was about and contacted James Winters regarding such matters. James Winters
19 | initially assured Vanessa Parsons that Plaintiff was an unrelated business associate that he had some
20 | back deals with, unrelated to IHS, but maybe Plaintiff had shown James Winters how to find bids,
21 | which are not difficult to find as they are publicly advertised. Thus, James Winters told IHS to ignore
22 | Plaintiff. But Plaintiff continued to send disturbing emails to IHS, threatening IHS with FBI raids,
23 | lawsuits, and sending the IHS bookkeeper to jail. Yet, James kept assuring IHS that he was really
24 | embarrassed by Plaintiff, describing Plaintiff as a massive hot head with issues. James Winters was
25 | very aware he could not subcontract for IHS.

26 |     In or about December of 2017 or early January 2018, James Winters first informed IHS that he
27 | might have promised to pay Plaintiff 50% of the fees earned by James Winters at IHS. Then IHS
28 | received more disturbing emails from Mr. Walker. In these emails he claimed that IHS was not paying

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-0455

22

1    the amounts owed.  In response, James Winters unequivocally advised IHS that James Winters was

2    quitting or terminating his Distributor Agreement because he had moved on with his life in Texas,

3    where he had a new job, and that it wasn't worth it for him to try to move forward with IHS, as Mr.

4    Walker was making his life very difficult for their own personal, business relationship.  James Winters

5    was aware that he couldn't maintain and service his accounts, as required by the Distributor Agreement,

6    and his relationship with Plaintiff appeared to pushed him over the edge.  James Winters asked Vanessa

7    Parsons if James Winters could make a new business relationship with IHS, possibly if he found some

8    local, private doctor accounts in his Texas Area.  Vanessa Parsons informed James Winters that it was a

9    problem that he had a "secret" business relationship with Plaintiff that was never mentioned before,

10   which was prohibited by the Distributor Agreement, and an investigation needed to be done to uncover

11   the scope of the problem.  James Winters initially appeared willing to assist IHS with its investigation

12   concerning this matter.  IHS' business attorney tried to work with James Winters, to carry out this

13   investigation.   But, it appeared that James Winters was not sincere in wanting to assist in an

14   investigation of the matter, and James Winters appeared to be "playing both sides," and he apparently

15   was providing Plaintiff with confidential information.  During the approximate period of December

16   2017 through or about early February 2018, IHS' business attorney was trying to carry out this

17   investigation, including by having James Winters explain what his relationship was to Plaintiff, who

18   appeared to be acting as an advisor or attorney to James Winters, citing laws and making threats.

19   During this time period, Plaintiff communicated to IHS' VA account representatives, making demands

20   and threats.  James Winters was not properly cooperating with IHS' investigation into this matter and

21   he was not addressing his failures to comply with his obligations under the Distributor Agreement.

22        On February 8, 2018, James Winters was terminated as a distributor, the communications of

23   which are set forth in IHS-00176.

24   **INTERROGATORY NO. 11**

25        Identify all documents relied upon and referred to by Defendant (through attorney Daniel

26   Germain) who stated that they "demanded that Mr. Walker discontinue all communications with Intelli-

27   heart's customers" and that Mr. Walker "harass and annoy Intelli-heart's customers" and "other client's

28   of Intelli-heart" (See Response to Plaintiff's Request for Admission, set on, #86, dated about Dec. 23,

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

23

1  2018).

2  **RESPONSE TO INTERROGATORY NO. 11**

3  OBJECTION: assumes facts not established, to the degree that the interrogatory assumes that
4  "communications" were written communications, and not oral communications. OBJECTION: may
5  call for confidential attorney-client communications and work product. OBJECTION: may call for
6  confidential business information and records.

7  Notwithstanding these objections, and without waiving them, Responding Party responds as
8  follows:  the communications regarding demands that Plaintiff discontinue communications with
9  Intelli-Heart's customers appear to be oral communications not written communications, made in direct
10  and ongoing conversations that Dan Germain had with James Winters from or about January 2018 to or
11  about April 2, 2018, in which communications, James Winters was told, agreed to, and had confirmed
12  to Dan Germain that he had requested of Plaintiff to stop communicating with Intelli-Heart customers,
13  as he was not a legitimate subcontractor of IHS.  As for documents supporting the statement that
14  Plaintiff was harassing and annoying, IHS-00155, documents this matter, where Kevin Cochran,
15  Contracting Specialist for the VA specifically stated: "Please see the below communications from Mr.
16  Walker. These emails have become very annoying and I would greatly appreciate if you all would
17  please remedy this ASAP." The emails referred to were emails from Plaintiff, having the subject line:
18  "RE: [EXTERNAL] VA24918C10329: Notification of subcontractor payment more than 90 days past
19  due & proof that ALL subcontract ARE NOT required OVER $700k."

20  **INTERROGATORY NO. 12**

21  Identify all work which James winters provided helped on the contracts VA24617C0183,
22  VA24918C10329, VA26317D0109, VA69D17D0167.

23  **RESPONSE TO INTERROGATORY NO. 12**

24  OBJECTION: overly broad and unduly burdensome as to the phrase "all work which James
25  winters provided helped on the contracts VA24617C0183, VA24918C10329, VA26317D0109,
26  VA69D17D0167." OBJECTION: not relevant and not reasonably calculated to lead to the discovery of
27  relevant evidence, as this interrogatory, seeks documents concerning Responding Party's private
28  contracts with the Veterans' Administration and James Winters, to which Plaintiff was not a party and

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1   had no contractual rights or privity.  The lawsuit concerns Defendant's alleged tortious interference
2   with the alleged contractual relations with James Winters and Plaintiff, not Defendant's internal
3   business matters on contacts and with its distributors.  The work that James Winters performed for
4   Defendant is not material to the legal elements of your tortious-interference claim, including because
5   the work he performed for IHS was governed by IHS' contract with Winters, to which you were not a
6   party and to which you have no legal standing or privity with IHS.  The unauthorized contract that may
7   have existed between you and Winters imposed no obligations on IHS.  Any work that James Winters
8   performed for IHS on the VA contracts in question have no bearing on whether IHS committed acts of
9   tortious interference with *your* alleged contractual relations with Winters.  Again, James Winters was
10  expressly prohibited from unilaterally binding IHS to any third-party agreement or commitment.  This
11  prohibition, contained in the Distributor Agreement is set forth as follows: "**Distributors Inability to**
12  **Contract for IHS**: In spite of anything contained in this Agreement to the contrary, Distributor shall
13  not have the right to make any contracts or commitments for or on behalf of IHS without first obtaining
14  the express written consent of IHS." (*Distributor Agreement*, § III (14), produced as a confidential
15  document at IHS-00181-00182 (emphasis in original).)  OBJECTION: calls for confidential business
16  information.  Responding Party expressly reserved its right of confidentiality to its trade secrets,
17  commercially useful confidential information, proprietary and/or private information, in § III (7) of its
18  Distributor Agreement, set forth as follows:

19          IHS's   competitive   success   depends   upon   the   proper
20      safeguarding  of  trade  secrets  and  confidential  information
        developed within IHS or entrusted to by its customers. Some of
21      the  information  Distributors  receive  also  may  involve  the
        privacy interests of individuals and must be safeguarded for that
22      reason  as  well,  Distributor  promises  to  preserve  the
        confidentiality of IHS's trade secrets and commercially useful
23      confidential information learned through Distributor at IHS and
        to use all such information only as necessary and appropriate
24      for  IHS's  legitimate  business  purposes.  Distributor  also
        promises to safeguard against disclosure without the consent of
25      affected  persons  all  information  touching  on  the  privacy
        interests of employees of IHS or customers or employees of
26      customers. Such trade secrets, commercially useful confidential
        information,  proprietary  and/or  private  information  include
27      without  limitation  (1)  information  about  IHS's  marketing
        strategies,  (2)  **financial  information  about  IHS,  its**
28      **shareholders, customers, or prospective customers,**  (3)  the
        identity  of  IHS's  customers  and/or  contact  persons  at  such

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1

2

3

4

5

6

7

customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof, (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records**, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

8    (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182

9  (emphasis added).) Here you seek confidential information, prohibited from disclosure by Clauses 2

10  and 9 of this section. In *Carpenter v. United States*, 484 U.S. 19, 26, 108 S. Ct. 316, 98 L. Ed. 2d 275

11  (U.S. 1987), the Supreme Court held, Confidential business information has long been recognized as

12  property." *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26

13  (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001-1004, 104 S. Ct. 2862, 81 L. Ed. 2d 815

14  (1984); *Dirks v. SEC*, 463 U.S. 646, 653, n. 10, 103 S. Ct. 3255, 77 L. Ed. 2d 911 (1983); *Board of*

15  *Trade of Chicago v. Christie Grain & Stock Co.*, 198 U.S. 236, 250-251, 25 S. Ct. 637, 49 L. Ed. 1031

16  (1905); 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in

17  the course and conduct of its business is a species of property to which the corporation has the

18  exclusive right and benefit, and which a court of equity will protect through the injunctive process or

19  other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W.

20  Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote

21  omitted)); *see also MCI Worldcom, Inc. v. GSA*, 163 F. Supp. 2d 28, 38 (D.D.C. 2001) (the GSA's

22  decision to disclose the pricing data contained in a business' contract, in response to a FOIA request

23  violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI*

24  *Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may

25  withhold information if it constitutes 'trade secrets and commercial or financial information obtained

26  from a person, and is privileged or confidential." OBJECTION: seeks information which is not

27  proportionate to the needs of this case including because information concerning such records is not

28  relevant to the claims of this case or reasonably calculated to lead to the discovery of relevant evidence.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-553-9455

1    On these objections, Defendant refuses to answer this interrogatory.

2    **INTERROGATORY NO. 13**

3        Identifying each document supporting each defense and affirmative defense in this matter.

4    **RESPONSE TO INTERROGATORY NO. 13**

5        OBJECTION: overly broad and unduly burdensome with respect to the phrase, "each document

6 supporting each defense and affirmative defense in this matter." *See Krause v. Nev. Mut. Ins. Co.*, No.

7 2:12-cv-00342-JCM-CWH, 2014 U.S. Dist. LEXIS 14872, at *16 (D. Nev. Feb. 6, 2014) (a discovery

8 request is overly broad and unduly burdensome on its face if it addresses a general category or broad

9 range of documents or information); and *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 261

10 (E.D. Wisc. 2013). This interrogatory ostensibly seeks the identity of each document that supports not

11 only an entire section of Defendant's *Amended Answer*, containing 31 affirmative defenses, but *any*

12 "defense," whether an affirmative defense or not, *i.e.*, this would include any assertion that that Plaintiff

13 has failed to prove the elements of his case—which is patently overly broad and unduly burdensome.

14 OBJECTION: Defendant may not have considered all the possible legal theories upon which it will

15 defend any trial in this litigation. OBJECTION: may call for a legal conclusion. OBJECTION: may

16 call for confidential attorney work product. Notwithstanding these objections, and without waiving

17 them, Responding Party responds as follows: Responding Party identifies the following documents

18 produced by Defendant in this litigation as being responsive to this interrogatory: IHS00001-00013;

19 and IHS00083-00192; and IHS00196-00226.

20    **INTERROGATORY NO. 14**

21        Identify each provision in the Winter's distributor agreement (the contract between Winter and

22 IHS) that was invoked by Defendant to authorize the termination of Winter's agreement in Feb. 2018.)

23 (i) as to each provision invoked for said termination (in Request 14, above), identify each document

24 that was relied upon.

25    **RESPONSE TO INTERROGATORY NO. 14**

26        OBJECTION: Compound and/or improper use of subparts, the effect of which causes this set of

27 interrogatories to exceed the number that may be propounded without leave of Court. *See Kendall*

28 *supra*, 174 F.R.D. at 685 (subsequent questions contained in an interrogatory, which can "stand alone,"

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  are to be counted as separate interrogatories).  Here, the first part of the interrogatory requests

2  identification of each provision in the Distributor Agreement that was invoked by Defendant to

3  terminate the Distributor Agreement with Winters.  The second part of the interrogatory requests the

4  identification of each document that was relied upon.  OBJECTION: vague and ambiguous as to the

5  phrase "identify each document that was relied upon."  OBJECTION: calls for confidential business

6  information.  Responding Party expressly reserved its right of confidentiality to its trade secrets,

7  commercially useful confidential information, proprietary and/or private information, in § III (7) of its

8  Distributor Agreement, set forth as follows:

> IHS's competitive success depends upon the proper
> safeguarding of trade secrets and confidential information
> developed within IHS or entrusted to by its customers. Some of
> the information Distributors receive also may involve the
> privacy interests of individuals and must be safeguarded for that
> reason as well, Distributor promises to preserve the
> confidentiality of IHS's trade secrets and commercially useful
> confidential information learned through Distributor at IHS and
> to use all such information only as necessary and appropriate
> for IHS's legitimate business purposes. Distributor also
> promises to safeguard against disclosure without the consent of
> affected persons all information touching on the privacy
> interests of employees of IHS or customers or employees of
> customers. Such trade secrets, commercially useful confidential
> information, proprietary and/or private information include
> without limitation (1) information about IHS's marketing
> strategies, (2) financial information about IHS, its shareholders,
> customers, or prospective customers, (3) the identity of IHS's
> customers and/or contact persons at such customers or
> prospective customers, (4) communications between IHS and
> any customers or potential customers, (5) the contents of IHS's
> business plans, its products or its proposals to present to
> potential customers, (6) the names, locations, practices or
> requirements of any vendors, suppliers, personnel or any other
> persons having a business relationship with IHS, (7) any
> confidential or secret development or research work of IHS,
> including information concerning any future or proposed
> services or products, (8) all of IHS's accountings, costs, revenue
> and other financial records and documents, as well as the
> contents thereof, (9) **IHS's documents, contracts, agreements,**
> **correspondence and all other similar business records**, and
> (10) any other confidential or secret aspect of the business of
> IHS, or its subsidiaries, affiliates or divisions.

26  (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis

27  added).)  Here you seek confidential information, prohibited from disclosure by Clause 9 of this

28  section. As stated above, the Supreme Court has held that confidential business information has long

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

28

1  been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*,

2  484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n.

3  10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential

4  information acquired or compiled by a corporation in the course and conduct of its business is a species

5  of property to which the corporation has the exclusive right and benefit, and which a court of equity

6  will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist.

7  LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p.

8  260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the

9  GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA

10  request violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI

11  Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may

12  withhold information if it constitutes 'trade secrets and commercial or financial information obtained

13  from a person, and is privileged or confidential."

14  Notwithstanding these objections, and without waiving them, Responding Party responds as

15  follows: CONFIDENTIALITY DESIGNATION:  Responding Party herein designates the information

16  and, where marked, documents provided in response to this interrogatory as "Confidential," within the

17  meaning of the protective order in effect for this case, at ECF 055:

18  As stated in the termination letter, IHS00176, which were invoked to terminate James Winters,

19  James Winters violated the requirements of the Distributor Agreement in many ways, including the

20  following ways: He failed to secure the agreed minimum requirement for new customers/facilities,

21  required by § IV(2) of the agreement. He failed to adequately perform all services and duties assigned

22  by IHS, required by Independent Distributor Section, § B of the agreement. He failed to maintain all

23  accounts assigned to him, including providing reasonable and necessary after sale customer support,

24  installation of equipment and software, in service instructions for setting up IHS Service's equipment

25  and training personnel of new customers in using the IHS Services, and proving further on-site training

26  or services as necessary, as required by § I(1) of the agreement. He failed to properly safeguard IHS's

27  trade secrets, commercially useful confidential information, proprietary and/or private information,

28  required by §§ III(4) and (7) of the agreement. He failed to conduct business in a matter that reflected

The Gadlss Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  favorably at all times on IHS Products and Services and the good name, goodwill and reputation of
2  IHS, required by § 10(i) of the agreement. He engaged a third party, Terrance Walker, to work on his
3  accounts in direct violation of the terms of § 13 of the agreement. The documents relied upon for the
4  decision to terminated James Winters are set forth as follows:   IHS 00177-00189; IHS-0083-00095;
5  IHS-00227, produced herein with redactions for bank account and routing information, which shows
6  that James Winters moved to Texas; IHS-00228-00229, produced herein, two emails from James
7  Winters, confirming that he was "off the grid," in July and August of 2017, which evidenced an
8  inability to properly service his accounts, or adversely impacted his ability to service his accounts; and
9  emails from Plaintiff showing that James Winters had wrongfully disclosed confidential information to
10 Plaintiff, including those emails of: IHS00089-90 (Email: Threatening Breach); IHS00091-00094
11 (Email: Re: FW: James Winters Commissions from July to Present); IHS00142-00145 (Email Thread:
12 Subcontractor payment: Walker Requests VA Discontinue Payments on VA24617C0183); IHS00148-
13 00153 (Emails from Walker re Claim that I.H.S. is Violating FAR 52.242-5 - Payments to Small
14 Business Subcontractors and 52.232-40(c)); IHS00154 (Email from James Winters re his "subcontract"
15 with Terrance Walker); IHS00155-00161 (Emails regarding Terrance Walker demands and Dan
16 Germain disclaimer of any I.H.S.-Terrance Walker affiliation); and IHS00095 (Andrew Simonian
17 Email to James Winters re Acknowledgment Points re Walker).

18 **INTERROGATORY NO. 15**

19      Identify all documents that show Defendant provided information and money to Winters to
20 maintain accounts prior to the Feb 8, 2018 termination.

21 **RESPONSE TO INTERROGATORY NO. 15**

22      OBJECTION: assumes facts not established with regarding to any requirement by Defendant to
23 provide information and money to Winters to maintain his accounts under the Distributor Agreement.
24 OBJECTION: Vague and ambiguous as to the phrase "provided information and money to Winters to
25 maintain accounts." OBJECTION: not relevant and not reasonably calculated to lead to the discovery
26 of relevant evidence, as this interrogatory, seeks documents concerning Responding Party's payment of
27 money to Winters to maintain his accounts, which were the subject of Defendant's private contracts
28 with the its clients and Winters, to which Plaintiff was not a party and had no contractual rights or

The Geddes Law Firm, P.C.
8620 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-8455

1    privity.  The lawsuit concerns Defendant's alleged tortious interference with the alleged contractual
2    relations between James Winters and Plaintiff, not Defendant's own contractual relations with James
3    Winters, to which Plaintiff was not a party and to which Plaintiff had no contractual privity or rights
4    against Responding Party.  The information and money that James Winters was given by Defendant to
5    maintain his accounts is not material to the legal elements of your tortious-interference claim, including
6    because his performance obligations for IHS was governed by IHS' contract with James Winters, to
7    which you were not a party and to which you have no legal standing or privity with IHS.
8    OBJECTION: calls for confidential business information.  Responding Party expressly prohibited
9    James Winters from entering into any contract or commitment with any third party for or on behalf of
10   IHS, including you.  This prohibition, contained in the Distributor Agreement is set forth as follows:
11   "**Distributors Inability to Contract for IHS**: In spite of anything contained in this Agreement to the
12   contrary, Distributor shall not have the right to make any contracts or commitments for or on behalf of
13   IHS without first obtaining the express written consent of IHS." (*Distributor Agreement*, § III (14),
14   produced as a confidential document at IHS-00181-00182 (emphasis in original).)   Moreover,
15   Responding Party expressly reserved its right of confidentiality to its trade secrets, commercially useful
16   confidential information, proprietary and/or private information, in § III (7) of its Distributor
17   Agreement, set forth as follows:

18   IHS's competitive success depends upon the proper
19   safeguarding of trade secrets and confidential information
     developed within IHS or entrusted to by its customers. Some of
20   the information Distributors receive also may involve the
     privacy interests of individuals and must be safeguarded for that
21   reason as well, Distributor promises to preserve the
     confidentiality of IHS's trade secrets and commercially useful
22   confidential information learned through Distributor at IHS and
     to use all such information only as necessary and appropriate
23   for IHS's legitimate business purposes. Distributor also
     promises to safeguard against disclosure without the consent of
24   affected persons all information touching on the privacy
     interests of employees of IHS or customers or employees of
25   customers. Such trade secrets, commercially useful confidential
     information, proprietary and/or private information include
26   without limitation (1) information about IHS's marketing
     strategies, (2) **financial information about IHS, its
27   shareholders, customers, or prospective customers**, (3) the
     identity of IHS's customers and/or contact persons at such
28   customers or prospective customers, (4) communications
     between IHS and any customers or potential customers, (5) the

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

31

contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) **all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof**. (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records**, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) Here, you seek information made expressly confidential under §§ 2, 8 and 9 of this agreement. In *Carpenter v. United States*, 484 U.S. 19, 26, 108 S. Ct. 316, 98 L. Ed. 2d 275 (U.S. 1987), the Supreme Court held, Confidential business information has long been recognized as property." *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001-1004, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984); *Dirks v. SEC*, 463 U.S. 646, 653, n. 10, 103 S. Ct. 3255, 77 L. Ed. 2d 911 (1983); *Board of Trade of Chicago v. Christie Grain & Stock Co.*, 198 U.S. 236, 250-251, 25 S. Ct. 637, 49 L. Ed. 1031 (1905); 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc. v. GSA*, 163 F. Supp. 2d 28, 38 (D.D.C. 2001) (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and commercial or financial information obtained from a person, and is privileged or confidential." OBJECTION: seeks information which is not proportionate to the needs of this case including because information concerning such records is not relevant to the claims of this case or reasonably calculated to lead to the discovery of relevant evidence. On these objections, responding party refuses to respond to the interrogatory.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  **INTERROGATORY NO. 16**

2      Identify all documents whereby Defendant indicated that Winter's faced a termination of

3  Winter's distributor agreement (contract between Winters and IHS) prior to February 8, 2018.

4  **RESPONSE TO INTERROGATORY NO. 16**

5      OBJECTION: may call for speculation as to what James Winters perceived with regard to his

6  facing termination of the distributor agreement.   OBJECTION: not relevant and not reasonably

7  calculated to lead to the discovery of relevant evidence, as this interrogatory, seeks documents

8  concerning Responding Party's indication to Winters that he faced a termination of the Distributor

9  Agreement.  Any such information or documents, are the subject of Defendant's private contract

10  Winters, to which Plaintiff was not a party and had no contractual rights or privity.  The lawsuit

11  concerns Defendant's alleged tortious interference with the alleged contractual relations of James

12  Winters and Plaintiff, not Defendant's own contractual relations with James Winters, to which Plaintiff

13  was not a party and to which Plaintiff had no contractual privity or rights against Responding Party.

14  The notice that James Winters had concerning the prospect of his termination is not material to the legal

15  elements of your tortious-interference claim, including because any such notice was governed by IHS'

16  contract with James Winters, to which you were not a party and to which you have no legal standing or

17  privity with IHS.   OBJECTION: calls for confidential business information.   Responding Party

18  expressly prohibited James Winters from entering into any contract or commitment with any third party

19  for or on behalf of IHS, including you. This prohibition, contained in the Distributor Agreement is set

20  forth as follows: "**Distributors Inability to Contract for IHS**: In spite of anything contained in this

21  Agreement to the contrary, Distributor shall not have the right to make any contracts or commitments

22  for or on behalf of IHS without first obtaining the express written consent of IHS." (*Distributor*

23  *Agreement*, § III (14), produced as a confidential document at IHS-00181-00182 (emphasis in

24  original).)  Moreover, Responding Party expressly reserved its right of confidentiality to its trade

25  secrets, commercially useful confidential information, proprietary and/or private information, in § III

26  (7) of its Distributor Agreement, set forth as follows:

27      IHS's competitive success depends upon the proper
       safeguarding of trade secrets and confidential information
28      developed within IHS or entrusted to by its customers. Some of

The Geddes Law Firm, P.C.,
8800 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

33

the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well, Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) financial information about IHS, its shareholders, customers, or prospective customers, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof, (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records**, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) Here, you seek information made confidential by Clause 9 of this section. In *Carpenter v. United States*, 484 U.S. 19, 26, 108 S. Ct. 316, 98 L. Ed. 2d 275 (U.S. 1987), the Supreme Court held, Confidential business information has long been recognized as property." *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001-1004, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984); *Dirks v. SEC*, 463 U.S. 646, 653, n. 10, 103 S. Ct. 3255, 77 L. Ed. 2d 911 (1983); *Board of Trade of Chicago v. Christie Grain & Stock Co.*, 198 U.S. 236, 250-251, 25 S. Ct. 637, 49 L. Ed. 1031 (1905); 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI*

The Geddes Law Firm, P.C.
8800 Technology Way, Suite 107
Reno, IV 89521
Phone 775-853-9455

34

1    *Worldcom, Inc. v. GSA*, 163 F. Supp. 2d 28, 38 (D.D.C. 2001) (the GSA's decision to disclose the
2    pricing data contained in a business' contract, in response to a FOIA request violated confidentiality
3    provisions of applicable statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at
4    35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade
5    secrets and commercial or financial information obtained from a person, and is privileged or
6    confidential." OBJECTION: seeks information which is not proportionate to the needs of this case
7    including because information concerning such records is not relevant to the claims of this case or
8    reasonably calculated to lead to the discovery of relevant evidence.

9       Notwithstanding these objections, and without waiving them, Responding Party responds as
10   follows: the Distributor Agreement, IHS00206-00218, put James Winters on notice of the potential for
11   his termination for violating the terms of the agreement.

12   **INTERROGATORY NO. 17**

13       Identify each provision in Winter's distributor agreement (contract between Winter's and IHS)
14   that was invoked by Defendant to authorize the withholding of monies from James Winters since Dec.
15   2017.

16   **RESPONSE TO INTERROGATORY NO. 17**

17       OBJECTION: lacks foundation and assumes facts not developed, with regard to the assumption
18   that James Winters was entitled to received income from Defendant since December, 2017; and it also
19   assumes that money was withheld or not paid to him. OBJECTION: vague and ambiguous as to the
20   phrase "to authorize the withholding of monies from James Winters." OBJECTION: calls for
21   confidential business information. Responding Party expressly reserved its right of confidentiality to
22   its trade secrets, commercially useful confidential information, proprietary and/or private information,
23   in § III (7) of its Distributor Agreement, set forth as follows:

24           IHS's competitive success depends upon the proper
            safeguarding of trade secrets and confidential information
25          developed within IHS or entrusted to by its customers. Some of
            the information Distributors receive also may involve the
26          privacy interests of individuals and must be safeguarded for that
            reason as well, Distributor promises to preserve the
27          confidentiality of IHS's trade secrets and commercially useful
            confidential information learned through Distributor at IHS and
28          to use all such information only as necessary and appropriate

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

35

for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) financial information about IHS, its shareholders, customers, or prospective customers, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) **all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof**, (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records**, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) Here you seek confidential information, prohibited from disclosure by Clauses 8-9 of this section. As stated above, the Supreme Court has held that confidential business information has long been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at \*17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at \*18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and commercial or financial information obtained from a person, and is privileged or confidential.'"

36

1      Notwithstanding these objections, and without waiving them, Responding Party responds as

2  follows: CONFIDENTIALITY DESIGNATION: Responding Party herein designates the information

3  and, where marked, documents provided in response to this interrogatory as "Confidential," within the

4  meaning of the protective order in effect for this case, at ECF 055:

5      For the monies that were not paid to James Winters during the time frame in question, he was

6  not entitled to receive income, as a result of his suspension and termination, for the reasons stated in the

7  termination letter, IHS00176, relating to James Winters' violations of the Distributor Agreement in

8  many ways, including the following ways: He failed to secure the agreed minimum requirement for

9  new customers/facilities, required by § IV(2) of the agreement. He failed to adequately perform all

10 services and duties assigned by IHS, required by Independent Distributor Section, § B of the

11 agreement. He failed to maintain all accounts assigned to him, including providing reasonable and

12 necessary after sale customer support, installation of equipment and software, in service instructions for

13 setting up IHS Service's equipment and training personnel of new customers in using the IHS Services,

14 and proving further on-site training or services as necessary, as required by § I(1) of the agreement. He

15 failed to properly safeguard IHS's trade secrets, commercially useful confidential information,

16 proprietary and/or private information, required by §§ III(4) and (7) of the agreement. He failed to

17 conduct business in a matter that reflected favorably at all times on IHS Products and Services and the

18 good name, goodwill and reputation of IHS, required by § 10(i) of the agreement. He engaged a third

19 party, Terrance Walker, to work on his accounts in direct violation of the terms of § 13 of the

20 agreement.

21 **INTERROGATORY NO. 18**

22     Identify all documents showing that Defendant has complied with FAR part 52.232-40 in

23 payments to Winters between Sept. 2014 and today. (See e.g. EFC 4, Exhibit 7, page 3 1 Contract

24 "VA69D17D0167."))

25 **RESPONSE TO INTERROGATORY NO. 18**

26     OBJECTION: lacks foundation and assumes facts not developed, with regard to the assumption

27 that Winters is owed income after his termination, and also as to the assumption that Defendant has not

28 complied with its obligations to pay Winters in an appropriate manner.  OBJECTION: vague,

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

37

1  ambiguous, and overly broad, with respect to the phrase, "all documents showing that Defendant has

2  complied with FAR part 52.232-40 in payments to Winters between Sept. 2014 and today."

3  OBJECTION: may call for a legal conclusion as to regulatory compliance issues.  OBJECTION: may

4  call for confidential attorney work product.  OBJECTION: not relevant and not reasonably calculated to

5  lead to the discovery of relevant evidence, as this interrogatory, seeks information concerning

6  regulatory-compliance issues, which are not at issue in this tortious-interference case.  Moreover, this

7  interrogatory seeks information that is not relevant or reasonably calculated to lead to the discovery of

8  relevant information regarding Responding Party's private business affairs and contracts with the

9  Veterans Administration, to which Plaintiff was not a party and had no contractual rights or privity.

10 The lawsuit concerns Defendant's alleged tortious interference with the alleged contractual relations

11 with James Winters and Plaintiff, not Defendant's own contractual relations with the Veteran's

12 Administration and James Winters.  Plaintiff was not a party to any IHS' contracts, including its VA

13 contracts and its Distributor Agreement with James Winters.  Plaintiff has no contractual privity or

14 rights against Responding Party regarding such matters.  IHS' payments to James Winters under the

15 Distributor Agreement for an IHS-VA contract, is not material to the legal elements of your tortious-

16 interference claim, including because any such payments were governed by IHS' contract with James

17 Winters, to which you were not a party and to which you have no legal standing or privity with IHS.

18 OBJECTION: calls for confidential business information.  Responding Party expressly prohibited

19 James Winters from entering into any contract or commitment with any third party for or on behalf of

20 IHS, including you.  This prohibition, contained in the Distributor Agreement is set forth as follows:

21 "**Distributors Inability to Contract for IHS**: In spite of anything contained in this Agreement to the

22 contrary, Distributor shall not have the right to make any contracts or commitments for or on behalf of

23 IHS without first obtaining the express written consent of IHS."  (*Distributor Agreement*, § III (14),

24 produced as a confidential document at IHS-00181-00182 (emphasis in original).)  Responding Party

25 expressly reserved its right of confidentiality to its trade secrets, commercially useful confidential

26 information, proprietary and/or private information, in § III (7) of its Distributor Agreement, set forth

27 as follows:

28 ///

The Godden Law Firm, P.C.
8690 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

IHS's competitive success depends upon the proper safeguarding of trade secrets and confidential information developed within IHS or entrusted to by its customers. Some of the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well. Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) **financial information about IHS, its shareholders, customers, or prospective customers**, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) **all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof**, (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records,** and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) Your request seeks information that is confidential under Clauses 2, 8, and 9, of this section of the Distributor Agreement. As stated above, the Supreme Court has held that confidential business information has long been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus*, *supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  *Worldcom, Inc., supra,* 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained
2  in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable
3  statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption
4  4 provides that a federal agency may withhold information if it constitutes 'trade secrets and
5  commercial or financial information obtained from a person, and is privileged or confidential." On
6  these objections, Responding Party refuses to answer the Interrogatory.

7  **INTERROGATORY NO. 19**

8  Identify all VA contracts Defendant has obtained without the help of Winters since Sept. 2014.

9  **RESPONSE TO INTERROGATORY NO. 19**

10  OBJECTION: not relevant and not reasonably calculated to lead to the discovery of relevant
11  evidence, as this interrogatory, seeks documents concerning Responding Party's private contracts with
12  the Veterans' Administration, to which Plaintiff was not a party and had no contractual rights or privity.
13  The lawsuit concerns Defendant's alleged tortious interference with the alleged contractual relations
14  with James Winters and Plaintiff, not Defendant's own contractual relations with the Veteran's
15  Administration, which were obtained without the help of James Winters. Plaintiff was not a party to
16  IHS-VA contracts, and he had no contractual privity or rights against Responding Party regarding such
17  matters. The identification of IHS-VA contracts, which were obtained by IHS without the help of
18  James Winters is not material to the legal elements of your tortious-interference claim, including
19  because any non-Winters-obtained contracts would have no bearing on any aspect of your case and
20  you were not a party to such contract and you have no legal standing or privity with IHS to assert any
21  claims regarding such matters. OBJECTION: vague and ambiguous as to the phrase "obtained without
22  the help of Winters." OBJECTION: calls for confidential business information. Responding Party
23  expressly prohibited James Winters from entering into any contract or commitment with any third party
24  for or on behalf of IHS, including you. This prohibition, contained in the Distributor Agreement is set
25  forth as follows: "**Distributors Inability to Contract for IHS**: In spite of anything contained in this
26  Agreement to the contrary, Distributor shall not have the right to make any contracts or commitments
27  for or on behalf of IHS without first obtaining the express written consent of IHS." (*Distributor*
28  *Agreement*, § III (14), produced as a confidential document at IHS-00181-00182 (emphasis in

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

40

1  original).)   OBJECTION: calls for confidential business information.  Responding Party expressly

2  reserved its right of confidentiality to its trade secrets, commercially useful confidential information,

3  proprietary and/or private information, in § III (7) of its Distributor Agreement, set forth as follows:

> IHS's competitive success depends upon the proper
> safeguarding of trade secrets and confidential information
> developed within IHS or entrusted to by its customers. Some of
> the information Distributors receive also may involve the
> privacy interests of individuals and must be safeguarded for that
> reason as well, Distributor promises to preserve the
> confidentiality of IHS's trade secrets and commercially useful
> confidential information learned through Distributor at IHS and
> to use all such information only as necessary and appropriate
> for IHS's legitimate business purposes. Distributor also
> promises to safeguard against disclosure without the consent of
> affected persons all information touching on the privacy
> interests of employees of IHS or customers or employees of
> customers. Such trade secrets, commercially useful confidential
> information, proprietary and/or private information include
> without limitation (1) information about IHS's marketing
> strategies, (2) **financial information about IHS, its
> shareholders, customers, or prospective customers**, (3) the
> identity of IHS's customers and/or contact persons at such
> customers or prospective customers, (4) communications
> between IHS and any customers or potential customers, (5) the
> contents of IHS's business plans, its products or its proposals to
> present to potential customers, (6) the names, locations,
> practices or requirements of any vendors, suppliers, personnel
> or any other persons having a business relationship with IHS,
> (7) any confidential or secret development or research work of
> IHS, including information concerning any future or proposed
> services or products, (8) **all of IHS's accountings, costs,
> revenue and other financial records and documents, as well
> as the contents thereof**, (9) **IHS's documents, contracts,
> agreements, correspondence and all other similar business
> records,** and (10) any other confidential or secret aspect of the
> business of IHS, or its subsidiaries, affiliates or divisions.

21  (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis

22  added).)  Your interrogatory requests information that is made confidential by Clauses 2, 8, and 9 of

23  this section.  Again, in *Carpenter*, 484 U.S. 19, 26, *supra*, the Supreme Court held that confidential

24  business information has long been recognized as property.  *ABM Indus.*, 2010 U.S. Dist. LEXIS

25  143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004;

26  *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U.

27  S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and

28  conduct of its business is a species of property to which the corporation has the exclusive right and

1  benefit, and which a court of equity will protect through the injunctive process or other appropriate
2  remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of*
3  *Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI*
4  *Worldcom, Inc., supra,* 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained
5  in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable
6  statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption
7  4 provides that a federal agency may withhold information if it constitutes 'trade secrets and
8  commercial or financial information obtained from a person, and is privileged or confidential."
9  OBJECTION: vague and ambiguous as to the phrase, "all VA contracts that James Winters helped
10  Defendants with." On these objections, Defendant will not answer the interrogatory.

11  **INTERROGATORY NO. 20**

12      Identify all training that Defendant had in obtaining federal procurements from the VA that the
13  Defendants have had since Sept. 2014.

14  **RESPONSE TO INTERROGATORY NO. 20**

15      OBJECTION: lacks foundation and assumes facts not in evidence, including the assumption
16  that one's procurement of requests for proposals or bids from the VA, which are publicly announced,
17  requires any specialized training. OBJECTION: not relevant and not reasonably calculated to lead to
18  the discovery of relevant evidence, as this interrogatory, seeks documents concerning Responding
19  Party's business activities concerning its training implemented for obtaining federal procurements from
20  the VA. The lawsuit concerns Defendant's alleged tortious interference with the alleged contractual
21  relations with James Winters and Plaintiff, not Defendant's business activities regarding the training of
22  its staff to procure contracts from the Veteran's Administration. This interrogatory appears to be aimed
23  at regulatory-compliance issues, which are not relevant to the claim of this case. Information
24  concerning such training by IHS is not material to the legal elements of your tortious-interference
25  claim, including because the matter of such training by IHS would have no bearing on any aspect of
26  your case. OBJECTION: calls for confidential business information. Responding Party expressly
27  prohibited James Winters from entering into any contract or commitment with any third party for or on
28  behalf of IHS, including you. This prohibition, contained in the Distributor Agreement is set forth as

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-831-9455

1  follows: "**Distributors Inability to Contract for IHS**: In spite of anything contained in this

2  Agreement to the contrary, Distributor shall not have the right to make any contracts or commitments

3  for or on behalf of IHS without first obtaining the express written consent of IHS." (*Distributor*

4  *Agreement*, § III (14), produced as a confidential document at IHS-00181-00182 (emphasis in

5  original).)   OBJECTION: calls for confidential business information.   Responding Party expressly

6  reserved its right of confidentiality to its trade secrets, commercially useful confidential information,

7  proprietary and/or private information, in § III (7) of its Distributor Agreement, set forth as follows:

> IHS's competitive success depends upon the proper safeguarding of trade secrets and confidential information developed within IHS or entrusted to by its customers. Some of the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well. Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) financial information about IHS, its shareholders, customers, or prospective customers, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof, (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records,** and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

25  (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis

26  added).)   Your interrogatory requests information that is made confidential by Clause 9 of this section.

27  Again, in *Carpenter*, 484 U.S. 19, 26, *supra*, the Supreme Court held that confidential business

28  information has long been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

43

1 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*,

2 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. §

3 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and

4 conduct of its business is a species of property to which the corporation has the exclusive right and

5 benefit, and which a court of equity will protect through the injunctive process or other appropriate

6 remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of

7 Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI

8 Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained

9 in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable

10 statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption

11 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and

12 commercial or financial information obtained from a person, and is privileged or confidential."

13 OBJECTION: vague and ambiguous as to the phrase, "all VA contracts that James Winters helped

14 Defendants with." On these objections, Defendant will not answer the interrogatory.

15 **INTERROGATORY NO. 21**

16 Identify all documents showing that Winters was "fully trained and completely competent to

17 perform the required work" (See EFC 4, Exhibit 7, page 10 Contract "VA69D17D0167") that

18 defendant claims Winter's was deficient in performing in terminating Winter's distributor agreement in

19 Feb. 2018.

20 **RESPONSE TO INTERROGATORY NO. 21**

21 OBJECTION: lacks foundation and assumes facts not in evidence, including the assumption

22 that Defendant's assertions that James Winters' failure to perform his obligations under the Distributor

23 Agreement demonstrated or implicated a lack of his being fully trained or competent to perform the

24 required work. OBJECTION: not relevant and not reasonably calculated to lead to the discovery of

25 relevant evidence, as this interrogatory, seeks documents concerning Responding Party's business

26 activities concerning its training of its staff, here, James Winters. The lawsuit concerns Defendant's

27 alleged tortious interference with the alleged contractual relations with James Winters and Plaintiff, not

28 Defendant's business activities regarding the training of its staff to perform the tasks of their distributor

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  agreements.  This interrogatory appears to be aimed at regulatory-compliance issues, which are not

2  relevant to the claim of this case.  Information concerning such training by IHS is not material to the

3  legal elements of your tortious-interference claim, including because the matter of such training by IHS

4  would have no bearing on any aspect of your case.  OBJECTION: calls for confidential business

5  information.  Responding Party expressly prohibited James Winters from entering into any contract or

6  commitment with any third party for or on behalf of IHS, including you.  This prohibition, contained in

7  the Distributor Agreement is set forth as follows: "**Distributors Inability to Contract for IHS**: In spite

8  of anything contained in this Agreement to the contrary, Distributor shall not have the right to make

9  any contracts or commitments for or on behalf of IHS without first obtaining the express written

10  consent of IHS."  (*Distributor Agreement*, § III (14), produced as a confidential document at IHS-

11  00181-00182 (emphasis in original).)   OBJECTION: calls for confidential business information.

12  Responding Party expressly reserved its right of confidentiality to its trade secrets, commercially useful

13  confidential information, proprietary and/or private information, in § III (7) of its Distributor

14  Agreement, set forth as follows:

15       IHS's competitive success depends upon the proper

16  safeguarding of trade secrets and confidential information
developed within IHS or entrusted to by its customers. Some of

17  the information Distributors receive also may involve the
privacy interests of individuals and must be safeguarded for that

18  reason as well. Distributor promises to preserve the
confidentiality of IHS's trade secrets and commercially useful

19  confidential information learned through Distributor at IHS and
to use all such information only as necessary and appropriate

20  for IHS's legitimate business purposes. Distributor also
promises to safeguard against disclosure without the consent of

21  affected persons all information touching on the privacy
interests of employees of IHS or customers or employees of

22  customers. Such trade secrets, commercially useful confidential
information, proprietary and/or private information include

23  without limitation (1) information about IHS's marketing
strategies, (2) financial information about IHS, its shareholders,

24  customers, or prospective customers, (3) the identity of IHS's
customers and/or contact persons at such customers or

25  prospective customers, (4) communications between IHS and
any customers or potential customers, (5) the contents of IHS's

26  business plans, its products or its proposals to present to
potential customers, (6) the names, locations, practices or

27  requirements of any vendors, suppliers, personnel or any other
persons having a business relationship with IHS, (7) any

28  confidential or secret development or research work of IHS,
including information concerning any future or proposed

45

1   services or products, (8) all of IHS's accountings, costs, revenue
    and other financial records and documents, as well as the
2   contents thereof, (9) **IHS's documents, contracts, agreements,**
    **correspondence and all other similar business records,** and
3   (10) any other confidential or secret aspect of the business of
    IHS, or its subsidiaries, affiliates or divisions.

4   (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis

5   added).)   Your interrogatory here seeks information that is made confidential by Clause 9 of this

6   section.   Again, in *Carpenter*, 484 U.S. 19, 26, *supra*, the Supreme Court held that confidential

7   business information has long been recognized as property.   *ABM Indus.*, 2010 U.S. Dist. LEXIS

8   143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004;

9   *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U.

10  S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and

11  conduct of its business is a species of property to which the corporation has the exclusive right and

12  benefit, and which a court of equity will protect through the injunctive process or other appropriate

13  remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of*

14  *Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI*

15  *Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained

16  in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable

17  statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption

18  4 provides that a federal agency may withhold information if it constitutes 'trade secrets and

19  commercial or financial information obtained from a person, and is privileged or confidential.'"

20  OBJECTION: vague and ambiguous as to the phrase, "all VA contracts that James Winters helped

21  Defendants with." On these objections, Defendant will not answer the interrogatory.

22  **INTERROGATORY NO. 22**

23      Identify all communications (and documents evidencing such) that Defendant had with Winters

24  in regards to the deficiencies used by Defendant as a basis to terminate Winters' distributor agreement

25  on or prior to November 2017.

26  **RESPONSE TO INTERROGATORY NO. 22**

27      OBJECTION: Compound and/or improper use of subparts, the effect of which causes this set of

28  interrogatories to exceed the number that may be propounded without leave of Court. *See Kendall*

The Geddes Law Firm, P.C.
3600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  *supra*, 174 F.R.D. at 685 (subsequent questions contained in an interrogatory, which can "stand alone,"

2  are to be counted as separate interrogatories).   Here, the first part of the interrogatory requests

3  identification of all communications that Defendant had with Winters relating to deficiencies on which

4  Defendant based the termination of Winters' distributor agreement with IHS.  The second part of the

5  interrogatory requests the identification of all documents evidencing the same.  OBJECTION: overly

6  broad and unduly burdensome with respect to the phrase "all communications . . . that Defendant had

7  with Winters in regards to the deficiencies used by Defendant as a basis to terminate Winters'

8  distributor agreement."  *See Krause supra*, 2014 U.S. Dist. LEXIS 14872, at *16 ("[a] discovery

9  request is overly broad and unduly burdensome on its face if it uses an omnibus term such as 'relating

10  to,' 'pertaining to,' or 'concerning' to modify a general category or broad range of documents or

11  information"); and *Dauska*, 291 F.R.D. at 261.   OBJECTION: calls for confidential business

12  information.  Responding Party expressly reserved its right of confidentiality to its trade secrets,

13  commercially useful confidential information, proprietary and/or private information, in § III (7) of its

14  Distributor Agreement, set forth as follows:

15    IHS's competitive success depends upon the proper
16    safeguarding of trade secrets and confidential information
   developed within IHS or entrusted to by its customers. Some of
17    the information Distributors receive also may involve the
   privacy interests of individuals and must be safeguarded for that
18    reason as well. Distributor promises to preserve the
   confidentiality of IHS's trade secrets and commercially useful
19    confidential information learned through Distributor at IHS and
   to use all such information only as necessary and appropriate
20    for IHS's legitimate business purposes. Distributor also
   promises to safeguard against disclosure without the consent of
21    affected persons all information touching on the privacy
   interests of employees of IHS or customers or employees of
22    customers. Such trade secrets, commercially useful confidential
   information, proprietary and/or private information include
23    without limitation (1) information about IHS's marketing
   strategies, (2) financial information about IHS, its shareholders,
24    customers, or prospective customers, (3) the identity of IHS's
   customers and/or contact persons at such customers or
25    prospective customers, (4) communications between IHS and
   any customers or potential customers, (5) the contents of IHS's
26    business plans, its products or its proposals to present to
   potential customers, (6) the names, locations, practices or
27    requirements of any vendors, suppliers, personnel or any other
   persons having a business relationship with IHS, (7) any
28    confidential or secret development or research work of IHS,
   including information concerning any future or proposed

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
6600 Technology Way, Suite 197
Reno, NV 89521
Phone 775-853-9455

services or products, (8) all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof, (9) **IHS's documents, contracts, agreements, correspondence and all other similar business records**, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) Here you seek confidential information, prohibited from disclosure by Clause 9 of this section. As stated above, the Supreme Court has held that confidential business information has long been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and commercial or financial information obtained from a person, and is privileged or confidential."

Notwithstanding these objections, and without waiving them, Responding Party responds as follows: CONFIDENTIALITY DESIGNATION: Responding Party herein designates the information provided in response to this interrogatory as "Confidential," within the meaning of the protective order in effect for this case, at ECF 055:

The following communications, or activities for which there were communications, relate to Winters' deficiencies, which provided a basis to terminate his distributor agreement:

In or about 2014, James Winters signed on to be an independent distributor for IHS' monitoring services in state of IOWA. But James Winters brought in only one in account in Iowa, per the terms of the contract, of which fact there were communications after the Distributor Agreement was signed. At

48

1  or about the end of year 2016, James Winters expressed more and more personal issues where he didn't
2  know what he could of for IHS anymore and would vacillate on the question of whether he would
3  continue with IHS.  He was supposed to service the accounts he referred, but he failed to maintain the
4  accounts, and he visited only two accounts, one time each, at the VA Richmond and VA Great Lakes
5  sites.  But he didn't service or maintain accounts at all prior to Richmond in 2017, and then performed
6  only the two, one-day visits referenced here.  In or about February of 2017, James Winters
7  communicated a desire to try to get on track with his IHS obligations.  During this period, James
8  Winters was not maintaining accounts, as required by the Distributor Agreement.  The nurses and
9  medical teams were not serviced by James and this would put his burden of his duties on others.

10  In 2015-2016 James would disappear completely for periods of time.  James Winters
11  communicated with IHS as to his particular failures to comply with the requirements of his agreement,
12  attributing his failures to personal issues he had. Sometime in 2016/2017, James Winters provided IHS
13  with various places to wire money (different states), and he admitted that he had moved to Texas in
14  July of 2017 and taken a job, and that he would not be available to do much for IHS.  IHS replaced
15  James Winters in Iowa with a full time representative.

16  In 2017, IHS picked up a VA account for the Richmond Area, by word of mouth.  James
17  Winters flew there and did an in-service call.  In or about February 2017, James Winters informed IHS
18  of a solicitation IHS could make a bid on for VA Great Lakes.  For months after the bid was submitted,
19  James Winters disappeared again and said he was moving on to a new job and could not move forward
20  with IHS, as required by the Distributor Agreement.  James Winters advised IHS that he could not carry
21  out his obligations under the Distributor Agreement.

22  In or about July of 2017, IHS learned it was awarded the VA Great Lakes contract.  IHS
23  communicated with James Winters that he was going to need to get involved if he were going to be
24  involved on that project.  James Winters provided initial in-servicing calls for this account, but he was
25  tied to a new job in Texas and was unable to carry out his obligations under the Distributor Agreement.
26  Representatives from the Great Lakes account communicated to IHS great displeasure with James
27  Winters' performance, stating that James Winters appeared not to care and appeared as if he did not
28  want to be there.  IHS let James Winters know that he was being paid as a goodwill gesture, but it was

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

49

1  certainly not due to his performance, based on his failure to comply with this obligations under the
2  Distributor Agreement.

3      In or about November of 2017, rude emails were sent to IHS by Plaintiff. IHS did not know
4  what the matter was about and contacted James Winters regarding such matters. James Winters
5  initially assured Vanessa Parsons that Plaintiff was an unrelated business associate that he had some
6  back deals with, unrelated to IHS, but maybe Plaintiff had shown James Winters how to find bids,
7  which are not difficult to find as they are publicly advertised. Thus, James Winters told IHS to ignore
8  Plaintiff. But Plaintiff continued to send disturbing emails to IHS, threatening IHS with FBI raids,
9  lawsuits, and sending the IHS bookkeeper to jail. Yet, James kept assuring IHS that he was really
10 embarrassed by Plaintiff, describing Plaintiff as a massive hot head with issues. James Winters was
11 very aware he could not subcontract for IHS.

12     In or about December of 2017 or early January 2018, James Winters first informed IHS that he
13 might have promised to pay Plaintiff 50% of the fees earned by James Winters at IHS. Then IHS
14 received more disturbing emails from Mr. Walker. In these emails he claimed that IHS was not paying
15 the amounts owed. In response, James Winters unequivocally advised IHS that James Winters was
16 quitting or terminating his Distributor Agreement because he had moved on with his life in Texas,
17 where he had a new job, and that it wasn't worth it for him to try to move forward with IHS, as Mr.
18 Walker was making his life very difficult for their own personal, business relationship. James Winters
19 was aware that he couldn't maintain and service his accounts, as required by the Distributor Agreement,
20 and his relationship with Plaintiff appeared to pushed him over the edge. James Winters asked Vanessa
21 Parsons if James Winters could make a new business relationship with IHS, possibly if he found some
22 local, private doctor accounts in his Texas Area. Vanessa Parsons informed James Winters that it was a
23 problem that he had a "secret" business relationship with Plaintiff that was never mentioned before,
24 which was prohibited by the Distributor Agreement, and an investigation needed to be done to uncover
25 the scope of the problem. James Winters initially appeared willing to assist IHS with its investigation
26 concerning this matter. IHS' business attorney tried to work with James Winters, to carry out this
27 investigation. But, it appeared that James Winters was not sincere in wanting to assist in an
28 investigation of the matter, and James Winters appeared to be "playing both sides," and he apparently

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  was providing Plaintiff with confidential information.  During the approximate period of December
2  2017 through or about early February 2018, IHS' business attorney was trying to carry out this
3  investigation, including by having James Winters explain what his relationship was to Plaintiff, who
4  appeared to be acting as an advisor or attorney to James Winters, citing laws and making threats.
5  During this time period, Plaintiff communicated to IHS' VA account representatives, making demands
6  and threats.  James Winters was not properly cooperating with IHS' investigation into this matter and
7  he was not addressing his failures to comply with his obligations under the Distributor Agreement.

8        On February 8, 2018, James Winters was terminated as a distributor, the communications of
9  which are set forth in IHS-00176.  The documents evidencing communications regarding such matters
10  are set forth as follows:  IHS 00177-00189 (the distributor agreement); IHS-0083-00088 (email from
11  James Winters detailing his violations of the distributor agreement); IHS-00227, produced herein with
12  redactions for bank account and routing information, which shows that James Winters moved to Texas,
13  and would not properly service his Iowa Territory; IHS-00228-00229, produced herein, two emails
14  from James Winters, confirming that he was "off the grid," in July and August of 2017, which
15  evidenced an inability to properly service his accounts, or adversely impacted his ability to service his
16  accounts; and emails from Plaintiff showing that James Winters had wrongfully disclosed confidential
17  information, including those emails of: IHS00089-90 (Email: Threatening Breach);
18  IHS00091-00094 (Email: Re: FW: James Winters Commissions from July to Present); IHS00142-
19  00145 (Email Thread: Subcontractor payment: Walker Requests VA Discontinue Payments on
20  VA24617C0183); IHS00148-00153 (Emails from Walker re Claim that I.H.S. is Violating FAR
21  52.242-5 - Payments to Small Business Subcontractors and 52.232-40(c)); IHS00154 (Email from
22  James Winters re his "subcontract" with Terrance Walker); IHS00155-00161 (Emails regarding
23  Terrance Walker demands and Dan Germain disclaimer of any I.H.S.-Terrance Walker affiliation); and
24  IHS00095 (Andrew Simonian Email to James Winters re Acknowledgment Points re Plaintiff).

25  **INTERROGATORY NO. 23**

26        Identify all documents showing Defendant's full compliance with the provision of the federal
27  contract (signed by James Winters), which states: " (r) ...... The Contractor agrees to comply with ......
28  41 U.S.C. 4712 and 10 US. C. 2409 relating to whistleblower protections;" (See EFC 4, Exhibit 7, page

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1    23 Contract "VA69D17D0167").

2    **RESPONSE TO INTERROGATORY NO. 23**

3        OBJECTION: vague, ambiguous, and overly broad, with respect to the phrase, "full
4 compliance" OBJECTION: may call for a legal conclusion as to regulatory compliance issues.
5 OBJECTION: may call for confidential attorney work product. OBJECTION: not relevant and not
6 reasonably calculated to lead to the discovery of relevant evidence, as this interrogatory, seeks
7 information concerning regulatory-compliance issues, which are not at issue in this tortious-
8 interference case. Moreover, this interrogatory seeks information that is not relevant or reasonably
9 calculated to lead to the discovery of relevant information regarding Responding Party's private
10 business affairs and contracts with the Veterans Administration, to which Plaintiff was not a party and
11 had no contractual rights or privity. The lawsuit concerns Defendant's alleged tortious interference
12 with the alleged contractual relations with James Winters and Plaintiff, not Defendant's own
13 contractual relations with the Veteran's Administration and with James Winters—nor does this action
14 assert any whistleblower claims. Plaintiff was not a party to any IHS' contracts, including its VA
15 contracts and its Distributor Agreement with James Winters. Plaintiff has no contractual privity or
16 rights against Responding Party regarding such matters. Regulatory-compliance issues are not material
17 to the legal elements of your tortious-interference claim. OBJECTION: calls for confidential business
18 information. Responding Party expressly prohibited James Winters from entering into any contract or
19 commitment with any third party for or on behalf of IHS, including you. This prohibition, contained in
20 the Distributor Agreement is set forth as follows: "**Distributors Inability to Contract for IHS**: In spite
21 of anything contained in this Agreement to the contrary, Distributor shall not have the right to make
22 any contracts or commitments for or on behalf of IHS without first obtaining the express written
23 consent of IHS." (*Distributor Agreement*, § III (14), produced as a confidential document at IHS-
24 00181-00182 (emphasis in original).) Responding Party expressly reserved its right of confidentiality
25 to its trade secrets, commercially useful confidential information, proprietary and/or private
26 information, in § III (7) of its Distributor Agreement, set forth as follows:

27
28           IHS's competitive success depends upon the proper
safeguarding of trade secrets and confidential information
developed within IHS or entrusted to by its customers. Some of

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
9680 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-8455

the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well, Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) financial information about IHS, its shareholders, customers, or prospective customers, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof, **(9) IHS's documents, contracts, agreements, correspondence and all other similar business records,** and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

(*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) Your request seeks information that is confidential under Clause 9, of this section of the Distributor Agreement concerning IHS' business activities. As stated above, the Supreme Court has held that confidential business information has long been recognized as property. *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at \*17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467 U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at \*18 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality

1  provisions of applicable statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at
2  35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade
3  secrets and commercial or financial information obtained from a person, and is privileged or
4  confidential." On these objections, Responding Party refuses to answer the Interrogatory.

5  **INTERROGATORY NO. 24**

6      Identify all documents showing Defendant's full compliance with the provision of the federal
7  contract (signed by James Winters), which states: "52.203-19, Prohibition on Requiring Certain Internal
8  Confidentiality Agreements or Statements (JAN 2017) (section 743 of Division E, Title WI, of the
9  Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor
10  provisions in subsequent appropriations acts (and as extended in continuing resolutions))"(See EFC 4,
11  Exhibit 7, page 37 Contract "VA69D17D0167").

12  **RESPONSE TO INTERROGATORY NO. 24**

13      OBJECTION: vague, ambiguous, and overly broad, with respect to the phrase, "full
14  compliance"  OBJECTION: may call for a legal conclusion as to regulatory compliance issues.
15  OBJECTION: may call for confidential attorney work product.  OBJECTION: not relevant and not
16  reasonably calculated to lead to the discovery of relevant evidence, as this interrogatory, seeks
17  information concerning regulatory-compliance issues, which are not at issue in this tortious-
18  interference case.  Moreover, this interrogatory seeks information that is not relevant or reasonably
19  calculated to lead to the discovery of relevant information regarding Responding Party's private
20  business affairs and contracts with the Veterans Administration, to which Plaintiff was not a party and
21  had no contractual rights or privity.  The lawsuit concerns Defendant's alleged tortious interference
22  with the alleged contractual relations between James Winters and Plaintiff, not Defendant's own
23  contractual relations with the Veteran's Administration and with James Winters—nor does this tort
24  action assert claims involving a regulatory prohibition regarding internal confidentiality agreements or
25  statements.  Plaintiff was not a party to any IHS' contracts, including its VA contracts and its
26  Distributor Agreement with James Winters.  Plaintiff has no contractual privity or rights against
27  Responding Party regarding such matters.  Regulatory-compliance issues are not material to the legal
28  elements of your tortious-interference claim.  OBJECTION: calls for confidential business information.

The Geddes Law Firm, P.C.
3600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  Responding Party expressly prohibited James Winters from entering into any contract or commitment

2  with any third party for or on behalf of IHS, including you.  This prohibition, contained in the

3  Distributor Agreement is set forth as follows: "**Distributors Inability to Contract for IHS**: In spite of

4  anything contained in this Agreement to the contrary, Distributor shall not have the right to make any

5  contracts or commitments for or on behalf of IHS without first obtaining the express written consent of

6  IHS." (*Distributor Agreement*, § III (14), produced as a confidential document at IHS-00181-00182

7  (emphasis in original).)  Responding Party expressly reserved its right of confidentiality to its trade

8  secrets, commercially useful confidential information, proprietary and/or private information, in § III

9  (7) of its Distributor Agreement, set forth as follows:

> IHS's competitive success depends upon the proper safeguarding of trade secrets and confidential information developed within IHS or entrusted to by its customers. Some of the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well, Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) financial information about IHS, its shareholders, customers, or prospective customers, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof, **(9) IHS's documents, contracts, agreements, correspondence and all other similar business records,** and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.

27  (*Distributor Agreement*, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis

28  added).)  Your request seeks information that is confidential under Clause 9, of this section of the

The Geddes Law Firm, P.C.
9600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  Distributor Agreement concerning IHS' business activities.  As stated above, the Supreme Court has

2  held that confidential business information has long been recognized as property.  *ABM Indus.*, 2010

3  U.S. Dist. LEXIS 143570, at *17 (citing *Carpenter*, 484 U.S. 19 at 26 (citing *Ruckelshaus, supra*, 467

4  U.S. at 1001-1004; *Dirks, supra*, 463 U.S. at 653, n. 10; *Board of Trade of Chicago, supra*, 198 U.S. at

5  250-251; and 5 U. S. C. § 552(b)(4)).  "'Confidential information acquired or compiled by a

6  corporation in the course and conduct of its business is a species of property to which the corporation

7  has the exclusive right and benefit, and which a court of equity will protect through the injunctive

8  process or other appropriate remedy.'"  *ABM Indus.*, 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3

9  W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, p. 260 (rev. ed. 1986) (footnote

10  omitted)); *see also MCI Worldcom, Inc., supra*, 163 F. Supp. 2d at 38 (the GSA's decision to disclose

11  the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality

12  provisions of applicable statutes, regulations and case law); and *MCI Worldcom, Inc.* 163 F. Supp. 2d at

13  35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade

14  secrets and commercial or financial information obtained from a person, and is privileged or

15  confidential."  On these objections, Responding Party refuses to answer the Interrogatory.

16

17

18  Dated this 5th day of February 2019.                    THE GEDDES LAW FIRM, P.C

19

20  .

21                                                                                        WILLIAM J. GEDDES
                                                                                         The Geddes Law Firm, P.C.
22                                                                                      8600 Technology Way, Suite 107
                                                                                         Reno, Nevada 89521
23
                                                                                         *Attorneys for Defendant Intelli-Heart*
24                                                                                      *Services, Inc.*

25

26

27

28

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

**VERIFICATION OF INTERROGATORY ANSWERS**

I, Vanessa Parsons, declare that I am the CEO of Defendant Intelli-Heart Services, Inc., in the above-captioned action, that I have read the foregoing answers to interrogatories and know the contents thereof, and the same are true to my knowledge, information, and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 5, 2019.

_____
Vanessa Parsons

57

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of the Geddes Law Firm, P.C., and that on **February 5, 2018**, I caused to be served a copy of the foregoing *Defendant's Response to Plaintiff's Interrogatories, Set No. 1, Nos. 1-24*, by deposit in the U.S. Mails, First-Class postage prepaid, and by e-mail, addressed to the following:

Terrance Walker
212 Hillcrest Drive, No. 1
Reno, NV 89509
Tel: 775-971-8679
Email: walkerbillion@gmail.com

*Plaintiff In Pro Per*

THE GEDDES LAW FIRM, P.C.

WILLIAM J. GEDDES
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com

*Attorneys for Defendant Intelli-Heart Services, Inc.*