# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TERRANCE WALKER, | 3:18-cv-00132-MMD-CBC |
| Plaintiff, | |
| v. | **ORDER** |
| INTELLI-HEART SERVICES, INC., | |
| Defendants. | |

Before the court is Plaintiff Terrance Walker's ("Walker") motion to quash Defendant Intelli-Heart Services, Inc.'s ("Intelli-Heart") subpoena duces tecum for James Winters ("Winters"). (ECF No. 66). Walker objects to each category of documents requested by Intelli-Heart's subpoena based upon his assertions that the requests are "overbroad" and that they "may include" certain confidential, privileged, and/or trade secrets. (*Id.* at 2-7). Intelli-Heart opposed, (ECF No. 69), and Walker replied (ECF Nos. 72, 73). Having considered all the above, the motion is denied.

## I.    BACKGROUND[1]

### A.    Factual Background

Walker is the sole proprietor of Walker Development & Trading Group. (ECF No. 4 at 1, n. 1; ¶ 6).  Walker provides professional consulting services related to federal contracts, including finding relevant contract solicitations, reviewing the solicitations, preparing bids, market research and the like. (*Id.*, ¶ 7).  Intelli-Heart is a California corporation that provides heart-monitoring services, including device-system sales, support and training. (*Id.*, ¶ 9; ECF No. 24, ¶ 5).

---

[1]    The facts as stated in this order are adopted from the pleadings on file in this case. (ECF No. 4, Plaintiff's First Amended Complaint; ECF No. 24, Defandant's Answer).

On September 30, 2014, Intelli-Heart entered into an agreement with James Winters. (ECF No. 24, ¶ 8). Pursuant to the terms of the agreement, Intelli-Heart and Winters agreed that Winters would act as a regional sales distributor for Intelli-Heart. In this position, Winters would market and support Intelli-Heart's services through sales to various entities, including the Department of Veteran's Affairs ("VA")". (*Id.*) Intelli-Heart agreed to pay Winters a commission of 10% from the sales he made with the VA on behalf of Intelli-Heart. (ECF No. 4, ¶ 31).

Shortly after Winters entered into this agreement, Winters entered into a separate agreement with Walker. (ECF No. 4, ¶ 33; Ex. 1). Under the terms of this agreement, Walker agreed to provide Winters with consulting services to assist Winters in marketing medical supplies and services to the government. (*Id.*, Ex. 1). According to the agreement, Walker would assist Winters in identifying government solicitations, seeking bids for medical services and supplies, explain issues related to the bidding process, and and the like. (*Id.*) Winters agreed to pay Walker 50% of his compensation from the "end supplies of medical services/supplies." (*Id.*) Winters was required to pay Walker within ten (10) days of receipt of his payment from the end medical supplier. (*Id.*) This contract was to be in effect for five (5) years. (*Id.*)

Walker allegedly assisted Winters in securing various government contracts with the VA related to the sale of Intelli-Heart's medical supplies and services. However, only four (4) of those contracts are identified in the complaint and at issue in this litigation. These contracts are as follows: (1) VA69D17D0167; (2) VA26317D0109; (3) VA24617C0183; and, (4) VA2498C10329. (ECF No. 4, ¶ 13).

According to Walker, Intelli-Heart was routinely late in paying Winters his commission payments on the VA contracts he helped Winters secure. As a result, Winters was late paying Walker. (ECF No. 4, ¶ 39-53). By November 2017, the payments to Winters were approximately 120 days late. (*Id.*) Due to the late payments, Walker began contacting the VA and representatives of Intelli-Heart demanding payment and alleging that Intelli-Heart was engaged in various types of nefarious conduct and

1    fraud. (*Id.*) Walker also threatened Intelli-Heart with litigation if his demands were not

2    met. (*Id.*, Exs. 9-14).

3          According to Intelli-Heart, Walker was unknown to them until late 2017 or early

4    2018. (*See Id.*, Ex. 6). Intelli-Heart denies it ever entered into any type of agreement with

5    Walker and it was unaware of the agreement between Walker and Winters until Walker

6    began communicating with Intelli-Heart representatives in late 2017 or early 2018. (*Id.*;

7    *See also* ECF No. 24). Moreover, Intelli-Heart asserts that the agreement between

8    Winters and Intelli-Heart prohibited Winters from entering into any type of agreement

9    with a third party, such as the agreement with Walker, without their express written

10   consent, which they never provided. (ECF No. 24, ¶¶ 8, 10-12).

11         Ultimately, Intelli-Heart cancelled its contract with Winters. Walker claims that

12   Intelli-Heart improperly cancelled the contract between itself and Winters, which resulted

13   in a breach of the agreement between Walker and Winters.

14         **B.    Procedural History**

15         On May 30, 2018, Walker filed his First Amended Complaint ("FAC") *pro se*

16   against Intelli-Heart. (ECF No. 4). The FAC asserts one cause of action against Intelli-

17   heart for intentional interference with his contractual relationship with Winters. (*Id.*, ¶

18   116). He seeks a variety of damages, including compensatory and punitive damages.

19   (*Id.*) Intelli-Heart answered the FAC on September 20, 2018, denying the vast majority of

20   the allegations in the complaint and asserting 31 affirmative defenses. (ECF No. 24).

21         Discovery has proved contentious between the parties. As such, the court has

22   taken an active role in managing this case and discovery through monthly case

23   management conferences. In addition, to address issues concerning the confidentially of

24   certain documents and other proprietary information that may be requested during

25   discovery, the court entered a protective order. (ECF No. 55). Unfortunately, the

26   discovery disputes have persisted, including the dispute presently before the court.

27         Specifically, on January 23, 2019, Intelli-Heart served a subpoena *duces tecum*

28   for the deposition of non-party, Winters. (ECF No. 66-1). In the subpoena, Intelli-Heart

3

requested 14 categories of documents from Winters to bring to his deposition. (ECF No. 66-1). The specific document requests are as follows:

| Request Number | Request |
|---|---|
| 1 | All Documents, Electronically Stored Information, or Tangible Things concerning or relating to any business dealings you have had with Terrance Walker, during the period of January 1, 2014 through the current date, including but not limited to any dealings involving Intelli-Heart Services, Inc. and any project, contract, or subcontract, with the United States Veterans Administration; |
| 2 | All payment records showing that you made payment to Terrance Walker for any business dealing you had with him, during the period of January 1, 2014 through the current date, including but not limited to any dealings involving Intelli-Heart Services, Inc. and any project, contract, or subcontract, with the United States Veterans Administration; |
| 3 | All Documents, Electronically Stored Information, or Tangible Things evidencing any business referrals or business leads Terrance Walker gave to you for any business dealing you had with him, during the period of January 1, 2014 through the current date, including on matters involving Intelli-Heart Services, Inc. and any project, contract, or subcontract, with the United States Veterans Administration; |
| 4 | All phone records showing phone call communications held between you and Terrance Walker, during the period of January 1, 2014 through the current date; |
| 5 | All emails by and between, and including, you and Terrance Walker during the period of January 1, 2014 through the current date regarding any matter involving Intelli-Heart Services, Inc.; |
| 6 | All emails by and between, and including, you and Terrance Walker during the period of January 1, 2014 through the current date regarding any matter involving the United States Veterans Administration; |
| 7 | All text messages by and between, and including, you and Terrance Walker during the period of January 1, 2014 through the current date regarding any matter involving Intelli-Heart Services, Inc.; |
| 8 | All text messages by and between, and including, you and Terrance Walker during the period of January 1, 2014 through the current date regarding any matter involving the United States Veterans Administration; |
| 9 | All Documents, Electronically Stored Information, or Tangible Things that you gave to Terrance Walker concerning Intelli-Heart Services, Inc.; |

| 10 | All Documents, Electronically Stored Information, or Tangible Things that you gave to Terrance Walker concerning the United States Veterans Administration; |
|----|------|
| 11 | All Documents, Electronically Stored Information, or Tangible Things that Terrance Walker gave to you concerning Intelli-Heart Services, Inc.; |
| 12 | All Documents, Electronically Stored Information, or Tangible Things that Terrance Walker gave you concerning the United States Veterans Administration; |
| 13 | All Documents, Electronically Stored Information, or Tangible Things evidencing or comprising any communications between you and anyone else, made during the period of January 1, 2014 through the current date concerning Intelli-Heart Services, Inc.; and |
| 14 | All Documents, Electronically Stored Information, or Tangible Things evidencing or comprising any communications between you and anyone else, made during the period of January 1, 2014 through the current date, concerning Terrance Walker. |

Walker has now moved to quash the subpoena. (ECF No. 66). Walker objects to each and every one of the requests on essentially the same basis. Specifically, Walker claims that each one of the document requests in the subpoena are: "*overbroad* as it *may include confidential information* to which Walker has a personal right and privilege in such as customers, clients, proposals, methods, techniques, trade secrets, proprietary information, and sales concerning Terrance Walker and other companies, as well as Walker's other clients." (*See* ECF No. 66) (emphasis added). He further states that each category of requests are "not limited to Winter's and Defendant's dealings with the US Department of Veterans Affairs and [are] not germane to this case." (*Id.*). As to Document Request Nos. 4 and 14, Walker further asserts that the information is "harassing and could potentially embarrassing information unrelated to this claim in this matter." (*Id.*)

Intelli-Heart argues Walker's motion should be denied for a variety of reasons. First, as the subpoena was served on a third-party, Winters, Walker does not have

standing to object to the document requests contained in the subpoena. (ECF No. 69). However, even if Walker does have standing to object to the requests in the subpoena, his objections are improper and unreasonable. (*Id.*) Thus, the motion should be denied in its entirety.

Walker filed a reply brief and asserted he did have standing to file his objections. (ECF No. 72). Walker raised a variety of other arguments in support of his initial objections. (*Id.*)

Winters, however, has not filed any objection to the subpoena nor has he moved to quash or modify the subpoena in any way.

## II.     LEGAL STANDARDS

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." Fed. R. Civ. P. 26(b)(1).

"A party or any other person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). There is a general rule that only the party to which a subpoena is directed has standing to challenge that subpoena. *See, e.g., Paws Up Ranch, LLC v. Green*, 2013 WL

6184940, *2 (D.Nev. Nov. 22, 2013). However, there appears to be a split of authority in this district as to whether an exception exists to this rule when the movant has a personal right or privilege in the information sought. *See id.*; *see also Wells Fargo Bank, N.A. v. ANC Vista I, LLC*, 2015 WL 557069, *2 n.6 (D.Nev. Feb. 11, 2015); *Wells Fargo Bank, N.A. v. Iny*, 2014 U.S. Dist. Lexis 62381, *3–4 (D.Nev. May 6, 2014). Some judges in this District have interpreted the plain language of Rule 45 as dictating that "only the party subject to the subpoena may bring a motion to quash." *In re: Rhodes Cos.*, 475 B.R. 733, 740–41 (D.Nev.2012) (expressly declining to adopt a "personal right or privilege" standing rule) (Pro, J.); *see also Salem Vegas, L.P. v. Guanci*, 2013 WL 5493126, *2–3 (D.Nev. Sept. 30, 2013) (Hoffman, J.).

On the other hand, several judges have recognized an exception to the general standing rule when the movant has a personal right or privilege in the subpoenaed material. *See, e.g., In re MGM Mirage Securities Litig.*, 2014 WL 6675732, *9 (D.Nev. Nov. 25, 2014) (Ferenbach, J.); *Painters Joint Committee v. J.L. Wallco, Inc.*, 2011 WL 4573349, *4 (D.Nev. Sept. 29, 2011) (Leen, J.), amended on other grounds, 2011 WL 5854714 (D.Nev. Nov. 21, 2011); *Copper Sands Home Owners Ass'n, Inc. v. Copper Sands Realty, LLC*, 2011 WL 112146, *2 (D.Nev. Jan. 13, 2011) (Leavitt, J.); *1st Tech., LLC v. Rational Enterps. Ltd.*, 2007 WL 5596692, *3 (D.Nev. Nov. 13, 2007) (Foley, J.); *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 695 (D.Nev.1994) (Johnston, J.). For purposes of this motion, the court will assume that a party does have standing to move to quash a subpoena on a third party when the movant has a personal right or privilege to the information sought.

However, "[a] party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the non-party are not grounds on which a party has standing to move to quash a subpoenas issued to a non-party, especially where the non-party, itself, has not objected." *G.K. Las Vegas Ltd. Partnership*, 2007 WL 119148 at* 4; *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633,

636-37 (C.D. Cal. 2005); *Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at \*4 (D. Nev. Jan. 27, 2016)

## III.    DISCUSSION

### A.    Walker Lacks Standing to Object Based On Claims the Requests are "Overbroad" or Request Information "Not Germane" to the Case

Walker's objections to each and every document request in the subpoena are the same and the basic thrust of those objections are that the requests are "overbroad." (ECF No. 66). Specifically, he asserts that each of the document requests are "*overbroad* as [they] *may include* confidential information to which Walker has a personal right and privilege in such as customers, clients, proposals, methods, techniques, trade secrets, proprietary information, and sales concerning Terrance Walker and other companies, as well as Walker's other clients." (ECF No. 66). In addition, Walker also claims that the requests request information that is "not germane" to this case. (*Id.*)

To the extent these objections are specific to claims that the documents requests are either overbroad or request irrelevant information, Walker does not have standing to challenge the subpoena requests. These objections have nothing to do with any personal right or privilege that Walker may have in the information requested. Moreover, Winters has not objected to the subpoena nor did he make any attempt to quash or modify the subpoena after it was issued. Therefore, to the extent that Walker's objections to the document requests in the subpoena are based on claims of overbreadth and/or relevance, these objections are overruled.

### B.    Any Objections Based On Alleged Disclosure of Trade Secrets Or Proprietary Business Information Are Protected By the Protective Order

Although the thrust of Walker's objections are focused upon claims that the requests are "overbroad," his objections go one step further. Specifically, he asserts that the requests are "overbroad" because they may request Winters to provide documents that he maintains a personal right and privilege in, i.e., trade secrets and/or proprietary business information related to his business, clients, techniques and the like. (ECF No.

8

66). Although Walker does not have standing to object to the requests based on the assertions of "overbreadth," Walker would have a personal right and privilege in protecting trade secret information or other proprietary business information.

Courts may quash or modify a subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). In analyzing an objection made under Rule 45(d)(3)(B)(i), the Court first must determine if the requested information is protected as a trade secret or confidential commercial information. *See e.g., Gonzales v. Google, Inc.,* 234 F.R.D. 674, 684 (N.D. Cal. 2006). The party resisting discovery "must make a strong showing that it has historically sought to maintain the confidentiality of this information." *Id.* (*quoting Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995)). Allegations of harm or prejudice must be supported with specific examples or articulated reasoning. *AFMS LLC v. United Parcel Serv. Co.*, 2012 WL 3112000, * 3 (S.D. Cal. July 30, 2012) ("broad allegations of harm" are insufficient).

Where a subpoenaed party meets that initial burden of showing the information is a trade secret or confidential commercial information, "the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without the undue hardship.'" *Gonzales*, 234 F.R.D. at 684. Courts have discussed "substantial need" as requiring a showing that "the requested discovery is relevant and essential to a judicial determination of [the party's] case." *Id.* at 685 (*citing Upjohn Co. v. Hygieia Biological Labs.*, 151 F.R.D. 355, 358 (E.D. Cal. 1993)). The Court must "balance the need for the trade secrets [or confidential information] against the claim of injury resulting from disclosure." *Id.* (*citing Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986)). "The determination of substantial need is particularly important in the context of enforcing a subpoena when discovery of a trade secret or confidential commercial information is sought from non-parties." *Id.* (*citing Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)).

1    Where the requesting party establishes a substantial need, courts will look to

2    whether procedures exist to mitigate any burden or prejudice to the nonparty. *See* Rule

3    45(c)(3)(C) (providing that the Court may order production "only upon specified

4    conditions"). In particular, courts often order that the information be produced subject to

5    a protective order. *See, e.g., Gonzales*, 234 F.R.D. at 686. Indeed, courts have

6    determined that "[a] protective order allowing 'confidential' or 'highly confidential'

7    designations is sufficient to protect a nonparty's trade secrets." *AFMS*, 2012 WL

8    3112000, at *7 (*citing In re McKesson Governmental Entities Average Price Litig.*, 264

9    F.R.D. 595, 603 (N.D. Cal. 2009)). "The relatively remote potential for inadvertent

10   disclosure of confidential documents does not justify the withholding of discovery

11   altogether." *Id.*

12   Here, the court finds that Walker has not made the required showing that the

13   information sought would, in fact, involve the disclosure of any type of trade secrets or

14   proprietary information. Walker's objections merely state that the requests, "*may*" require

15   the inclusion of such information. However, there has been no showing that the requests

16   *will* require the disclosure of such information. However, even if the court were to

17   assume that Walker had made a showing that the information requested would require

18   the disclosure of his trade secrets or other proprietary information, the court finds that

19   the information Intelli-Heart is requesting – in each of the requests – is relevant, proper

20   and necessary for Intelli-Heart to defend against Walker's claims in this case. Finally, to

21   the extent that any disclosure of such materials occurs or would be required, the

22   protective order that is already in place in this case would protect Walker's trade secrets

23   or any type of proprietary information from being disclosed improperly in this case. For

24   all of these reasons, Walker's motion to quash is denied.

25   ///

26   ///

27   ///

28

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion to quash duces tecum subpoena to James Winters (ECF No. 66) is **DENIED** in its entirety.

DATE: March 4, 2019.

_____
UNITED STATES MAGISTRATE JUDGE