1
2
3

**Terrance Walker,** *in propria persona*
212 Hillcrest Drive # 1
Reno, NV  89509
Tel: +1.775.971.8679
Email: walkerbillion@gmail.com

4

### IN THE UNITED STATES DISTRICT COURT FOR NEVADA

5

Terrance Walker                    :   **CIVIL CASE NO.** 3:18-CV-0132-MMD(CBC)
    Plaintiff,                      :

6

          vs.          : MOTION TO COMPEL INTERROGATORY
Intelli-heart Services Inc.,        : RESPONSES FROM DEFENDANT

7

    Defendants.                   :

8

9
10
11

COMES NOW, PLAINTIFF Walker, moving to compel interrogatory responses from Defendant pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iii) and the Magistrate's Order (EFC 103):

12

### I.   BACKGROUND OF PLAINTIFF'S ACTION FOR TORTIOUS INTEFERENCE

13
14
15
16
17
18
19
20
21

    Plaintiff brings this federal question, tortious interference action (EFC 4, para 1-3, 117) due to Defendant's (Intelli-heart Services Inc.) violations of, inter alia, his subcontractor rights (as a second-tier subcontractor) under state and federal contracting law. See e.g. FAR part 52.232-40 (EFC 4, para. 22-30). Defendant was a prime contractor of the VA. Plaintiff was a consultant (for the purpose of landing federal contracts) of James Winters; a subcontractor of Defendant (a heart monitoring company). Thus, Plaintiff was a subcontractor by definition. See e.g. FAR part 52.203-19(a) (a subcontractor is a "consultant" of "another subcontractor")(also see FAR part 52.232-40 guidance – EFC 4, para 22-30 -- a subcontractor is a "subcontractor" of "another subcontractor").   Defendant's contracts include these provisions (see e.g. EFC 4, Ex 7 pg 7, 31,32).

22
23

    Winters effectuated his right[1] to assign Walker as a subcontractor and 50 percent of his commissions (EFC 4, ex 1) before signing the contract with Intelli-heart (EFC 4, para 33)

24
25
26
27
28

---

1. As noted by the Ninth Circuit in <u>Russell Road Food and Beverage, LLC v. Spencer</u> 829 F.3d 1152, 1157 (9th Cir. 2016), in regards to Nevada contract law (and assignments):
"Under applicable state law, '**a contractual <u>right</u> is assignable** unless assignment materially changes the terms of the contract or the contract expressly precludes assignment.' <u>Easton Bus. Opp. v. Town Exec. Suites</u>, 126 Nev. 119, 230 P.3d 827, 830 (2010)"   Also, <u>Easton Bus. Opp. v. Town Exec. Suites</u>, 126 Nev. 119, 230 P.3d 827, 830 (2010), states ***"To be effective, [an] anti-assignment clause should contain a specific prohibition on the power to make an assignment and specifically state that any attempted assignments will be void or invalid"***. <u>Easton Bus. Opp. v. Town Exec. Suites</u>   also held there was ***"nothing extraordinary about the assignment of commission rights here"*** Id.

Plaintiff and Winters helped land millions of dollars in contracts for about eleven (11) Veteran Affairs ("VA") hospitals in 2017 for Defendant (See EFC 4, fn 3-7) and over a dozen other contracts (EFC 4, para 38).  Defendant was/is to comply with all applicable Federal, State and local laws, executive orders, rules and regulations in its VA contracts. (EFC 4, para 17) (See e.g. EFC 4, Ex. 7, page 23)

Pursuant to each of the VA contracts in question (See e.g. EFC 4, Exhibit 7, pg 2) Defendant was to invoice monthly on the 10th (and be paid) monthly ("accelerated payments" under FAR part 52.232-40, EFC 4, Exhibit 7, pg 31). Under the terms of Winter's contract with Defendant, Winters was to be paid (10 percent gross commission) from Defendant monthly for services that Defendant were paid (by the VA) from the previous month's service (EFC 4, Exhibit 2). The contract of Walker and Winters dictated Walker was to be paid 50% of Winter's take 10 days afterward. (EFC 4, Exhibit 1).

Under federal law, and the VA contracts, Defendant was to pay Winters (it's subcontractor) within 15-30 Days ("accelerated payments" under FAR part 52.232-40[2], EFC 4, Exhibit 7, pg 31) so that Winters could pay subcontractor Walker within 15-30 days[3]. Defendant did not pay Winters ***monthly*** from 2015 onward. Oftentimes, it was every 2- 3

---

2. See Daniel J. Kelly, partner at McCarter & English, LLP, "New FAR Changes Incentivize Prime Contractors Not to Be Deadbeats in Meeting Their Payment Obligations to Their Small Business Subcontractors", vol. 3 PRATT'S GOVERNMENT CONTRACTING LAW REPORT (page 128-129) (LexisNexis A.S. Pratt) which states:

"The Prompt Payment Act, first enacted in 1982 in response to delays by agencies in paying primes, was amended in 1988 to require agencies to include a clause (FAR Clause 52.232-27(c)) in federal constructions contracts to pay the sub for 'satisfactory' performance within seven days of receipt of payment from the agency, and to pay an interest penalty if payments are not satisfactorily made. See 31 U.S.C. § 3905(b) In November 2013, following guidance memoranda issued by the Office of Management and Budget, the FAR was amended to require a mandatory clause for all contracts (FAR Clause 52.232-40), providing that upon receipt of accelerated payments from a government agency, the prime must accelerate payments to its small business subcontractors "to the maximum extent practicable and prior to when such payment is otherwise required under the subcontractor.' See FAR 32.009" (emphasis added)

3. FAR Council commentary on FAR part 52.232-40 states, "The rule is **not limited to first-tier subcontractors**, because that is inconsistent with the OMB memo that this rule implements, and would reduce the number of small entities that may benefit from this rule.&quot; (See https://www.federalregister.gov/documents/2013/11/25/2013-28053/federal-acquisition-regulation-accelerated-payments-to-small-business-subcontractors (paragraph 9)).

months. The payments grew to 4 months apart in 2017. (EFC 4, para. 39-42) Defendant further interfered with Winter's help on the VA contracts. (EFC 4, para. 48). Walker threatened to sue Defendant in Dec. 2017 (EFC 4, para 48)

After one of the many times Walker received a late payment (in Jan. 2018), he complained to the VA asserting non-payment (EFC 4, para. 55, 64, 71, 77), as was his right as a federal subcontractor (EFC 4, para 22-30) under FAR 52.232-40; FAR part 52.203-19. When responding to the VA Contracting Officers about the matter, Defendant made misrepresentations to federal authorities stating they did not know who Walker was and that he had no affiliation at all with Intelli-heart and that Walker had never been a subcontractor (disregarding Walker's 2nd tier contracting status of which they were made known) (EFC 4, para. 59). Defendant further made misrepresentations to VA officials that they've made all payments to Winters timely. (EFC 4, para. 72)

With no contract language backing its actions (especially since it had NO anti-assignment clause in its contract with Winters – See fn.1), Defendant "investigated" Winters for having a subcontract with Walker, unilaterally "suspended" (IHS-00146, EFC 57-3) Winters, and terminated (IHS-00176, EFC 57-3) its contract with Winters, calling it a "divorce" (EFC 80, pg 2). Winters did not agree to this termination and stated that Defendant was trying to merely avoid its payment obligations (EFC 4, para. 57). Plaintiff has a business interest in these payment obligations, given his 50% stake assigned by Winters. Needless to say, Defendant's termination of Winters was fraudulent. (IHS-00176 in 57-3). None of the alleged contractual deficiencies alleged against Winters have shown up in any other, prior, contemporaneous documents produced by Defendant. [In perhaps the most laughable claim, Defendant *now* points to 2 emails whereby Winters states he is going to be "off the grid" (but accessible via text) 2 days in July 2017 (from 7:30AM-5PM) and Aug. 2017 (from 8AM-5PM). Defendant these emails justifies their theft of $308,000 from Winters and Walker (EFC 75-1, pg 2-4) ]. Defendant not produced any cure notices (or "30 day" notices as dictated by Winter's agreement with Defendant) (EFC 4, Ex. 2). Defendant also had NO basis for investigating, suspending, and terminating Winters based upon a non-existent anti-assignment clause – which (according to them) forbade Winters from subcontracting.

To cover their tracks in a plausible deniability ploy to avoid their payment obligations to Winters (who was to pay Walker), Defendant had lawyer-friend Daniel Germain (they called

"pal" ; See IHS-00161 in ECF 57-3 ) (listed as working for the firm Rosman & Germain LLP 16311 Ventura Boulevard Suite 1200 Encino, CA 91436-2152 (IHS-00160 in 57-3)) to do their dirty work (IHS 0089, IHS-00144, IHS-00147, IHS-00159-IHS-00161 in 57-3).  Daniel Germain made false representations that Walker never had any affiliation whatsoever with Intelli-heart to the VA. Yet, Defendant knew Walker was Winter's subcontractor before "suspending" AND terminating Winter's contract, as even noted in the Feb. 8, 2018 termination letter sent to Winters (naming Winters contract with Walker as the most "egregious" reason for Winters' contract termination (IHS-00176 in 57-3)). Defendant's knowledge of Walker and Winter's relationship clearly preceded Daniel Germaine's false representations (made on behalf of Defendant) to the VA.

The pretext is clear behind Daniel Germain's involvement in Winter's termination, being as how Defendant produced no litigation hold. Defendant's fraud is glaringly obvious in the temporal proximity between the Feb. 8, 2018 termination of Winter's distributor agreement AND Walker's Feb. 6, 2018 assertion of non-payment made under FAR part 52.232-40. [Note: Defendant scrambles to have employees find Winter's distributor agreement a mere day before it was terminated, took it home to drum up termination reasons (IHS-00139 in EFC 57-3), when none existed.] If contractual deficiencies were an issue BEFORE, Defendant would have been examining the contract and letting Winters know of deficiencies prior to its unilateral termination (at least 30 days prior). The termination was Feb. 8, 2018 (IHS-00176 in EFC 57-3) was a ruse and an illegal scheme of the Defendant and their lawyer-pal.

As stated before, Defendant's federal contracts which set forth federal protections for subcontractors who reported late payments from prime contractors to the government. See Far part 52.232-40.  (EFC 4, para 52.232-40; EFC 4, Ex. 7, pg 7, 31) Those same VA contracts set forth federal protections (against internal confidentiality agreements) for subcontractors who report fraud, waste, and abuse to agencies (EFC 4, Ex. 7, pg 7, 31). See Far part 52.203-19 ((c) "The Contractor shall notify current employees and subcontractors that prohibitions and restrictions of any preexisting internal confidentiality agreements or statements covered by this clause, to the extent that such prohibitions and restrictions are inconsistent with the prohibitions of this clause, are no longer in effect."). Yet, Defendant declared that Winters had no right to subcontract (without ANY anti-assignment clause appearing in their contract with Winters, forbidding such). Defendant declared itself above the law in sanctioning Winter's and Walker's

federal protections for reporting of Defendant's abuse of authority. Also, in a fit of tyrannically lawlessness, Defendant declared itself above the law in dictating that Winters could not communicate with their "customers" (See IHS-00176 in EFC 57-3); the federal government officials of the VA. The epitome of lawlessness was when Defendant used the assertion of Walker and Winter's federal and state rights to contract (and invocation of rights under FAR part 52.232-40 and FAR part 52.203-19) as a basis to terminate Winter's contract, depriving both Walker and Winters of any monetary downflow from the VA, thereafter. (See IHS-00176 in EFC 57-3). Defendant also tried to get Winters to disavow his contracting relationship with Walker so they could, presumably, present this to the VA (See IHS-0095 in EFC 57-3)

Fraud, misrepresentations, violation of Walker's state rights to contract with Winters, violation of federal subcontractor rights, and a pretextual termination of Winter's contract with Defendant were all plead (EFC 4, para. 94-116). Defendant's actions constitute tortious interference with Walker's contractual rights because all of these activities were directed at (AND negatively affected) Walker.

Defendant claims its misrepresentations, fraud, and pretextual "suspension" and termination of Winters contract (as well as misrepresentations about it to federal officials) are "private" matters not subject to review by a Court of law. (EFC 80, pg 2-4). Defendant asserts its void confidentiality clause in its contract with Winters makes its conduct "private" and beyond review by this court in Walker's tort claim. Defendant asserts federal regulations have no bearing on this matter and that Plaintiff is merely asserting a "proxy-war" or a "whistle blower" claim and that it merely "divorced" Winters. These colorful, but meaningless, expressions of Defendant have no bearing on this matter and are wholly disputed by Walker. Walker's theory of his claim involves Defendant's fraud and misrepresentations made in order to thwart the government from enforcement of payments to Walker (via Winters) under these provisions (See e.g. Far part 52.232-40; EFC 4 para 22-30 ; noting that Far Part 32.112 allow even a 2nd tier subcontractor to report non-payment to federal agencies and they can stop payment to the prime contractor to ensure that subcontractors are paid). Defendant cites no authority (nor anything in the record) to support its rhetorical and perfunctory claims. Surely, Defendant's confidentiality agreement with *Winters* *(which it does not claim Walker signed)* does not shield it from scrutiny or claims of fraud-related tortious interference.

Defendant's so-called "private" matters (whereby Defendant basically stole $308,000+ from Winters and Walker - making fraudulent representations about Winters and Walker to the VA) are front and center to Walker's tort claim.   As such, Defendant should not be allowed to thwart discovery by refusing to answer on the basis of its tenuous, rhetorical, and disputed claims.

### B. DISCOVERY DISPUTE ON INTERROGATORIES

On about December 30, 2018, Walker sent 25 interrogatories to Defendant, which covered items and issues surrounding his claim. Defendant responded on Feb 5, 2019 (EFC 74-1) with general objections, non-responses, and confidentiality objections.  The confidentiality objections (and assertions that Winters violated a 2014 confidentiality agreement) fly in the face of FAR part 52.203-19 which deemed all federal subcontractor confidentiality agreements (not updated after Jan. 2017 pursuant to that provisions) "null and void".  Walker responded, disputing Defendant's objections (EFC 101-2). Thereafter, the Court granted leave to file a motion to compel (EFC 103).

### II. MEMORANDUM OF LAW
#### A. POINTS AND AUTHORITIES
##### 1. MOTIONS TO COMPEL

Federal Rule of Civil Procedure 37(a)(3)(B)(iii) provide for "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if …..."   "a party fails to answer an interrogatory submitted under Rule 33"

Where a party fails to answer interrogatories under Fed. R. Civ. P. 33, the party seeking discovery may move for compelled disclosure. Fed. R. Civ. P. 37. "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 WL 1390794, at * 1, 2009 U.S. Dist. LEXIS 42339, at *3 (S.D. Cal. May 14, 2009) (citations omitted). The opposing party is "required to carry a heavy burden of showing why discovery [should be] denied." Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

A party propounding discovery may seek an order compelling disclosure when an

opposing party has failed to respond or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(3)(B). [A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond. Fed. R. Civ. P. 37(a)(4).

The moving party bears the burden of demonstrating actual and substantial prejudice from the denial of discovery. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) (citations omitted).

## 2. SCOPE OF DISCOVERY IS BROAD AND IS NOT TO BE DICTATED BY ONE-SIDES THEORY OF THE CASE

The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is extremely broad. A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. at 351). Relevancy should be construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case. Miller, 141 F.R.D. at 296. Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. The purpose of discovery is to make "trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)), and "to narrow and clarify" the issues in dispute, Hickman, Id.

"**A party may base interrogatories on its theory of the case. The interrogatories cannot be objected to because, on the interrogated party's theory, they are based on a false assumption**. (citation omitted)" TASION COMMUNICATIONS, INC., et al., Plaintiffs, v. UBIQUITI NETWORKS, INC., et al Case No. C-13-1803 EMC (N.D. CA April 3, 2015)

Rule 26(b)(1) does not give an objecting party declare "**the unilateral ability to dictate the scope of discovery based on *their* own view of the parties' respective theories of the case**," because "[l]itigation in general and discovery in particular . . . are not one sided." Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 925 (8th Cir. 2014).

### 3. SCOPE OF WALKER'S TORT CLAIM IS BROAD AND COVERS ALL OF DEFENDANT'S CONDUCT DIRECTED AT PLAINTIFF – EVEN THE CONDUCT INVOLVING THE VA AND WINTERS

As stated above, Walker asserts a variety of activity by Defendant was aimed at tortiously interfering with his contractual rights vested in him as a subcontractor under Winters AND as a federal second-tier subcontractor.

Germane to Walker's claim is the holding in National Right to Life P.A. Comm v. Friends of Bryan, 741 F. Supp. 807, 814 fn. 6 which states:

"In *Sutherland,* 772 P.2d at 1290, the Nevada Supreme Court made its most recent pronouncement of the elements necessary to establish the tort of intentional interference with contractual relations. There the Court did not discuss in detail the quality of intent required to sustain liability. However, in setting forth the elements of the tort, the Nevada Supreme Court relied on the opinion of the California Court of Appeals in *Ramona Manor Convalescent Hospital,* 177 Cal.App.3d 1120, 225 Cal.Rptr. 120, wherein the California Court reiterated the requirement of "culpable intent" and noted that given the intention to interfere with a contract, liability usually will turn upon the ultimate purpose or object which a defendant is seeking to advance. *See also Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 686 P.2d 1158, 206 Cal.Rptr. 354 (1984)."

In resolving this matter, the court must ask whether the defendant pursued an improper objective of harming the plaintiff or used **wrongful means** that in fact caused an injury to the contractual relationship.  Nat'l Right to Life P.A. Com. v. Friends of Bryan, 741 F.Suppp. 807 (D. Nev. 1998).

Restatement defines "**wrongful means**" as "includ[ing] physical violence, **fraud** or **misrepresentation**, civil suits and criminal prosecutions, and **some degrees of economic pressure**; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract. . . ." Green v. Interstate United Mgmt. Servs. Corp., 748 F.2d 827 (3d Cir. 1984); Deauville Corp., 756 F.2d at 1183, 1196.

Although intentional interference with a contract is "a wrong in and of itself", "an act is independently **wrongful** only if it is "unlawful, that is, if it is proscribed by some **constitutional, statutory, regulatory, common law, or other determinable legal standard**."

8

Ponomarenko v. shapiro 287 F. Supp. 3d 816, 830  (ND CA 2018)  (citing *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003) and discussing intentional interference with contract vs. intentional interference with economic advantage)

Here, Walker alleges "**fraud**"[4],  "**misrepresentation**" and "**some degrees of economic pressure**" were all present in Defendant's activities which were directed at Walker, as alleged (See Div. I. A.)  Walker also alleges Defendant violated several rights in its misconduct under "constitutional, statutory, regulatory, common law, or other determinable legal standard." (See Div. I. A.) Walker has also alleged that Defendant's overall scheme was improper and designed to hurt Walker's contract rights. (See Div. I. A.) The use of **wrongful means** is thus, alleged against Defendant.

Just a few examples show Walker's tort claim is clearly cognizable See e.g. MAX FOOTE CONSTRUCTION COMPANY, L.L.C. v. MWH CONSTRUCTORS, INC., No. 18-2584.(October 25, 2018 E.D Louisiana )("the federal Prompt Pay Act permits a subcontractor to bring breach-of-contract and prompt-pay claims against a contractor under state law" ... granting a dismissal of a claim purely under federal law BUT allowing the case to proceed under a federal "prompt-pay claim brought under New Jersey law".) Also see C.S. SEWELL, M.D. P.C. and CHRISTOPHER SEWELL, M.D., v. AMERIGROUP TENNESSEE, INC. d/b/a AMERIGROUP COMMUNITY CARE, No. 2:17-cv-00062 (M.D. Tenn Dec. 14, 2018)(declaring that "tortious interference with a business relationship, and violation of Tennessee's Prompt Payment Act" represented "substantive claims")[Note: these authorities are not exhaustive examples] Here, Plaintiff properly pursues his tort claim which, in part, references Prompt Payment Act-related provisions (FAR 52.232-40) under Nevada law.(EFC 4)

Defendant's activities directed at Plaintiff (even those also involving the VA and Winters) are subject to discovery in this matter because that is Walker's tort theory and, in part, the monies (and rights) he had a business expectancy from, derived from the VA and Winters. (See Div II A. 2. above; also See Div. I. A. above)

---

4. Holding on to federal subcontractor payments and making misrepresentations about such, as Walker has alleged of Defendant, can constitute fraud. See U.S. v. Collins Case No. 2:16-cr-020253-JTF (W.D. Tenn. July 14, 2017) (denying motion to dismiss fraud case where prime contractor "did not pay the subcontractor, caused requests for progress payments to be submitted to GSA, and falsely certified that subcontractors had been paid")

### 4.  EFC 99 – THE COURT HAS ALREADY RULED THAT THE PROTECTIVE ORDER PROTECTS TRADE SECRETS AND PROPRIETARY INFORMATION –  THE SAME RULE APPLIES TO DEFENDANT.

EFC 99, pg 10, the Court ruled "the protective order that is already in place in this case would protect Walker's trade secrets or any type of proprietary information from being disclosed improperly in this case".  This same ruling applies to Defendant's purported "trade secrets or any type of proprietary information" <u>P.R. Am Ins Co. v. Rivera Vazquez</u> 603 F. 3d. 125, 133 (1st Cir. 2010) (holding a court may not apply different standards or rules to different parties)

## B. ANALYSIS

Defendant is being recalcitrant in refusing to answer interrogatories. Defendant's claims for failing to answer are baseless because Plaintiff is clearly seeking information relevant to Defendant's wrongful conduct directed at ending his business relationship with Winters AND information necessary to refute Defendant's defenses.  Here are the details [Note: Walker's reference to Divisions in his answers are in said document and thoroughly explained (EFC 101-2)]:

**INTERROGATORY NO. 2**
Identify all documents showing Defendant's payments from (and corresponding invoices to) the VA in regards to VA contracts VA24617C0183, VA24918C10329, VA26317D0109, and VA69D17D0167.

**DEFENDANT'S RESPONSE TO #2: RESPONSE TO INTERROGATORY NO. 2**

OBJECTION: not relevant and not reasonably calculated to lead to the discovery of relevant evidence, as this interrogatory, seeks documents concerning Responding Party's private contracts with the Veterans' Administration, to which Plaintiff was not a party and had no contractual rights or privity. The lawsuit concerns Defendant's alleged tortious interference with the alleged contractual relations with James Winters and Plaintiff, not Defendant's own contractual relations with the Veteran's Administration, to which Plaintiff was not a party and to which Plaintiff had no contractual privity or rights against Responding Party. In this regard, Responding Party expressly prohibited James Winters from entering into any contract or commitment with any third party for or on behalf of IHS, including you. This prohibition, contained in the Distributor Agreement is set forth as follows: "Distributors Inability to Contract for IHS: In spite of anything contained in this Agreement to the contrary, Distributor shall not have the right

to make any contracts or commitments for or on behalf of IHS
without first obtaining the express written consent of IHS."
(Distributor Agreement, § III (14), produced as a confidential
document at IHS-00181-00182 (emphasis in original).)
Moreover, Responding Party expressly reserved its right of
confidentiality to its trade secrets, commercially useful
confidential information, proprietary and/or private information,
in § III (7) of its Distributor Agreement, set forth as follows:
IHS's competitive success depends upon the proper
safeguarding of trade secrets and confidential information
developed within IHS or entrusted to by its customers.
Some of the information Distributors receive also may
involve the privacy interests of individuals and must be
safeguarded for that reason as well, Distributor promises
to preserve the confidentiality of IHS's trade secrets and
commercially useful confidential information learned
through Distributor at IHS and to use all such information
only as necessary and appropriate for IHS's legitimate
business purposes. Distributor also promises to safeguard
against disclosure without the consent of affected persons
all information touching on the privacy interests of
employees of IHS or customers or employees of
customers. Such trade secrets, commercially useful confidential information, proprietary and/or private
information include without limitation (1) information
about IHS's marketing strategies, (2) financial
information about IHS, its shareholders, customers,
or prospective customers, (3) the identity of IHS's
customers and/or contact persons at such customers or
prospective customers, (4) communications between IHS
and any customers or potential customers, (5) the
contents of IHS's business plans, its products or its
proposals to present to potential customers, (6) the
names, locations, practices or requirements of any
vendors, suppliers, personnel or any other persons having
a business relationship with IHS, (7) any confidential or
secret development or research work of IHS, including
information concerning any future or proposed services
or products, (8) all of IHS's accountings, costs, revenue
and other financial records and documents, as well as
the contents thereof, (9) IHS's documents, contracts,
agreements, correspondence and all other similar business
records, and (10) any other confidential or secret aspect
of the business of IHS, or its subsidiaries, affiliates or
divisions.
(Distributor Agreement, § III (7), produced as a confidential
document at IHS-00181-00182 (emphasis added).) In
Carpenter v. United States, 484 U.S. 19, 26, 108 S. Ct. 316, 98
L. Ed. 2d 275 (U.S. 1987), the Supreme Court held,
Confidential business information has long been recognized as
property." ABM Indus., 2010 U.S. Dist. LEXIS 143570, at *17
(citing Carpenter, 484 U.S. 19 at 26 (citing Ruckelshaus v.
Monsanto Co., 467 U.S. 986, 1001-1004, 104 S. Ct. 2862, 81 L.
Ed. 2d 815 (1984); Dirks v. SEC, 463 U.S. 646, 653, n. 10, 103
S. Ct. 3255, 77 L. Ed. 2d 911 (1983); Board of Trade of

Chicago v. Christie Grain & Stock Co., 198 U.S. 236, 250-251, 25 S. Ct. 637, 49 L. Ed. 1031 (1905); 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" ABM Indus., 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, Cyclopedia of Law of Private Corporations § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); see also MCI Worldcom, Inc. v. GSA, 163 F. Supp. 2d 28, 38 (D.D.C. 2001) (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable statutes, regulations and case law); and MCI Worldcom, Inc. 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and commercial or financial information obtained from a person, and is privileged or confidential." OBJECTION: seeks information which is not proportionate to the needs of this case including because information concerning such records is not relevant to the claims of this case or reasonably calculated to lead to the discovery of relevant evidence. OBJECTION: Overly broad and unduly burdensome with respect to the phrase, "all documents showing Defendant's payments from (and corresponding invoices to) the VA in regards to VA Contracts VA24617C0183, VA24918C10329, VA26317D0109, and VA69D17D0167," which seeks over-inclusive information and records, potentially including Respondent's banking records, which the Court has ordered are not discoverable in this case, per ECF 054 See Krause supra, 2014 U.S. Dist. LEXIS 14872, at *16; and Dauska, 291 F.R.D. at 261. On these objections, responding party refuses to respond to the interrogatory.

**PLAINTIFF'S DISPUTE TO #2:** Defendant's response to this Interrogatory is deficient for the reasons that PLAINTIFF IS ENTITLED TO DISCOVERY ON HIS THEORY OF THE CASE, REGARDLESS IF DEFENDANT BELIEVES IT IS BASED ON FALSE ASSUMPTIONS (See Div. I. para R.) Contrary to Defendant's assertions, "payments" and "invoices" do not cover any protected information, pricing data, or any other trade secret information that are not discoverable. Moreover, the confidentiality clauses referred to in Defendant's agreement with Winters are void. The Prime Contractor, in this case Defendant, was required to(as of Jan. 2017) "notify current employees and subcontractors that prohibitions and restrictions of any preexisting internal confidentiality agreements or statements covered by this clause, to the extent that such prohibitions and restrictions are inconsistent with the prohibitions of this clause, are no longer in effect.". FAR part 52.203-19(c) Moreover, the clauses referred to in Winter's Distributor agreement are unconscionable (and unenforceable) as matter of public policy. Defendant has asserted that Winters could not even share HIS agreement, HIS earnings, or affect the Defendant's (See EFC 74-1, pg 29) "good name, goodwill, and reputation of IHS" (See EFC 74- 1, pg 29), not even if it meant reporting "fraud, waste, or abuse" OR reporting late payments to a federal agency. The clauses restricting Winters in this regard Winter's distributor agreement are null, void, unenforceable, and supplanted by the authority of federal law. Defendant's clauses, nor its citations to off-point authority (e.g. Defendant cites FOIA and procurement decisions), do not preclude Walker (or the Court) from discovery pertaining to his theory of this fraud-related tort case (See Div. I. para R.). Otherwise, a party like Defendant, could commit fraud and cite its void agreement to avoid scrutiny for its actions. This is not in

keeping the discovery rules. The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is extremely broad. A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. at 351). Moreover, the non-response also indicates Defendant's LACK OF DILIGENT SEARCH OF ALL INFORMATION WITHIN CONTROL, (See Div. I. para A.), Defendant's FAILURE TO DETAIL (UNDER OATH OR BY AFFIDAVIT) EFFORTS MADE TO EXAMINE ALL RECORDS OR FULLY CONDUCT AN INVESTIGATION (See Div. I. para. B.), Defendant's GENERAL OBJECTION is INSUFFICIENT (See Div. I. para C.) , Defendant's CLAIMS THAT THE INFORMATION OR DOCUMENTATION WILL COME LATER IS INSUFFICIENT (See Div. I. para. D.), there is a LACK OF PRIVILEGE LOG AND PRECISE EXPLANATION (See Div. I. para. E.), Defendant's FAILURE TO EXPLAIN THE OBJECTION AND USE OF BOILERPLATE OBJECTIONS (See Div. I. para. F.), Defendant's use of THE INVALID OBJECTION OF 'NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE' (See Div. I., para. G.), Defendant's use of THE INVALID OBJECTION OF 'OVER BROAD' , 'OPPRESSIVE', and 'BURDENSOME' WITHOUT AN AFFIDAVIT OR EVIDENCE SHOWING THE BURDEN' (See Div. I. para. H.) , Defendant's use of "THE INVALID VAGUE, AMBIGUOUS, OR CONFUSING OBJECTION" (See Div. I., para I.) , Defendant's LACK OF A LITIGATION HOLD TO PRESERVE EVIDENCE (See Div. I., para J.) , Defendant's LEGAL CONCLUSIONS AS IT CONCERNS APPLICABLE FACTS IS NOT OBJECTIONABLE (See Div. I., para. K.), Defendant's "LACK OF AN EXPLANATION FOR THE PRIVILEGE - CONFIDENTIAL RECORD" (See Div. I., para. L.) , Defendant's "OVER-USE OF DESIGNATION OF "CONFIDENTIAL BUSINESS RECORD" TO THESE MATTERS, WHICH INVOLVE FEDERAL CONTRACTS, VIOLATES FEDERAL LAW AND THE PUBLIC'S RIGHT TO KNOW" (See Div. I., para. M.) , Defendant's "FAILURE TO ESTABLISH LACK OF PROPORTIONALITY AND OVERBREADTH" (See Div. I., para. N.) , Defendant's "INVALID USE OF THE HARASSMENT OBJECTION" (See Div. I., para. O.) , Defendant's "IMPROPER WITHHOLDING OF DOCUMENTS TO PREVENT PLAINTIFF FROM OBJECTING TO THE DESIGNATION OF "CONFIDENTIAL" PURSUANT TO EFC 55 PROCEDURES" (See Div. I., para. P.), Defendant's "EVASIVE, INCOMPLETE, AND NON-RESPONSIVE ANSWERS" (See Div. I., para. Q.)

**Interrogatory, Request 6**. Identify all documents showing Defendant's full compliance with the provision of the federal contract (signed by James Winters), which states: "Contractor shall submit an electronic invoice by the tenth (10th) of the following month services were performed to the Veterans Affairs Financial Services Center (VAFSC) e-Invoice through the website at https://portal.tungsten-network.com/login.aspx" (See EFC 4, Exhibit 7, page 2 Contract "VA69D17D0167")

**DEFENDANT'S RESPONSE TO #6**: OBJECTION: vague, ambiguous, and overly broad, with respect to the phrase, "all documents showing Defendant's full compliance with the provision of the federal contract (signed by James Winters)." OBJECTION: not relevant and not reasonably calculated to lead to the discovery of relevant evidence, as this interrogatory, seeks information concerning regulatory-compliance issues, which are not at issue in this tortious-interference case. Moreover, this interrogatory seeks information that is not relevant or reasonably calculated to lead to the discovery of relevant information regarding Responding Party's private business affairs and contracts with the Veterans' Administration, to which Plaintiff was not a party and had no contractual rights or privity. The lawsuit concerns Defendant's

1   alleged tortious interference with the alleged contractual
relations with James Winters and Plaintiff, not Defendant's own
2   contractual relations with the Veteran's Administration for
which James Winters may have had some involvement under
3   contract with IHS. Plaintiff was not a party to any IHS'
contracts, including its VA contracts and its Distributor
4   Agreement with James Winters. Plaintiff has no contractual
privity or rights against Responding Party regarding such
5   matters. OBJECTION: calls for confidential business
information. Responding Party expressly prohibited James
6   Winters from entering into any contract or commitment with
any third party for or on behalf of IHS, including you. This
7   prohibition, contained in the Distributor Agreement is set forth
as follows: "Distributors Inability to Contract for IHS: In
8   spite of anything contained in this Agreement to the contrary,
Distributor shall not have the right to make any contracts or
9   commitments for or on behalf of IHS without first obtaining the
express written consent of IHS." (Distributor Agreement, § III
10  (14), produced as a confidential document at IHS-00181-00182
(emphasis in original).) OBJECTION: calls for confidential
11  business information. Responding Party expressly reserved its
right of confidentiality to its trade secrets, commercially useful
12  confidential information, proprietary and/or private information,
in § III (7) of its Distributor Agreement, set forth as follows:
13  IHS's competitive success depends upon the proper
safeguarding of trade secrets and confidential
14  information developed within IHS or entrusted to by
its customers. Some of the information Distributors
15  receive also may involve the privacy interests of
individuals and must be safeguarded for that reason
16  as well, Distributor promises to preserve the
confidentiality of IHS's trade secrets and
17  commercially useful confidential information learned
through Distributor at IHS and to use all such
18  information only as necessary and appropriate for
IHS's legitimate business purposes. Distributor also
19  promises to safeguard against disclosure without the
consent of affected persons all information touching
20  on the privacy interests of employees of IHS or
customers or employees of customers. Such trade
21  secrets, commercially useful confidential
information, proprietary and/or private information
22  include without limitation (1) information about
IHS's marketing strategies, (2) financial
23  information about IHS, its shareholders,
customers, or prospective customers, (3) the
24  identity of IHS's customers and/or contact persons at such customers or prospective customers,
(4)
25  communications between IHS and any customers or
potential customers, (5) the contents of IHS's
26  business plans, its products or its proposals to
present to potential customers, (6) the names,
27  locations, practices or requirements of any vendors,
suppliers, personnel or any other persons having a
28  business relationship with IHS, (7) any confidential

or secret development or research work of IHS,
including information concerning any future or
proposed services or products, (8) all of IHS's
accountings, costs, revenue and other financial
records and documents, as well as the contents
thereof, (9) IHS's documents, contracts, agreements,
correspondence and all other similar business
records, and (10) any other confidential or secret
aspect of the business of IHS, or its subsidiaries,
affiliates or divisions.

(Distributor Agreement, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) As stated above, the Supreme Court has held that confidential business information has long been recognized as property. ABM Indus., 2010 U.S. Dist. LEXIS 143570, at *17 (citing Carpenter, 484 U.S. 19 at 26 (citing Ruckelshaus, supra, 467 U.S. at 1001-1004; Dirks, supra, 463 U.S. at 653, n. 10; Board of Trade of Chicago, supra, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" ABM Indus., 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, Cyclopedia of Law of Private Corporations § 857.1, p. 260 (rev. ed. 1986) (footnote omitted)); see also MCI Worldcom, Inc., supra, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable statutes, regulations and case law); and MCI Worldcom, Inc. 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and commercial or financial information obtained from a person, and is privileged or confidential." On these objections, Responding Party refuses to answer the Interrogatory.

**PLAINTIFF'S DISPUTE TO #6:** Defendant's response to this Interrogatory is deficient for the reasons that PLAINTIFF IS ENTITLED TO DISCOVERY ON HIS THEORY OF THE CASE, REGARDLESS IF DEFENDANT BELIEVES IT IS BASED ON FALSE ASSUMPTIONS (See Div. I. para R.). The chain (and flow) of payment is key and central to Plaintiff's claim (see e.g. EFC 4, para. 88-118) and no void confidentiality clauses prevent discovery of this information.
The confidentiality clauses referred to in Defendant's agreement with Winters are void.
The Prime Contractor, in this case Defendant, was required to(as of Jan. 2017) "notify current employees and subcontractors that prohibitions and restrictions of any preexisting internal confidentiality agreements or statements covered by this clause, to the extent that such prohibitions and restrictions are inconsistent with the prohibitions of this clause, are no longer in effect.". FAR part 52.203-19(c) Moreover, the clauses referred to in Winter's Distributor agreement are unconscionable (and unenforceable) as matter of public policy. Defendant has asserted that Winters could not even share HIS agreement, HIS earnings, or affect the Defendant's (See EFC 74-1, pg 29) "good name, goodwill, and reputation of IHS" (See EFC 74-1, pg 29), not even if it meant reporting "fraud, waste, or abuse" OR reporting late payments to a federal agency. The clauses restricting Winters in this regard Winter's distributor agreement are null, void, unenforceable, and supplanted by the authority of federal law. Defendant's clauses,

nor its citations to off-point authority (e.g. Defendant cites FOIA and procurement decisions), do not preclude Walker (or the Court) from discovery pertaining to his theory of this fraud-related tort case (See Div. I. para R.). Otherwise, a party like Defendant, could commit fraud and cite its void agreement to avoid scrutiny for its actions. This is not in keeping with the discovery rules.The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is extremely broad. A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. at 351).

The Defendant's response also indicates Defendant's LACK OF DILIGENT SEARCH OF ALL INFORMATION WITHIN CONTROL, (See Div. I. para A.), Defendant's FAILURE TO DETAIL (UNDER OATH OR BY AFFIDAVIT) EFFORTS MADE TO EXAMINE ALL RECORDS OR FULLY CONDUCT AN INVESTIGATION (See Div. I. para. B.), Defendant's GENERAL OBJECTION is INSUFFICIENT (See Div. I. para C.) , Defendant's CLAIMS THAT THE INFORMATION OR DOCUMENTATION WILL COME LATER IS INSUFFICIENT (See Div. I. para. D.), there is a LACK OF PRIVILEGE LOG AND PRECISE EXPLANATION (See Div. I. para. E.), Defendant's FAILURE TO EXPLAIN THE OBJECTION AND USE OF BOILERPLATE OBJECTIONS (See Div. I. para. F.), Defendant's use of THE INVALID OBJECTION OF 'NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE' (See Div. I., para. G.), Defendant's use of THE INVALID OBJECTION OF 'OVER BROAD' , 'OPPRESSIVE', and 'BURDENSOME' WITHOUT AN AFFIDAVIT OR EVIDENCE SHOWING THE BURDEN' (See Div. I. para. H.) , Defendant's use of "THE INVALID VAGUE, AMBIGUOUS, OR CONFUSING OBJECTION" (See Div. I., para I.) , Defendant's LACK OF A LITIGATION HOLD TO PRESERVE EVIDENCE (See Div. I., para J.) , Defendant's LEGAL CONCLUSIONS AS IT CONCERNS APPLICABLE FACTS IS NOT OBJECTIONABLE (See Div. I., para. K.), Defendant's "LACK OF AN EXPLANATION FOR THE PRIVILEGE - CONFIDENTIAL RECORD" (See Div. I., para. L.) , Defendant's "OVER-USE OF DESIGNATION OF "CONFIDENTIAL BUSINESS RECORD" TO THESE MATTERS, WHICH INVOLVE FEDERAL CONTRACTS, VIOLATES FEDERAL LAW AND THE PUBLIC'S RIGHT TO KNOW" (See Div. I., para. M.), Defendant's "FAILURE TO ESTABLISH LACK OF PROPORTIONALITY AND OVERBREADTH" (See Div. I., para. N.) , Defendant's "INVALID USE OF THE HARASSMENT OBJECTION" (See Div. I., para. O.) , Defendant's "IMPROPER WITHHOLDING OF DOCUMENTS TO PREVENT PLAINTIFF FROM OBJECTING TO THE DESIGNATION OF "CONFIDENTIAL" PURSUANT TO EFC 55 PROCEDURES" (See Div. I., para. P.), Defendant's "EVASIVE, INCOMPLETE, AND NON-RESPONSIVE ANSWERS" (See Div. I., para. Q.)

**Interrogatory, Request 7**. Identify all documents establishing Defendant's compliance the monthly invoicing provisions of federal contracts VA24617C0183, VA24918C10329, VA26317D0109

i) Identify All persons involved in the invoicing (their name, title, business address, email address, and phone numbers) involved in the decision, the date and time(s).

**DEFENDANT'S RESPONSE TO #7**: OBJECTION: vague, ambiguous, and overly broad, with respect to the phrase, "all documents establishing Defendant's compliance the monthly invoicing provisions of federal contracts" and "[a]ll persons involved in the invoicing . . . involved in the decision, the date and time(s)." Here, it is not clear to what compliance or monthly invoicing provisions you refer. As well, it is not clear what you mean when you ask for the identity of persons who are "involved in the decision." OBJECTION: Compound and/or improper use of subparts, the effect of which causes this set of interrogatories to exceed the number that may be propounded without leave of Court. See

Kendall supra, 174 F.R.D. at 685 (subsequent questions contained in an interrogatory, which can "stand alone," are to be counted as separate interrogatories). Here, the first part of the interrogatory requests the identity of documents "establishing Defendant's compliance the monthly invoicing provisions of federal contracts." The second part of the interrogatory requests the identity of "[a]ll persons involved in the invoicing."

OBJECTION: not relevant and not reasonably calculated to lead to the discovery of relevant evidence, as this interrogatory, seeks information concerning regulatory-compliance issues, which are not at issue in this tortious-interference case. Moreover, this interrogatory seeks information that is not relevant or reasonably calculated to lead to the discovery of relevant information regarding Responding Party's private business affairs and contracts with the Veterans' Administration, to which Plaintiff was not a party and had no contractual rights or privity. The lawsuit concerns Defendant's alleged tortious interference with the alleged contractual relations with James Winters and Plaintiff, not Defendant's own contractual relations with the Veteran's Administration for which James Winters may have had some involvement under contract with IHS. Plaintiff was not a party to any IHS' contracts, including its VA contracts and its Distributor Agreement with James Winters. Plaintiff has no contractual privity or rights against Responding Party regarding such matters. OBJECTION: calls for confidential business information. Responding Party expressly prohibited James Winters from entering into any contract or commitment with any third party for or on behalf of IHS, including you. This prohibition, contained in the Distributor Agreement is set forth as follows: "Distributors Inability to Contract for IHS: In spite of anything contained in this Agreement to the contrary, Distributor shall not have the right to make any contracts or commitments for or on behalf of IHS without first obtaining the express written consent of IHS." (Distributor Agreement, § III (14), produced as a confidential document at IHS-00181-00182 (emphasis in original).) Responding Party expressly reserved its right of confidentiality to its trade secrets, commercially useful confidential information, proprietary and/or private information, in § III (7) of its Distributor Agreement, set forth as follows:

IHS's competitive success depends upon the proper safeguarding of trade secrets and confidential information developed within IHS or entrusted to by its customers. Some of the information Distributors receive also may involve the privacy interests of individuals and must be safeguarded for that reason as well, Distributor promises to preserve the confidentiality of IHS's trade secrets and commercially useful confidential information learned through Distributor at IHS and to use all such information only as necessary and appropriate for IHS's legitimate business purposes. Distributor also promises to safeguard against disclosure without the consent of affected persons all information touching

on the privacy interests of employees of IHS or customers or employees of customers. Such trade secrets, commercially useful confidential information, proprietary and/or private information include without limitation (1) information about IHS's marketing strategies, (2) financial information about IHS, its shareholders, customers, or prospective customers, (3) the identity of IHS's customers and/or contact persons at such customers or prospective customers, (4) communications between IHS and any customers or potential customers, (5) the contents of IHS's business plans, its products or its proposals to present to potential customers, (6) the names, locations, practices or requirements of any vendors, suppliers, personnel or any other persons having a business relationship with IHS, (7) any confidential or secret development or research work of IHS, including information concerning any future or proposed services or products, (8) all of IHS's accountings, costs, revenue and other financial records and documents, as well as the contents thereof, (9) IHS's documents, contracts, agreements, correspondence and all other similar business records, and (10) any other confidential or secret aspect of the business of IHS, or its subsidiaries, affiliates or divisions.
(Distributor Agreement, § III (7), produced as a confidential document at IHS-00181-00182 (emphasis added).) As stated above, the Supreme Court has held that confidential business information has long been recognized as property. ABM Indus., 2010 U.S. Dist. LEXIS 143570, at *17 (citing Carpenter, 484 U.S. 19 at 26 (citing Ruckelshaus, supra, 467 U.S. at 1001-1004; Dirks, supra, 463 U.S. at 653, n. 10; Board of Trade of Chicago, supra, 198 U.S. at 250-251; and 5 U. S. C. § 552(b)(4)). "'Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.'" ABM Indus., 2010 U.S. Dist. LEXIS 143570, at *18 (quoting 3 W. Fletcher, Cyclopedia of Law of Private Corporations § 857.1, p. 260 (rev. ed. 1986) (footnote omitted); see also MCI Worldcom, Inc., supra, 163 F. Supp. 2d at 38 (the GSA's decision to disclose the pricing data contained in a business' contract, in response to a FOIA request violated confidentiality provisions of applicable statutes, regulations and case law); and MCI Worldcom, Inc. 163 F. Supp. 2d at 35 ("FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes 'trade secrets and commercial or financial information obtained from a person, and is privileged or confidential." On these objections, Responding Party refuses to answer the Interrogatory.

**PLAINTIFF'S DISPUTE TO #7**: Defendant's response to this Interrogatory is deficient for the reasons that PLAINTIFF IS ENTITLED TO DISCOVERY ON HIS THEORY OF THE

CASE, REGARDLESS IF DEFENDANT BELIEVES IT IS BASED ON FALSE ASSUMPTIONS (See Div. I. para R.). Defendant responded to this interrogatory so its objections are waived.

Defendant's anemic response indicates their LACK OF DILIGENT SEARCH OF ALL INFORMATION WITHIN CONTROL, (See Div. I. para A.), Defendant's FAILURE TO DETAIL (UNDER OATH OR BY AFFIDAVIT) EFFORTS MADE TO EXAMINE ALL RECORDS OR FULLY CONDUCT AN INVESTIGATION (See Div. I. para. B.), Defendant's GENERAL OBJECTION is INSUFFICIENT (See Div. I. para C.) , Defendant's CLAIMS THAT THE INFORMATION OR DOCUMENTATION WILL COME LATER IS INSUFFICIENT (See Div. I. para. D.), there is a LACK OF PRIVILEGE LOG AND PRECISE EXPLANATION (See Div. I. para. E.), Defendant's FAILURE TO EXPLAIN THE OBJECTION AND USE OF BOILERPLATE OBJECTIONS (See Div. I. para. F.), Defendant's use of THE INVALID OBJECTION OF 'NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE' (See Div. I., para. G.), Defendant's use of THE INVALID OBJECTION OF 'OVER BROAD' , 'OPPRESSIVE', and 'BURDENSOME' WITHOUT AN AFFIDAVIT OR EVIDENCE SHOWING THE BURDEN' (See Div. I. para. H.) , Defendant's use of "THE INVALID VAGUE, AMBIGUOUS, OR CONFUSING OBJECTION" (See Div. I., para I.) , Defendant's LACK OF A LITIGATION HOLD TO PRESERVE EVIDENCE (See Div. I., para J.) , Defendant's LEGAL CONCLUSIONS AS IT CONCERNS APPLICABLE FACTS IS NOT OBJECTIONABLE (See Div. I., para. K.), Defendant's "LACK OF AN EXPLANATION FOR THE PRIVILEGE - CONFIDENTIAL RECORD" (See Div. I., para. L.) , Defendant's "OVER-USE OF DESIGNATION OF "CONFIDENTIAL BUSINESS RECORD" TO THESE MATTERS, WHICH INVOLVE FEDERAL CONTRACTS, VIOLATES FEDERAL LAW AND THE PUBLIC'S RIGHT TO KNOW" (See Div. I., para. M.) , Defendant's "FAILURE TO ESTABLISH LACK OF PROPORTIONALITY AND OVERBREADTH" (See Div. I., para. N.) , Defendant's "INVALID USE OF THE HARASSMENT OBJECTION" (See Div. I., para. O.) , Defendant's "IMPROPER WITHHOLDING OF DOCUMENTS TO PREVENT PLAINTIFF FROM OBJECTING TO THE DESIGNATION OF "CONFIDENTIAL" PURSUANT TO EFC 55 PROCEDURES" (See Div. I., para. P.), Defendant's "EVASIVE, INCOMPLETE, AND NON-RESPONSIVE ANSWERS" (See Div. I., para. Q.)

The same pattern of abusive discovery objections (dozens of meritless objections per inquiry) followed for the following questions and can be seen at EFC 74-1 and disputed at EFC 101-2 for similar reasons:

**INTERROGATORY NO. 9**
Identify all documents establishing Defendant's full compliance with monthly payment provisions of Winter's distributor agreement.

**INTERROGATORY NO. 12**
Identify all work which James winters provided helped on the contracts VA24617C0183, VA24918C10329, VA26317D0109, VA69D17D0167.

**INTERROGATORY NO. 15**
Identify all documents that show Defendant provided information and money to Winters to maintain accounts prior to the Feb 8, 2018 termination.

**INTERROGATORY NO. 16**
Identify all documents whereby Defendant indicated that Winter's faced a termination of Winter's distributor agreement (contract between Winters and IHS) prior to February 8, 2018.

1

2

### 1. CONCLUSION -- DEFENDANT'S ANSWERS SHOULD BE COMPELLED OR PLAINTIFF WILL SUFFER PREJUDICE

3

It is not fair for Plaintiff to be forced to present all of the conceivable ways in which

4

Defendant's "allegedly" confidential files would be useful to his case. Kelly v. City of San Jose,

5

114 F.R.D. 653, 667-68 (N.D. Cal. 1987).

6

In fact, it is highly prejudicial for the Defendant to simply present, as it has, narrow

7

(deceptive) views of Walker's claim and refuse to examine its agents (and records) with regards

8

to the questions Walker has presented in its Interrogatories. The Defendant has not relied

9

reasonable inquiries (or current searches of ESI) of several other Defendant agents and employees

10

who interacted with the VA during the period Walker and Winters were in communication with

11

the VA about late payments from Defendant. As stated before, in EFC 64, it is highly prejudicial

12

to have Walker establish his claims while Defendant holds all of the proof and asserts vague,

13

unsubstantiated, claims of confidentiality which fly in the face of federal law. The Defendant has

14

only presented evasive or incomplete answers and has waived objections See e.g. Richmark Corp.

15

v. Timber Falling Consultants. Id. At present, it has failed in its obligation to conduct a

16

reasonable inquiry of records and people under its charge and control...........It is clear under the

17

authorities cited by Walker the the Defendant avoided its responsibility to find the agents (and

18

documents) to provide complete and accurate answers all of the questions. The Rules require a

19

"complete and accurate response to the request") In fact, on the responses complained of herein,

20

the Defendant has put its head in the sand, refusing to provide direct answers, and quibbled in

21

word-play and gamesmanship. The Defendant has no excuse and no privilege to withhold any

22

answers. Burlington N. & Santa Fe Ry. V. U.S. Dist.Court, 408 F.3d 1142 (9th Cir.), cert. denied,

23

546 U.S. 939 (2005) (failure to produce a privilege log constitutes a waiver. Walker suffers actual

24

and substantial prejudice from the denial of discovery. See Hallett v. Morgan, 296 F.3d 732, 751

25

(9th Cir. 2002) which would establish his theory of the case (See Div. I. A and Div II.A. 2-3) and

26

disprove Defendant's defenses of. Discovery should be allowed unless the information sought has

no conceivable bearing on the case. Miller, 141 F.R.D. at 296 and Defendant cannot establish that

(with authority).

27

28

As such, answers to Interrogatories #2,6,7,8,9,12,15,16 should be compelled and the objections to the remaining Interrogatories should be deemed waived due to the fact that Defendant has answered *See Anderson v. Hansen,* 20120 U.S. Dist. LEXIS 131010, at *18-19.

.

WHEREFORE, Plaintiff requests that Defendant be compelled to answer interrogatories Interrogatories #2,6,7,8,9,12,15,16 and hold that the remaining Interrogatories which were answered in part, with objections, the objections be deemed waived.

## CERTIFICATION OF MEET AND CONFER

After many good faith attempts by email to make personal consultation with Defense counsel over the past couple of weeks and sincere effort to do so, the parties have been unable to resolve these matters without Court action. Defendant has doubled-down on its refusals to cooperate by repeatedly insisting that their responses are adequate. I certify this under United States law.

Respectfully submitted,

By /s/  Terrance Walker                                    Dated:  Mar. 15, 2019

Terrance Walker

## CERTIFICATE OF SERVICE

The undersigned certifies that the undersigned  is over the age of 18 and that on March 15, 2019, that he personally served via the Court's electronic filing system all parties to this case one copy of this filing to the parties at the email address listed below.

/s/  TERRANCE WALKER

signed, Terrance Walker

Copy to:

Will Geddes, Esq.
THE GEDDES LAW FIRM, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455
Fax: (775) 853-6899
E-Mail: Will@TheGeddesLawFirm.com