UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TERRANCE WALKER,<br><br>    Plaintiff,<br><br>v.<br><br>INTELLI-HEART SERVICES, INC.,<br><br>    Defendants. | 3:18-cv-00132-MMD-CBC<br><br>ORDER |

Before the court is Plaintiff Terrance Walker's ("Walker") motion for leave to file a second amended complaint. (ECF No. 78). Walker seeks to add three defendants and four additional causes of action to this litigation. (*Id.* at 2-7). Intelli-Heart opposed, (ECF No. 114), and Walker replied (ECF Nos. 115). Having considered all the above, the motion is granted.

I. **BACKGROUND**

    A. Factual Background

Walker is the sole proprietor of Walker Development & Trading Group. (ECF No. 4 at 1, n. 1; ¶ 6). Walker provides professional consulting services related to federal contracts, including finding relevant contract solicitations, reviewing the solicitations, preparing bids, market research and the like. (*Id.*, ¶ 7). Intelli-Heart is a California corporation that provides heart-monitoring services, including device-system sales, support and training. (*Id.*, ¶ 9; ECF No. 24, ¶ 5). Intelli-Heart's principal place of business appears to be located in Los Angeles, California. Vanessa Parson's is Intelli-Heart's CEO and appears to be the sole board member.

On September 30, 2014, Intelli-Heart entered into an agreement with James Winters. (ECF No. 24, ¶ 8). Pursuant to the terms of the agreement, Intelli-Heart and Winters agreed that Winters would act as a regional sales distributor for Intelli-Heart. In

this position, Winters would market and support Intelli-Heart's services through sales to various entities, including the Department of Veteran's Affairs ("VA")". (*Id.*) Intelli-Heart agreed to pay Winters a commission of 10% from the sales he made with the VA on behalf of Intelli-Heart. (ECF No. 4, ¶ 31).

Shortly after Winters entered into this agreement, Winters entered nto a separate agreement with Walker. (ECF No. 4, ¶ 33; Ex. 1). Under the terms of this agreement, Walker agreed to provide Winters with consulting services to assist Winters in marketing medical supplies and services to the government. (*Id.*, Ex. 1). According to the agreement, Walker would assist Winters in identifying government solicitations seeking bids for medical services and supplies, explain issues related to the bidding process, and and the like. (*Id.*) Winters agreed to pay Walker 50% of his compensation from the "end supplies of medical services/supplies." (*Id.*) Winters was required to pay Walker within ten (10) days of receipt of his payment from the end medical supplier. (*Id.*) This contract was to be in effect for five (5) years. (*Id.*)

Walker allegedly assisted Winters in securing various government contracts with the VA related to the sale of Intelli-Heart's medical supplies and services. However, only four (4) of those contracts are identified in the complaint and at issue in this litigation. These contracts are as follows: (1) VA69D17D0167; (2) VA26317D0109; (3) VA24617C0183; and, (4) VA24918C10329. (ECF No. 4, ¶ 13).

According to Walker, Intelli-Heart was routinely late in paying Winters his commission payments on the VA contracts he helped Winters secure. As a result, Winters was late paying Walker. (ECF No. 4, ¶ 39-53). By November 2017, the payments to Winters were approximately 120 days late. (*Id.*) Due to the late payments, Walker began contacting the VA and representatives of Intelli-Heart demanding payment and alleging that Intelli-Heart was engaged in various types of nefarious conduct and fraud. (*Id.*) Walker also threatened Intelli-Heart with litigation if his demands were not met. (*Id.*, Exs. 9-14).

According to Intelli-Heart, Walker was unknown to them until late 2017 or early 2018. (*See id.*, Ex. 6). Intelli-Heart denies it ever entered into any type of agreement with Walker and it was unaware of the agreement between Walker and Winters until Walker began communicating with Intelli-Heart representatives in late 2017 or early 2018. (*Id.*; *See also* ECF No. 24). Moreover, Intelli-Heart asserts that the agreement between Winters and Intelli-Heart prohibited Winters from entering into any type of agreement with a third party, such as the agreement with Walker, without their express written consent, which they never provided. (ECF No. 24, ¶¶ 8, 10-12).

Ultimately, Intelli-Heart cancelled its contract with Winters. Walker claims Intelli-Heart improperly cancelled its contract with Winters, which resulted in the breach of the agreement between himself and Winters.

B. Procedural History

On May 30, 2018, Walker filed his First Amended Complaint ("FAC") *pro se* against Intelli-Heart. (ECF No. 4). The FAC asserts one cause of action against Intelli-heart for intentional interference with his contractual relationship with Winters. (*Id.*, ¶ 116). He seeks a variety of damages, including compensatory and punitive damages. (*Id.*) Intelli-Heart answered the FAC on September 20, 2018, denying the vast majority of the allegations in the complaint and asserting 31 affirmative defenses. (ECF No. 24).

Walker now seeks leave to file a second amended complaint ("SAC"). (ECF No. 79, 79-1). In the proposed SAC, Walker seeks to add three additional defendants: (1) Vanessa Parsons, CEO of Intelli-Heart; (2) Danny Weisburg, the President of Intelli-Heart[1]; and, (3) Daniel Germain, an attorney who appears to have performed some work on behalf of Intelli-Heart in relation to Walker's claims. (*See* ECF No. 79-1, ¶ 8). In the SAC, Walker seeks to expand the previously asserted Count IV for intentional

---

[1] Throughout the proposed SAC, Walker has referenced to an individual named "Danny Weisburg." (ECF No. 79-1, ¶¶ 8. 10, 52, 81-84, 93,103-104, 122-123; 126, 129, 140, 145 However, in other places in the SAC and the attachments incorporated into the proposed SAC, this person's name appears to be spelled "Danny Weisberg." (ECF No. 79-1, ¶ 88; *Id.* at Exs. 6, 9-14, 17, 25-26). For clarification, the court will use the spelling of "Weisburg" as identified in SAC and its caption.

interference with contractual relationship[2] in order to allege this cause of action against all named defendants. (ECF No. 79-1, ¶¶ 117-137). In addition, Walker seeks to add the following claims for relief: Count V, for intentional interference with contractual relationship against Danny Weisburg, in his personal capacity," (*Id.*, ¶¶ 139-140); Count VI, for "alter-ego" liability against CEO Vanessa Parsons in her personal capacity, (*Id.*, ¶¶ 141-143); Count VII, for aiding and abetting intentional interference with contractual relationship against Daniel Germain in his personal capacity, (*Id.*, ¶¶ 144-145); and, Count VIII, for quantum merit, or unjust enrichment, against defendants Intelli-Heart and Parsons. (*Id.*, ¶¶ 146-147).

Defendant Intelli-Heart opposes the motion to amend. (ECF No. 114). Intelli-Heart argues that the amendment should be denied because: (1) the request is made in bad faith; (2) Walker improperly delayed bringing the requested amended complaint; (3) the amendment would prejudice Intelli-Heart; and, (4) the amendments are futile as the new claims would be subject to motions to dismiss and the court may lack personal jurisdiction over proposed Defendant Germain. (*Id.*) Walker replied arguing that each of Intelli-Heart's arguments should be rejected. (ECF No. 115).

III. **LEGAL STANDARDS**

Courts in the Ninth Circuit "should liberally allow a party to amend its pleading." *Sonoma Cnty. Ass'n of Ret. Emps. V. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing, *inter alia*, Fed. R. Civ. P. 15(a)). Federal courts balance five factors when considering a motion to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and, (5) whether the plaintiff has previously amended his complaint. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). The factors do not weigh equally; as the Ninth Circuit has explained, prejudice receives greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*,

---

[2] The court dismissed Counts I through III that were alleged in the original complaint. (ECF No. 21) Therefore, Walker's FAC and the proposed SAC start with Count IV. (See ECF No. 4; ECF No. 79-1).

316 F.3d 1048, 1052 (9th Cir. 2003). Defendants bear the burden of establishing prejudice, and absent its presence or a "strong showing" under the other factors, there is a presumption in favor of permitting amendment. *Id.* (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)).

When considering prejudice, the court may weigh against the movant the amended pleading's great alteration of the litigation's nature and its effect of requiring an entirely new course of defense. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Alone, such alteration is not fatal. *Id.*

By contrast, futility "alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 809 (9th Cir. 2003). Futility arises when the amendment is legally insufficient, *Miller v. Rykoff-Sexon, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), or "where the amended complaint would . . . be subject to dismissal[,]" *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). When refusing to grant leave, the Court must justify its reasoning. *Leadsinger, Inc. v. BMG Music Publ'q*, 512 F.3d 522, 532 (9th Cir. 2008) ("An outright refusal to grant leave to amend without a justifying reason is . . . an abuse of discretion.") (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

That being said, before discovery is complete, a proposed amendment is "futile" only if it is "clear ... that the complaint could not be saved by any amendment." *Krainski v. State of Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Ed.*, 616 F.3d 963, 972 (9th Cir. 2010). The court must determine if the complaint's "deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984 965 (9th Cir. 2011).

In assessing whether a proposed amended complaint is futile, the court must consider whether the proposed claims for relief would be subject to a motion to dismiss.

Under the rules, however, pleadings, including amended complaints, are sufficient so long the document provides "a short and plain statement" that shows the party is entitled to the relief sought. Fed. R. Civ. P. 8(a)(2). Although a complaint need not contain "detailed factual allegations," it must allege sufficient facts to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible only where the court can reasonably infer the defendant is liable for the misconduct alleged. *Id.* When reviewing for sufficiency, the Court accepts factual allegations as true. *See id.* Nevertheless, the pleading must have basis in a cognizable legal theory. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

The court must take particular care when reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). The Court is to "construe *pro se* filings liberally . . . and to 'afford the petitioner the benefit of any doubt.'" *Id.* Despite the leniency afforded to *pro se* plaintiffs, the complaint must allege facts sufficient to support each element of the claims, and the court need not accept as true conclusory allegations, unwarranted deductions, or unreasonable inferences. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

III. **DISCUSSION**

Having weighed all of the above factors pursuant to the liberal standard of review applicable to *pro se* plaintiffs, the court finds Walker's motion to amend should be granted.

A. <u>Bad Faith</u>

First, there is insufficient evidence or proof that Walker's proposed SAC is made in bad faith. The court is aware that Walker has previously made a variety of assertions that could be construed as veiled threats of litigation, or at a minimum, assertions that he will seek to expand this litigation. (*See e.g.*, ECF No. 4, Ex. 6, Walker makes claims of

extortionist tactics by IHS sent to VA personnel; Ex. 9, Walker threatens IHS with litigation; Ex. 13, Walker states it is "lawsuit time" in email chain); (ECF No. 30, Walker making assertions of misconduct and racism against defense counsel); (ECF No. 39, email chains reflecting Walker sending extensive emails to defense counsel to which defense counsel requests that Walker stop his "harassing" conduct); (ECF No. 77, motion for protective order filed by defense counsel due to Walker's persistent contacts with represented party). However, after re-reviewing the filings in this case and the various attachments thereto, the court cannot conclude that these prior statements or actions establish Walker is acting in bad faith by requesting leave to file the proposed the SAC.

B. <u>Undue Delay and Prejudice</u>

The court rejects the contention that Walker unduly delayed seeking leave to file the proposed SAC or that the proposed amendment would prejudice Intelli-Heart at this time. As a starting point, Walker filed the original complaint in this case on March 26, 2018. (ECF No. 1). In the original complaint, Walker improperly attempted to bring this action as a *qui tam* action on behalf of the United States. (*Id.*) Thereafter, the first three claims for relief related to the *qui tam* aspects of the case were dismissed. Walker filed his FAC on May 30, 2018, which removed Counts I though III from the original complaint but was identical to the original in all other respects. (ECF No. 4). Walker filed the FAC prior to serving Intelli-Heart in September 2018. (ECF No. 23). Therefore, the proposed SAC is the first requested amendment made by Walker since Intelli-Heart was served and the answer was filed.

Walker sought leave to file the proposed SAC approximately five (5) months after the answer was filed. (ECF No. 23). Moreover, discovery is still open. Walker also claims he did not know of the facts giving raise to the proposed amendments until *after* he received certain information in discovery. (ECF No. 78 at 1). Therefore, the court cannot conclude that Walker's request for leave to amend the complaint at this time amounts to an undue delay.

Moreover, the court finds that Intelli-Heart has not met is burden of establishing sufficient prejudice to deny Walker's requested amendment. Here, Intelli-Heart bears the burden of establishing prejudice, and absent its presence or a "strong showing" under the other factors, there is a presumption in favor of permitting amendment. *Eminence*, 316 F.3d at 1052. Moreover, in considering this factor, the court may consider whether the amended pleading makes a great alteration of the litigation's nature and its effect of requiring an entirely new course of defense. *Morongo*, 893 F.2d at 1079.

Here, it does not appear that the proposed SAC will greatly alter the litigation's nature nor will it require an entirely different course of defense. In fact, a review of Intelli-Heart's opposition underscores that Intelli-Heart appears to be have been on notice of at least some of the facts giving rise to the requested amendments. (*See* ECF No. 114 at pp. 5-13). Moreover, the proposed SAC does not significantly expand the underlying disputed facts in this case, nor does it appear that discovery in this case would be substantially increased. To the extent additional discovery would be required or become necessary upon the filing of the SAC, an extension of the discovery deadlines could be requested, which would mitigate any possible prejudice. Therefore, the court finds that these factors weigh in favor of granting Walker leave to amend the complaint.

C. <u>Futility</u>

Finally, the court cannot definitively agree that Walker's proposed amendments are futile. As noted above, courts in the Ninth Circuit must *liberally* allow a party to amend its pleading. *Sonoma Cnty.*, 708 F.3d at 1117; Fed. R. Civ. P. 15(a). This is standard is even more forgiving and flexible when reviewing a proposed amended pleading submitted by a *pro se* party. *Hebbe*, 627 F.3d at 341-42. Thus, the policy in the Ninth Circuit is to permit the filing of amended pleadings unless there is a strong showing of futility, bad faith, undue delay or the like.

Whether Walker's proposed amendments are futile is a close question. However, the court finds that, pursuant to the liberal standard for granting leave to amend by *pro se* plaintiffs, it must err on the side of allowing the proposed amendment to proceed.

Under the rules, pleadings, including amended complaints, are sufficient so long the document provides "a short and plain statement" that shows the party is entitled to the relief sought. Fed. R. Civ. P. 8(a)(2). The court is also required to accept the allegations in the proposed complaint as true. Based on these standards and the liberal standards of construction applied to pro se litigants, the court cannot conclude the proposed amendments are entirely futile at this time. Simply put, the court is not convinced Walker's new claims for relief against the additional defendants would be dismissed based on a failure to state a claim for relief based on these liberal pleading standards. Therefore, this factor also weighs in favor of granting Walker leave to amend the complaint.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to amend the complaint (ECF No. 78) is **GRANTED**. The Clerk shall **DETACH** and **FILE** the second amended complaint attached as Exhibit One to ECF No. 79.

DATE: 4/9/2019

UNITED STATES MAGISTRATE JUDGE