**Terrance Walker,** *in propria persona*
212 Hillcrest Drive # 1
Reno, NV  89509
Tel: +1.775.971.8679
Email: walkerbillion@gmail.com

### IN THE UNITED STATES DISTRICT COURT FOR NEVADA

| | |
|---|---|
| Terrance Walker | : **CIVIL CASE NO.** 3:18-CV-0132-MMD(CBC) |
| Plaintiff, | : |
| vs. | :REPLY TO RESPONSES(EFC198, 200)TO WALKER'S |
| Intelli-heart Services Inc., et.al | :WALKER'S MOTIONS FOR SUMMARY JUDGMENT |
| Defendants. | :(EFC 158/171) |

COMES NOW Plaintiff Terrance Walker ("Walker") replying to summary judgment oppositions:

## I. BACKGROUND

After Defendants' cover up and $309,000+ theft of government contracting sales consulting services [half due Walker $154,916 (EFC 136, "SAC" ¶ 96) , Defendants have stooped to a new low: carefully parsing legal authority in an attempt to alter its meaning trying to confound Walker's claims. Yet,  "[s]trategic omissions do not" change meanings of clauses or phrases, *Swanson v. Bank of America, N.A.*, 563 F.3d 634, 636 (7th Cir. 2009). For example:

1) Defendants cite L-3 Communs. Corp. v. Serco Inc., 39 F. Supp. 3d 740 (E.D. Va. 2014)  claiming it did not implicate the "FARs because the case did not present substantial and disputed questions of federal law"[1] (EFC 200, pg3, ll 14-16).

2) Defendants claim "Walker's 'second tier' subcontractor theory fails outright" (EFC 200, pg 13-15) but then cites cases only relating to DIRECT "first tier" subcontractors[2]

3) Defendants claim Winters was forbidden from subcontracting(EFC 200, fn 4)Yet, its Contract clause indicates Winters was an Independent Contractor, free to do his sales"[3]

4) Defendants cite "Rest. 2d Torts § 766 cmt. b (Deliberately and at his pleasure, one may ordinarily refuse to deal with another,and the conduct is not regarded as improper, subjecting the actor to liability...") , but fails to cite the applicable part[4].

---

[1] That court referred to no "**specific disputed federal statute"** L-3 Communications Corp Id. 747. However, Walker references FAR 52.232-40 & FAR 52-203-19 (EFC 171, Div III.3.2.c-d)

[2] None of the cases allude to FAR 52.232-40 and FAR 52-203-19 which are in IHS' VA contracts (Federal clauses)--- **not clauses interpreted under "Nevada law"(EFC 200, pg 14, line 9)**

[3] "Defendant .... structured [Winter's] relationship '[a]s independent [Distributor]' without **'any right to make commitments of any kind or to create any obligation for or on behalf of the other without the prior written consent of the other party**" Henderson v. United Student Aid Funds, Inc., Case No.: 13cv1845 JLS (BLM), at *11 (S.D. Cal. Feb. 27, 2017)

[4] ".......**there is a general duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons..**" Rest. 2d Torts § 766 cmt. b

The wide latitude given to lawyers should be curtailed in this matter[5]. Had this *pro se* litigant expounded in such freewheeling fashion, the Defendants would be claiming Walker should be upheld to attorney standards; standards they clearly don't follow.

**TABLE OF CONTENTS**

**I. BACKGROUND**………………………………………………………………………………1

**II. MEMORANDUM OF LAW  - POINTS AND AUTHORITIES**……………….………..3
   **A.  STANDARD OF REVIEW**……………………………………………...………..3

   **B.  CONTRACT INTERPRETATION**…………………………….…………...……..4

**III. ANALYSIS**………………………………………………………………………4

    **A.  DEFENDANTS' BLATANT CONTRADICTIONS AND BARE ASSERTIONS**…………………………………………………….4

      **1.  DEFENDANTS FAIL TO EXPLAIN AWAY ITS DIRECTIVE BY PARSONS TO WINTERS -- NOT TO HAVE NO "BOOTS ON THE GROUND" AND ITS CONFLICT WITH A TERMINATION FOR NOT NOT DOING "SITE VISITS" and "ACCOUNT MAINTENANCE"**  ……..4

      **2.  DEFENDANTS PREVIOUSLY UNDISCLOSED(and conflicted) SUBJECTIVE INTENTIONS IN THEIR AFFIDAVITS MUST BE DISREGARDED AS IT REGARDS THE TRANSACTIONS INVOLVED IN THIS MATTER –THEY CONTRADICT THE RECORD**……………..….5

      **3.  DEFENDANTS' CHALLENGE TO PERSONAL KNOWLEDGE FAILS**……………………………………...............7
      **4.  GERMAIN'S DUPLICATIVE ATTEMPT AT AN ANTI-SLAPP MOTION SHOULD BE REJECTED and his ATTORNEY SHOULD BE WARNED**…8

    **B.  THE COURT SHOULDN'T DO DEFENDANTS' WORK FOR THEM TO FIND DISPUTED FACTS and INADMISSIBLE EVIDENCE**…..........................8

    **C.  DEFENDANTS CONCLUSORY, HEARSAY, BARE ASSERTIONS --SOME MADE WITHOUT PERSONAL KNOWLEDGE – FAIL**…………….9

    **D.  WALKER'S TORTIOUS INTERFERENCE, Counts IV & V, SUCCEEDS**…..10
      **1.  DEFENDANTS FAIL TO PRESENT A REASON WHY THE TORTIOUS INTERFERENCE ELEMENTS CANNOT BE CONSIDERED INDIVIDUALLY**  ….......................................................10
      **2.  DEFENDANTS FAIL TO CHALLENGE TO WALKER'S EVIDENCE**………………………………………………..………..11

---

[5] In re Matter of Yagman 796 F.2d 1165, 1183 (9th Cir 1986)("The court must be able to respond to these situations with appropriate sanctions in the hope of deterring future inadequate filings by the certifying attorney and the trial bar in general.")

3.  **DEFENDANTS FAIL TO PRESENT A FACT ISSUE ON ELEMENT 1 – valid contract -** J.J. Industries, LLC v. Bennett, Id. **…...11**
    a.  **Defendants arguments as to what does not constitutes a 2nd tier subcontractor (under FAR part 52.232-40 and FAR part 52.203-19),  have no support** …………….……………….………………..12

    b.  **Winters was an INDEPENDENT CONTRACTOR -- NOT AN AGENT NOR PERSONAL SERVICE CONTRACT EMPLOYEE– and DEFENDANT'S BASELESS CLAIMS AS TO ITS IHS-WINTERS CONTRACT CLAUSE, OTHERWISE,FAIL**..………12

    c.  **THE IHS-WINTERS Contract cannot create a FACT ISSUE**……14

    d.  **IHS' compliance argument surrounding FAR 52.203-19, fails**……14

4.  **DEFENDANTS FAIL TO PRESENT A FACT ISSUE ON ELEMENT 2 – knowledge (**J.J. Industries, LLC v. Bennett Id.**)……15**

5.  **DEFENDANTS FAIL TO PRESENT A FACT ISSUE ON ELEMENT 4 – actual disruption (**J.J. Industries, LLC v. Bennett Id.**)…15**
    i)      **DEFENDANTS attempt to narrow federal "subcontractor" – and arguments against federal question in relation to these torts – FAIL**……………………………………………16

6.  **DEFENDANTS FAIL TO PRESENT A FACT ISSUE ON ELEMENT 5 – damages (**J.J. Industries, LLC v. Bennett Id**)……………17**

**V. CONCLUSION**…………………………………………………………………………17

**II. MEMORANDUM OF LAW  - POINTS AND AUTHORITIES**
    **A.  STANDARD OF REVIEW**

At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. Schmidt v. Contra Costa Cnty., 693 F.3d 1122, 1132 (9th Cir. 2012)

An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsuhita, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Id. at 586 n.11; Fed. R. Civ. P. 56(c).   "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007)An issue of fact is genuine only if there is

sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The court need not "[a]ccept as true allegations that contradict matters properly subject to **judicial notice or by exhibit.**" *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); as amended by 275 F.3d 1187 (9th Cir. 2001); *Makua v. Gates,* 2009 WL 3923327, at *3 (D. Haw. Nov. 18, 2009).

"([w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007))

"[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## B.  CONTRACT INTERPRETATION

Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight. Restatement, Second, Contracts § 202(4)(1981). (2) To quote one judge,

"in this inquiry, the greatest help comes, not from the bare text of the original contract, but from external indications of the parties' joint understanding, **contemporaneously** and later, of what the contract imported. [H]ow the parties act under the arrangement, before the advent of controversy is often more revealing than the dry language of the written agreement by itself." Macke Co. v. U.S., 467 F.2d 1323 (Ct. Cl. 1972).

East Coast Repair & Fabrication, LLC v. U.S.199 F.Supp.3d 1006, 1060 (E.D. VA August 9, 2016)"....the parties' contemporaneous writings documenting the Contract changes on this issue are the most compelling evidence of what actually occurred." (in a contract change clause case) A Contract is construed from the written language of the document and enforced as written. Ellison v. Cal. State Auto. Ass'n, 797 P.2d 975, 977 (Nev. 1990) and "should not interpret a contract so as to make meaningless its provisions." Phillips v. Mercer, 579 P.2d 174, 176 (Nev. 1978).

## III. ANALYSIS

### A.  DEFENDANTS' BLATANT CONTRADICTIONS AND BARE ASSERTIONS

A fundamental flaw in Respondent's arguments is their contradictions and bare assertions.

**1.  DEFENDANTS FAIL TO EXPLAIN AWAY ITS DIRECTIVE BY PARSONS TO WINTERS -- NOT TO HAVE NO "BOOTS ON THE**

4

GROUND" AND ITS CONFLICT WITH A TERMINATION FOR NOT DOING "SITE VISITS" and "ACCOUNT MAINTENANCE"

Defendants claim Winters, "was required to service existing accounts that had, including providing **onsite** training, **site** visits and account maintenance; however, he failed to adequately perform these activities" (EFC 200, pg 11, line 14-16)  Defendants do not reconcile this claim with their own contemporaneous (2015) email specifically issuing a directive[6] (under the old 2014 contract[7]) to Winters:

"FYI, after thought, **IHS will be responsible for the 'boots on the ground'** and will pay them directly as *this burden should not be yours*" (EFC 158-1/171-1, pg 3).

Defendants do not dispute the validity of the email of Parsons with this directive(EFC 171-1, ¶14,33).  Defendants tender affidavits with their motions that are "conclusory and unsupported and are contradicted by the relevant contemporaneously-generated records. " *DG Cogen Partners, LLC v. Lane Powell PC*, 917 F. Supp. 2d 1123, 1132 (D. Or. 2013)

**2. DEFENDANTS PREVIOUSLY UNDISCLOSED(and conflicted) SUBJECTIVE INTENTIONS ON THEIR AFFIDAVITS MUST BE DISREGARDED AS IT REGARDS THE TRANSACTIONS INVOLVED IN THIS MATTER –THEY CONTRADICT THE RECORD**

Defendants submit affidavits in support of its motions.

Germains' affidavit claims he "**never communicated** with Plaintiff" (EFC 199, pg 2, ¶ 4) Yet, in April 2, 2018, he purportedly told the VA that he  "**repeatedly demanded that Mr. Walker discontinue all communications** with Intell-heart's customers, to no avail"". (EFC 159, pg 4, ll. 11-12). Yet, he says the statements were "factually accurate" (EFC 199, pg 2, ¶ 3). *Germain* states Winters and Walker *rejected* a "settlement proposal" (EFC 201, pg 6 line 12) by Defendants. Yet, the other Defendants' claim *they* did not authorize any lawyer to do "settlements" with Winters and Walker (EFC 200-1, pg 7 ¶ 31) and, as such, Germain could not engaged prelitigation conduct, as he claims (EFC 198, pg 7-14).  If we are to believe Germain that he "never communicated with Plaintiff" (EFC 199, pg 2, ¶ 4), then how was he tasked with conducting an "investigation" (EFC 74-1, pg 24, line 12-16). Germain admits IHS' contract

---

[6] One must wonder if Winters did perform site visits, if they'd claim he violated another clause.
[7] Defendants' claim that this was the contract at termination **conflicts** with the contemporaneous records ("I do see that on **5/19/15** the Contract Terms column was written in under Jeff's Admin user account which I know you used"Email to Parsons(EFC 57-3, IHS-00139))

termination **required** a 30 day notice to Winters (EFC 198, pg 12 line 16), but no Defendant produced this notice.  Another affidavit contains IHS' subjective intentions (EFC 200-1, ¶. 6-30) which have been previously undisclosed and contradict with the objective conduct.  For instance, Defendants claim its "regular practice" (EFC 200-1, ¶6)  for it to record its transactions, but they have not presented a 30 day prior notice for Winters in regards to any of the deficiencies listed in the termination document(EFC 57-3, IHS-000176)  or anything listed in the rest of the affidavit. The rest of the affidavit (EFC 200, ¶ 7-33) contains post hoc explanations of Winters contract termination NEVER presented before, other than the cryptic termination document which ONLY explicitly to Winters engaging Walker to subcontract (EFC 57-3, IHS-000176). That Winters was **replaced** in Iowa is NEW information unsupported by any contemporaneous documents OR by any contractual term (EFC 200-1, ¶¶ 7-10, 17). WHEN this happened is a mystery. HOW this happened and under what CLAUSE this happened is not explained. Defendants' attempts at communication with Winters (where he was supposedly absent) are nowhere in the record. It is **not in ANY contract** where Winters could be denied payments due to not maintaining accounts "outside of California" (EFC 200-1, ¶ 11-12)(See EFC 200-2, EFC 171-1, pg 5-15)  According to Defendants' contemporaneous email said -- Winters was not responsible for ANY boots on the ground. (See e.g. EFC 171-1 pg 3, Div.II, ¶. Q; EFC 171-1) *"this burden should not be yours"* is what they told Winters (EFC 158-1/171-1, pg 3).  Defendants belatedly claim what its intent was in terminating Winters and issue self-serving claims as to its motivations (EFC 200-1, ¶28-31,33). Defendants offer bare, conclusory, legal assertions (EFC 200-1, ¶ 23-26 "highly confidential contract with our customer[8] that outlined our trade secrets[9]") (EFC 200-1, ¶ 32 , denial Walker

---

[8] If Defendants imply **Winters'** paystub (EFC 4, ¶ 45-45, Ex.8) and DRAFT contract(EFC 4, Ex 2)(EFC 200, fn 4) constituted a violation. Yet they were not the "property of" Defendants once given to Winters, nor designated confidential. See "proprietary information"(EFC 200-2 pg 3). **Its federal contracts** are "publicly accessible" (FAR 4.603(a)) on www.fpds.gov (FAR 4.602(c)); See also., Williams v. Long, 585 F. Supp. 2d 679, 688 n. 4 (D. Md. 2008) (Rule 902(5) self-authentication of "other publications" and it is the act of posting information on the Internet by a qualifying public authority that is publication); Estate of Gonzales v. Hickman, No. ED CV 05-660 MMM (RCx), 2007 WL 3237727, *2 n. 3 (C.D. Cal. May 30, 2007) (unreported) (Inspector General's website report is self-authentic)

[9] Designating information as "confidential" or "proprietary" does not establish that it is a trade secret. " *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, Case No.: 2:15-cv-00531-RFB-

was a 2nd tier subcontractor) and hearsay as to Winters and Weinberg's statements (EFC 200-1, ¶¶ 20-25). Defendants have not presented this information (EFC 74-1, pg 17-24) Violation of "goodwill" and "reputation" clauses (EFC 200-1 , pg 6 line 28) are unexplained and unsupported.

In sum, these,

"Undisclosed, subjective intentions are immaterial in this commercial transaction, especially when contradicted by objective conduct. Thus, the affidavit[s] ha[ve] no legal effect even if its averments are accepted as wholly truthful." *Klopfenstein,  v.  Pargeter,* 597 F.2d 150, 152 (9th 1979)

Also, "The affidavits submitted by [Defendants] in opposition to the summary judgment motion state, for the most part, either irrelevancies or bare conclusions which cannot be accepted as sufficient for summary judgment purposes."Over the Road Drivers, Inc v. Transport Insurance Company, 637 F.2d 816, 819-820 (1st Cir 1980)

They're "contradicted by the relevant contemporaneously-generated records. " *DG Cogen Partners, LLC v. Lane Powell PC*, 917 F. Supp. 2d 1123, 1132 (D. Or. 2013).

### 3.   DEFENDANTS' CHALLENGE TO PERSONAL KNOWLEDGE FAILS

Defendants concede that Walker's SAC is a verified affidavit but claim that Walker did not base his assertions about their VA Contracts (and nefarious conduct) upon personal knowledge. (EFC 200, pg 5-7) Yet, the SAC to which they refer blatantly contradicts this:

"Walker is the original source of and has **direct and independent knowledg**e of all publicly disclosed information that the allegations herein are based upon. Walker has **personally gathered all the documentation substantiating the allegations herein**." (SAC, ¶¶ 3-4)

Had Defendants carefully read Walker's SAC, they'd know their VA contract information is public information on a government website (See e.g. SAC,  pg 100  "current contract values (which can be seen on FPDS.GOV)").  Walker's assertions are backed by "**judicial notice[10] or by exhibit[11]**." Sprewell v. Golden State Warriors Id.  (See e.g. SAC, pgs 51,53 listing eight(8) VA Contract facilities and a $2,325,675.00 value on IHS' contract signed in July 2017). Thus, Defendants claim that Walker did not have personal knowledge is "blatantly contradicted by the record," Scott v. Harris, Id. at 380 and should be rejected.  *Johnson v. Meltzer,* 134 F.3d 1393, 1400 (9th Cir.1998)(finding that pro se litigants " facts…..set forth in his motion are evidence to be considered when deciding a motion for summary judgment.")

GWF, at *6 (D. Nev. Nov. 9, 2018); it's a question of fact. *Frantz v. Johnson*, 116 Nev. 455, 999 P.2d 351, 358 (2000)
[10] The Court can notice the content on the government's website. Newton v. Holland, 2014 WL 318567 (E.D. Ky. Jan. 29, 2014) Also See footnote 8
[11] Walker alluded to, and attached, 27 exhibits to the SAC

### 4. GERMAIN'S DUPLICATIVE ATTEMPT AT AN ANTI-SLAPP MOTION SHOULD BE REJECTED and his ATTORNEY SHOULD BE WARNED

Other than the heavy use of superlatives and conclusory language, Germain's opposition appears to be nothing but a smoke screen. It provides no detailed analysis of Walker's factual assertions (EFC 158/171 Div. II), just merely refuting everything. (EFC 198). Yet, in fact, Germain concedes Walker's points in its filing, and rehashes its ANTI-SLAPP motion already filed (EFC 198, pg 7-10) (Compare EFC 159). Germain's claims should be rejected for the same reasons in (EFC 197) and his attorney should be warned that its duplicative motion practice. *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.,* 981 F.2d 429, 439 (9th Cir. 1992).

### B. THE COURT SHOULDN'T DO DEFENDANTS' WORK FOR THEM TO FIND DISPUTED FACTS and INADMISSIBLE EVIDENCE

Defendants' Opposition "disputes **nearly** all of the 'facts' that Walker claims are undisputed." (EFC 200, pg 9, line 1-2.) Germain does the same (EFC 198) "Defendants believe there are many other allegations that are not properly admissible for summary judgment purposes" (EFC 200, pg 5. fn 2) Defendants do not point out which Assertions (in Div. II of EFC 158 and EFC 171) of Walker's motions it CLEARLY disputes or why any assertion is inadmissible. Defendants cryptically point out disputes within Walker's SAC as if they were filing an Answer (EFC 200, pg 5-7). Yet, Walker's issues were articulated, listed in an organized format, numbered, and lettered. There were evidentiary references IN ADDITION to cites from SAC (EFC 158/171, Division II). That Defendants disagree that Walker made SOME legal conclusions in his SAC or gathered some documentation based upon his personal knowledge (which they cannot discern how Walker knows) is NO reason to fail to meet its burden on summary judgment. (EFC 200, pg 5-7)(EFC 198)As held by this very Court before (and should be held as to Defendants' shotgun refutations):

"the Court will not sift through the facts section of its Motion in an attempt to discern what other evidence its..... claim may be based on to support its opposition to summary judgment. *See Independent Towers of Washington v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) ('judges are not like pigs, hunting for truffles buried in briefs') " *Chemeon Surface Technology, LLC, v. Metalast International, INC. et al.*312 F.Supp.3d 944, 955 (2018).

"*Celotex* held that the non-moving party must "go beyond the pleadings and *by her own affidavits,* or by the `depositions, answers to interrogatories, and admissions on file,'" demonstrate genuine issues of fact. *Celotex,* 106 S.Ct. at 2553 (emphasis added)." *McElyea v. Babbitt*, 833

F.2d 196, 198 n.1 (9th Cir. 1987)  Here, Defendant has not done that.  CLEARLY, had Walker's SAC been entirely undiscernible and devoid of facts, the Court would not have found it sufficient (EFC 135, pg 9)

### C. DEFENDANTS CONCLUSORY, HEARSAY, BARE ASSERTIONS --SOME MADE WITHOUT PERSONAL KNOWLEDGE -- FAIL

Defendants make numerous, unsubstantiated, conclusory bare factual and legal assertions.  In their affidavit they make bare legal and factual claims and hearsay statements (See EFC 200-1, ¶¶ 23-26 "highly confidential contract with our customer that outlined our trade secrets[12]") (EFC 200-1, ¶ 32 , denial Walker was a 2nd tier subcontractor),  (See EFC 200-1, ¶¶ 20-25, hearsay on what Weisberg and Winters said)  Defendants' claims that Walker did not  "Take a specific part of IHS' contract" (EFC 200, pg 13, 26-28) is made without personal knowledge. Yet, Defendants submitted an affidavit claiming to not know of Walker until Nov. 2017.  (EFC 200-1, pg 4, ¶19) Obviously, whether Walker helped Winters would not have been within Defendants' personal knowledge since they claim it was "secret"[13](EFC 200-1, pg 4, ¶ 23). Also, Defendants bare, conclusory, uncorroborated assertions they "received complaints about such poor performance and comments that Winters reflected badly on IHS."  (200 , pg 16 line 1-2) "added breaches by the repeated and unauthorized improper disclosure of proprietary/commercially useful and private information"  (200 , pg 16 line 4-5)   and "Defendants' lawful and proper activities in investigating up to and terminating Winters,"   (EFC 200 , pg 16 line 10-11) find no factual or legal support.   Germain tries to recite the same affidavit and contract (EFC 198, Ex. 1) and emails of Winters (EFC 199, Ex 4) which are likewise, unsupported and hearsay,

---

[12] Designating information as "confidential" or "proprietary" does not establish that it is a trade secret. " *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, Case No.: 2:15-cv-00531-RFB-GWF, at *6 (D. Nev. Nov. 9, 2018); trade secret is a question of fact. *Frantz v. Johnson*, 116 Nev. 455, 999 P.2d 351, 358 (2000)

[13] Oddly, Defendants present an email contradicting their assertion Winters kept Walker's relationship with him secret prior to their breach(EFC 57-3 IHS-00154)(he says, " James Winters asks that IntelliHeart gets current on commissions owed so that I can inform the VAMC Contracting Officer that the situation is resolved as I will promptly pay Terrence Walker.")

respectively. Germain implies Winters was a "personal service contractor"(EFC 198,pg 12 line 5) but this is contradicted by Winters' pay stub provided to Walker, with no taxes withheld[14].

Defendants point to no authorities showing how it was engaged in "lawful and proper activities in investigating up to and terminating Winters"  or that they were engaged in the "enforcement of their own rights"  (EFC 200, pg 16 , 10-12) Defendant's reiteration of "lawful and proper activities" does not establish such (pg 15, line 12 pg 16, line 14; pg 17, line 19)  Defendant makes unsupported legal assertions that "inability-to- contract prohibition renders the Winters-Walker agreement void as to IHS." (EFC 200, pg 9 13-14) and that it  "prevented Winters from entering into any agreement with Walker as it pertained to IHS." ( EFC 200 pg 11, 27-28) Defendant's "conclusory allegations, unsupported by factual data, [and] do not create a triable issue of fact." Kung v. Fom Investment Co., 563 F.2d 1316, 1318 (9th Cir. 1977) and should be disregarded Soremekun v. Thrifty Payless, Inc. Id.

### D.  WALKER'S TORTIOUS INTERFERENCE, Counts IV & V, SUCCEEDS
#### 1.  DEFENDANTS FAIL TO PRESENT A REASON WHY THE TORTIOUS INTERFERENCE ELEMENTS CANNOT BE CONSIDERED INDIVIDUALLY

Defendants claims no assessment can be made of their, " justification of their .... activities at all until Walker proves at trial that Defendants intended to interfere with the Winters-Walker agreement." (EFC 200  pg 16 , line 14-15).Walker concedes this point and does not present intent.

Yet, Defendants cite  Ramona Manor Convalescent Hosp. v. Care Ent., 225 Cal. Rptr. 120, 124 (Ct.App. 1986), to assert that the Court cannnot consider the elements 1,2, 4, and 5 of tortitious interference for summary adjudication (EFC 200, pg 15-17). Yet, that case is inapposite:

"Only if and when plaintiff establishes an 'intent to interfere' does the issue of 'justification' come into play. (Lowell v. Mother's Cake & Cookie Co., supra, 79 Cal.App.3d at pp. 18-19.) '[W]hile

---

[14] See e.g. "Section 1(b)(1) and (2) of 41 C.F.R., chapter 7, Appendix F (1983), defining a '**personal services contract**' as 'one which establishes an **employer-employee relationship**,'"; "[S]uch relationship exists when the person for whom services are performed has **the right to control and direct the individual who performs the services,** not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done.**" Professional & Services Leasing Inc. v. Commissioner IRS 862 F.2d 751 (9th 1988) (citation omitted); Even Germain's citation See HD Supply Facilities Maintenance, Ltd. v. Bymoen, 210 P.3d 183 (Nev. 2009) references an **employees** (**not** an independent contractor like Winters)

defendant's culpable intent is an element of the cause of action to be pleaded and proved by plaintiff, defendant's justification is an affirmative defense' in the torts of interference with an existing or prospective economic relationship." Ramona Manor Convalescent Hosp. v. Care Ent., 225 Cal. Rptr. 120, 124 (Ct.App. 1986),

Here, admittedly, Walker does not urge consideration of intent element, so Defendants' justification does not "come into play"  Ramona Id..  Neither Ramona Id., nor Daldumyan v. World Fin. Grp. Ins. Agency, Inc., No. B277973, 2018 Cal. App. Unpub. LEXIS 2645, at *71-72 (Apr. 17, 2018) supports Defendants' claim that ALL elements must be decided by jury:

"Daldumyan submitted evidence from which a trier of fact could conclude that the Marketing Company and Daldumyan had a valid contract, of which the Insurance Agency was fully aware." *Daldumyan v. World Fin. Grp. Ins. Agency, Inc.*, B277973, at *63 (Cal. Ct. App. Apr. 17, 2018)

In THIS case, Defendants do not dispute they knew of Walker's contract on Feb. 8, 2018; they merely submit an affirmative defense -- that their contract forbid Walkers contract. Also,

"Daldumyan submitted evidence from which a trier of fact could conclude that the investigation and termination of Daldumyan was conducted in their capacities as officers and directors of the Insurance Agency, and as employees performing work for the Insurance Agency." *Daldumyan v. World Fin. Grp. Ins. Agency, Inc.*, B277973, at *63 (Cal. Ct. App. Apr. 17, 2018)

In THIS case, Defendants ADMIT that they conducted their investigation and termination in their capacities as officers, directors, or employees. Thus, Defendant's reliance on *Daldumyan* is misplaced.  *In Bernstein,  v. AETNA Life & Casualty* 843 F.2d 359, 366 (9th 1988) the Ninth Circuit noted that the District Court ruled on a single element or tortious interference of Arizona law finding a  " failure to show a valid contractual relationship or business expectancy" , reversed said finding, and did not hold that all of the elements MUST be considered together.

Its discretionary to rule on elements of  tortious interference on summary judgment if the  Court "feels that further development is needed to assist it in its decision" Collins Id. 662 P.2d 610, 622 fn8 (Nev. 1983) (even as to "state of mind"). Defendants cite no on-point authority.

**2.   DEFENDANTS FAIL TO CHALLENGE TO WALKER'S EVIDENCE**

Defendants do not refute any of the other evidence cited by Walker (EFC 158/171, Div II)

**3.   DEFENDANTS FAIL TO PRESENT A FACT ISSUE ON ELEMENT 1 – valid contract -** J.J. Industries, LLC v. Bennett, Id.

Defendants concede the validity of the Walker-Winters Contract, by itself. (See EFC 158/171 Div II.D and Div. III.C.2)  Defendants appear to have abandoned their claim that Walker-Winters Contract bound Walker to IHS (a nonsensical claim they needlessly repeated (See e.g. EFC 169,

pg 11, pg 21,line 12)).  Defendants assert, however, that Walker-Winters contract is  invalid based upon *THEIR* contract with Winters and argues that this is a fact issue. Defendants fail.

### a. Defendants argument as to what is not a 2nd tier subcontractor (under FAR part 52.232-40 and FAR part 52.203-19),  have no support

First, Defendants fail to directly confront Walker's argument that he was a 2nd tier subcontractor (or a *sub*subcontractor) of IHS  *as defined* by "FAR part 52.232-40 and FAR part 52.203-19" [EFC 158/171, Div. III.C. 2(c-d)]  [Note:  Defendants only alludes to a carefully parsed 2010 case to allege:  ("FARs') do not apply to 'subcontractors' who do not have contracts with the prime contractor." (EFC 200, pg 14, line 1-2).  Defendants' authority fails to cite any specific FAR section L-3 Communications Corp Id.39 F.Supp 3d 747 ("Defendant **fails to direct the Court to any specific disputed federal statute"**). Defendants also cite inapplicable  [*direct*] subcontractor  definitions (EFC 200, pg 14, line 9) (a red herring).   As the federal court tasked with interpreting the FAR the most has noted:

"under the *Federal* Acquisition Regulation, **a `subcontactor' is defined** as `any supplier, distributor, vendor, or firm that furnishes supplies or **services** to or for a prime contractor or **another subcontractor.**[Winters]" Per Aarsleff A/S v. United States , 121 Fed.Cl. 603,fn 39 (2015) rev'd on other grounds Per Aarsleff A/S v. United States, 829 F.3d 1303 (Fed. Cir. 2016) (FAR 44.101)

Defendants also concede that FAR 52.232-40 (See Fed. Reg. Commentary[15]) and FAR 52.203-19 specifically embrace similar definitions as in Per Aarsleff A/S Id.(e.g. a subcontractor of **another subcontractor** is a subcontractor) Thus, Defendants a narrowing of "2nd tier subcontractor" fail.

### b. Winters was an INDEPENDENT CONTRACTOR -- NOT AN AGENT – -- NOT A PERSONAL SERVICE CONTRACTOR – NOT EMPLOYEE - DEFENDANT'S BASELESS CLAIMS  AS TO ITS CONTRACT FAILS

Next, Defendants imply that Winters was an agent (EFC 200, pg 13, ll 11-16) or personal services contractor (EFC 198, pg 12, line 6) subject to their control, but that fails. (Its "blatantly contradicted by the record," Scott v. Harris, Id. at 380).

For instance, in Mintz v. Blue Cross of California, 172 Cal.App.4th 1594 (2009), The contract alleged to be interfered with in Mintz **expressly** stated that the defendant would act on

---

[15] https://www.federalregister.gov/documents/2013/11/25/2013-28053/federal-acquisition-regulation-accelerated-payments-to-small-business-subcontractors which states that subcontractors ("not limited to first-tier subcontractors" -- ¶ 9))

behalf of one the contracting parties **as its agent** to administer the contract. Id. at 1603-04. That case is inapposite. The IHS-Winters contract did expressly state Winters was an agent, employee, or personal services contractor, and it not dictate the manner in which he made sales, only the result. Agency is not established when,

"control may be exercised only as to the result of the work and not the means by which it is accomplished[;]"such as in Winter's case. In such a case "an independent contractor relationship exists." In re Coupon Clearing Serv., Inc., 113 F.3d 1091, 1099 (9th Cir. 1997)

"This follows naturally from the fact that Defendant .... structured [Winter's] relationship '[a]s independent [Distributor]' without **'any right to make commitments of any kind or to create any obligation for or on behalf of the other without the prior written consent of the other party**" Henderson v. United Student Aid Funds, Inc., Case No.: 13cv1845 JLS (BLM), at *11 (S.D. Cal. Feb. 27, 2017) (See SAC, Exhibit 2, the 2015 Contract which also contains the same clause as the 2014 contract (EFC 200-2). Note, Walker contests the validity of the 2014 contract, but since the phrase was in both, it would still be of no effect as to Walker's assertion made on this point)

"The contract between [IHS] and [Winters] does not provide that [IHS] can control the manner in which [Winters] performs [his government sales] " Mkhitaryan v. U.S. Bancorp, 2:11-CV-1055 JCM (CWH), at *13 (D. Nev. Aug. 8, 2013). "The contract provides that [Winters] is an independent [Distributor]" Mkhitaryan v. U.S. Bancorp, 2:11-CV-1055 JCM (CWH), at *3 (D. Nev. Aug. 8, 2013)(Compare SAC, Ex. 2, pg 1)(EFC 200-4, pg 1) The contract permitted [Winters] to subcontract its services, which [Winters] did by subcontracting with [Walker]" Mkhitaryan v. U.S. Bancorp, 2:11-CV-1055 JCM (CWH),at *13 (D. Nev. Aug. 8, 2013)  "The party asserting the agency relationship has the burden of proving the relationship by a preponderance of the evidence." Hamm v. Arrow creek Homeowners' Ass'n, 124 Nev. 290, 300, 183 P.3d 895, 903 (Nev. 2008). Yet, Plaintiffs have not offered any evidence to support it.

Winter's paystub(EFC 4, ¶ 45-45, Ex.8) clearly indicates **no** taxes taken out of his check (he was no employee). He was paid commission[16] who he assigned part to Walker. Thus, in addition to the lack of control on Winters' sales activity by IHS, Germain's claim as that Winters was a "personal services contractor" (employee-contractor), also fail( fn. 14). Germain case citation is WAY off-point; its related to protections for **employees** from **employers**, **not** protections for *wily* prime contractors from their independent subcontractors:

---

[16] There was no "there was "nothing extraordinary about the assignment of commissions rights here" Easton Bus. Opp. v. Town Exec. Suites, 126 Nev. 119, 230 P.3d 827, 830 (2010),

"Given this reasoning, which reveals a single-minded concern with preserving an **employee's individualized choice** to covenant not to compete with a particular employer, we conclude that <u>Traffic Control</u>'s rule of nonassignability stands for the general proposition, grounded in the law of contractual assignments, that personal services contracts are not assignable absent consent" *HD Supply Facilities Maintenance, Ltd. v. Bymoen*, No. 50989, at *7 (Nev. 2009)

### c.  THE WINTERS-IHS Contract cannot create a FACT ISSUE

"'**Construction of a contractual term is a question of law**,' …... In interpreting a contract, `the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances <u>if not clear from the contract itself.</u>'" A contract is ambiguous **when** it is subject to more than one reasonable interpretation. Any ambiguity, moreover, ***should be construed against the drafter***. The parties' intentions regarding a contractual provision present a question of fact. *Anvui, Llc. v. G.L. Dragon*, 123 Nev. 212, 215-16 (Nev. 2007) (emphasis added)

Although "ambiguity creates a genuine issue of material fact as to the parties' intent," *Anvui, Llc. v. G.L. Dragon*, 123 Nev. 212, 216 (Nev. 2007). There is no authority that its INDEPENDENT CONTRACTOR clause in the IHS-Winters contracts can be construed in the same manner as an anti-assignment clause or an agent clause. This is not an issue of fact as Defendants contend (EFC 200 pg 13 line 1)  because they fail to show any case law that would make the IHS-Winters contract clause not "clear from the contract itself" or "subject to more than one reasonable interpretation" <u>Anvui</u> Id..  In fact, Defendants <u>point to nowhere</u> in **Winters' contract with Walker that limited it to IHS, so their claims of authority over it is entirely bogus**. At any rate, ambiguity would be construed AGAINST Defendants <u>Anvui</u> Id. IHS' contract provisions would be meaningless <u>Phillips v. Mercer</u> Id. if its provisions were interpreted to be an anti-assignment clause. The Contracts should be construed as written. <u>Ellison v. Cal. State Auto. Ass'n</u>, Id  There is no showing that examining intent of the IHS-Winters unambiguous contract  "might affect the outcome of the suit under the <u>governing law.</u>" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). It simply could not restrict Winters from subcontracting with Walker or affect the validity of Walker's contract. Nor could Winters reported lack of notice or consent have such effect. [EFC 171, Div. III.C. 2(a-b)]

### d.  IHS' compliance argument surrounding FAR 52.203-19, fails bad

Defendants fail to explain FAR 52.203-19 omission from the IHS-Winters contract. They state,

"FAR 52.203-19 prohibits subcontract agreements from included [sic] clauses that prohibit subcontractors from lawfully reporting waste, fraud, or abuse related to the performance of a Government contract."(EFC 200 pg 10, fn 3) [THAT's not what that provision says]

Defendants miscite FAR 52.203-19 which **explicitly** require the inclusion of THAT clause in,

*"***any other written statement that the [government]contractor requires any of its employees or subcontractors to sign regarding nondisclosure of contractor information***"*  FAR part 52.203-19(a)  [THIS requirement, protecting subcontractors from reporting of "fraud, waste, and abuse" should have clearly been in the IHS-Winters contract and confidentiality clause]

Defendants conclude with a nonsensical red herring excluding the terms of FAR 52.203-19(b),

" The Distributor Agreement protects trade secret, commercially useful or other private information from disclosure – it is thus a completely lawful provision." (EFC 200 pg 10, fn 3)

Yet, to comply, contractors (like IHS) were required in 2017 to not only cease using their agreements which **omit** protections for reporting "fraud, waste, and abuse", but they were mandated they "notify current employees and subcontractors" that any covered "preexisting internal confidentiality agreements" are "no longer in effect."  FAR 52.203-19(c). Defendants fail to explain how their "preexisting internal confidentiality agreements" in the IHS-Winters contract from 2014 (omitting FAR 52.203-19(b))was still in effect in Feb. 2018.

        **4.  DEFENDANTS FAIL TO PRESENT A FACT ISSUE ON ELEMENT 2 – knowledge (**J.J. Industries, LLC v. Bennett Id.**)**

        Defendants concede they knew of Walker when it terminated Winters (EFC 158/171  Div. II.M.

        **5.  DEFENDANTS FAIL TO PRESENT A FACT ISSUE ON ELEMENT 4 – actual disruption (**J.J. Industries, LLC v. Bennett Id.**)**

Defendants urge that Walker's rights ended when it "***merely ended***" Winters Contract. Yet, " it is incorrect that a party's rights under a contract evaporate upon breach.". WMCV Phase 3, LLC v. Shushok & McCoy, Inc. et. al, 750 F.Supp.2d 1180, 1195 (D. Nev. 2010)  Defendants concede they held on to over $309,000 of Winters (half due Walker).  Defendants, more correctly, "merely" engaged in a **serious crime and fraud which should "end" in jail**. While Defendants argue that a jury should here all claims together on this tort, Defendants fail to challenge Walker's assertions that "investigating", "suspending / terminating [Winters]" and "not paying" constitute "disruptions"  (EFC 158/171, Div. IV.C.4.a-c)  The Defendants seem to have a problem understanding how "**thwarting**" (EFC 158/171, Div. IV.C.4.d) Walker's attempt at a resolution

15

with the VA in regards to late payments due him because of Defendants breaches of Winters contract (and, thus, Walker's contract) is a federal question(EFC 200, pg 3).

### a.   DEFENDANTS attempt to narrow federal "subcontractor" – and arguments against federal question in relation to these torts – FAIL

First, Defendants' "thwarting" Walker's VA resolution per FAR 52.232-40 is interference. WMCV Phase 3, LLC v. Shushok & McCoy, Inc. et. al,750 F.Supp.2d 1180,1196(2010) states:

"Contractual relationships remain in place after a breach, and they can often—perhaps more often than not—be resolved without resorting to the courts, and the contract may then continue in force. The Court thus rules that **an allegation of interference with the private resolution of a ripe claim for breach of contract** can support a claim for intentional interference with contractual relations. " WMCV Phase 3, LLC v. Shushok & McCoy, Inc. et. Al Id.

Germain admits Defendants disruption stating (on April 8, 2018) they "repeatedly demanded that Mr. Walker discontinue all communications with Intell-heart's customers, to no avail""(EFC 159, pg 4, ll. 11-12; EFC 198. Ex. 9). They warned Winters against communicating with the VA (EFC 158/171, Div. II.N) and misrepresented to the VA that Walker had never been connected "in any way" and that they had not made late payments (EFC 158/171, Div. II.L) This was AFTER Walker's (Jan-Feb 2018) assertions to the VA that IHS was not paying Winters accelerated payments under FAR part 52.232-40 (EFC 158/171, Div. IV.C.4.d; Div. II.J, ; Div II. N.) of which the VA could have enforced. [Walker could not get paid unless Winters was paid and Defendants caused this breach] Defendants concede the evidence shows this. Walker reported IHS for non-payment under FAR 52.232-40, clauses in the VA Contracts held by IHS. (EFC 158/171, Div. IV.C.4.d; Div. II.N). Defendants admit their VA contracts contain FAR part 52.232-40.(EFC 158/171, Div. II.F; pg 11, ll. 1-15), but Defendants SOMEHOW claim the definition of "subcontractor" under FAR 52.232-40 falls **under Nevada law**. (EFC 200, pg 14, ll. 8-22). Perhaps, this is what mislead the Magistrate before, but it shouldn't mislead this Court.

The Nevada law "interpretation" given by Defendants of "subcontractor" in regards to their FEDERAL VA Contracts (in their contracts) of FAR part 52.232-40 would make them meaningless Phillips v. Mercer Id.  The FEDERAL provisions which has its own definition of

"subcontractor". (See pg 11) The VA Contracts should be construed as written. <u>Ellison v. Cal. State Auto. Ass'n</u>, Id  As such, operation of FAR part 52.232-40 is a federal issue[17] in the case.

### 6.   DEFENDANTS FAIL TO PRESENT A FACT ISSUE ON ELEMENT 5 – damages (<u>J.J. Industries, LLC v. Bennett Id</u>)

Defendants have failed to contest calculations made in the SAC (¶ 96) of damages. (EFC 171, pg 27, 24 "a minimum of $156,914") Defendants do not explain their problem with the math (EFC 200, pg 18) The VA Contract values are public (See fn. 8); the math is on the SAC.

**V. CONCLUSION**

Walker deserves Summary Judgment in his favor. Defendants fail on all levels to refute his claim.

WHEREFORE, Walker prays for an order accordingly.

Respectfully submitted,

<u>By /s/  Terrance </u>Walker                                    Dated:  June 24, 2019
Terrance Walker

**CERTIFICATE OF SERVICE**

The undersigned certifies that the undersigned is over the age of 18 and that on June 24, 2019, that he personally served via the Court's electronic filing system all parties to this case one copy of this filing to the parties at the email address listed below.

/s/  TERRANCE WALKER
signed, Terrance Walker
Copy to:

Will & Kristen Geddes, Esq, THE GEDDES LAW FIRM, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455
Fax: (775) 853-6899
E-Mail: <u>Will@TheGeddesLawFirm.com</u>
E-Mail: <u>kristen@thegeddesslawfirm.com</u>

Hall Jaffe Clayton LLP
Steven T. Jaffe
745 Peak Drive
Las Vegas NV 89128
Email: <u>sjaffe@lawhjc.com</u>,  <u>cwagner@lawhjc.com</u>, <u>lholding@lawhjc.com</u>, <u>mschwarz@lawhjc.com</u>, <u>msylva@lawhjc.com</u>

---

[17] see <u>Boyle v. United Techs. Corp</u>., 487 U.S. 500, 504, 507 (1988) Under the Boyle framework, for example, federal law "exclusively" governs interpretive questions concerning the "obligations to and rights of the United States under its contracts." Id. at 504 (in this case to Walker as a 2nd tier subcontractor). "[O]nly particular elements of state law are superseded." Id. (such as Walker's rights as a "subcontractor" under the definition of federal law -- FAR part 52.232-40)