**Terrance Walker,** *in propria persona*
212 Hillcrest Drive # 1
Reno, NV  89509
Tel: +1.775.971.8679
Email: walkerbillion@gmail.com

**IN THE UNITED STATES DISTRICT COURT FOR NEVADA**

| | | |
|---|---|---|
| Terrance Walker | : | **CIVIL CASE NO.** <u>3:18-CV-0132-MMD(CBC)</u> |
| Plaintiff, | : | |
| vs. | : | REPLY TO RESPONSES (EFC 211, 212) |
| Intelli-heart Services, Vannessa Parsons | : | ON MOTIONS FOR RECONSIDERATION |
| Daniel Germain, Danny Weisberg | : | AND FRAUD ON THE COURT |
| Defendants. | : | |

**COMES NOW**, Plaintiff "Walker" Replying to (EFC's 212 and 211), stating

**MEMORANDUM OF LAW & POINTS AND AUTHORITIES**

**I.   BACKGROUND:**

The Court refuted Defendant Intelli-heart Services Inc's(IHS) assertion that Walker's Second Amended Complaint ("SAC", EFC 136) was futile(EFC 135, pg 9). The SAC was, then, filed adding three parties and additional counts. (EFC 136). After the SAC was filed, Germain's counsel received 200 documents (EFC 210-1, pg 2). Germain noted, "the **Court has already determined that discovery is stayed pending** the resolution of Defendants' motions to dismiss(ECF nos. 159, 169)" (EFC 192, pg1 ll 23-25), though Court's Stay had issued **before** said motions on April 24, 2019 (EFC 157). Next, were the following discovery-related orders:

 "Defendant Daniel Germain's motion to dismiss (ECF No. 159) is <u>based on the allegations in the complaint</u>. Accordingly, **discovery is unnecessary to support Plaintiff's response.**" (EFC 166)

"Before the Court is Plaintiffs motion to reopen discovery (ECF No. 174). Similar to the Courts ruling on a motion Plaintiff previously filed (ECF No. 166), **discovery is unnecessary to support Plaintiffs response to the pending motions to dismis**s (ECF Nos. 159, 169)." (EFC 188)

 "**Discovery is STAYED until the pending motions to dismiss have been decided by the court.** The District Court has previously ordered that **discovery is unnecessary to support plaintiff's response to the pending motions to dismiss** (ECF No. 188)." (EFC 194)

Then, in a bewildering turnabout, the court made its Anti-Slapp dismissal ruling on March 4, 2020 on the factual sufficiency –the **evidence** (not <u>**the complaint**</u>) ("the Court is required to **consider evidence** in making a determination under these paragraphs." EFC 206, pg 5, ll 23-24) ("Defendants easily clear their burden to show by a preponderance of **the evidence**", EFC 206, pg 7, line 5) ("the evidence before the Court shows that statements to this effect were true." EFC 206, pg 7, line 5) Also see (EFC 206, pg 9, ll. 2,25) (EFC 206, pg 7, line 13, 19, 21, 25).

1

Judgment entered March 4, 2020.  Discovery was not completed, nor even started, for three added parties. Plaintiff filed reconsideration and fraud motions (EFC's 208, 209) Germain responds to both. (EFC 211) Other Defendants respond to (EFC 208). (EFC 212) Walker now replies.

## II.    BASIS AND STANDARDS FOR RECONSIDERATION AND FRAUD MOTIONS:

The Court  "granted [Walker] leave to file a combined response of 40 pages in length" (EFC 184, pg 2, line 5-6) to the Motions to Dismiss (EFC's 159, 169) but then puzzlyingly ignored Walker's Response (EFC 197) saying its over 24 pages(EFC 206, n. 4 "Plaintiff's 43 page response violates the 24 page limit that applies to responses to motions to dismiss. See LR 7-3(b)").   Then, the Court either claimed it did not understand Walker (EFC 206, pg 6, line 22-23,  finding Walker "does not clearly explain why") or got Walker's argument completely wrong (EFC 206, pg 7, line 11-12, "Plaintiff primarily attacks Defendants' statements to the effect that Plaintiff was not a subcontractor of IHS" )(Compare to Grounds number 2 and 5 below)

Though the Court submitted that it considered other arguments(EFC 206, pg 10, lines 20-23) that's not clear from the other parts of the Order where it says the Court was not "clear". Walker, thus, properly motions the Court to give it a chance to address Walker's actual issues that were overlooked and/or to preserve error.  This is not, as Defendants improperly suggest (without authority or evidence) a **"reargument"** due to "unhappiness" (EFC 211: pg 2, lines 20-22; pg 3 lines 19, 20; pg 5 lines 1,8)(EFC 212, pg 2, line 4) or lack of understanding (EFC 212, pg 5, ll. 14-15) because the Court was, admittedly, not clear on Walker's arguments or ignored them due to erroneously forgetting it allowed Walker leave to 40 page response. (Note: EFC 197, pgs 2-4 includes 3 pages of table of contents which are excluded from page limitations)

GROUND 2 Below (Fraud) is clearly under Rule 60.   However, GROUNDS 1,3,4,5,6 Below (as originally presented in Walker's motion and supplement (EFC's 208,209)) were filed within 10 days after judgment.  Defendants confine its argument to Rule 60 but fail to consider that, if filed within ten days of the district court's judgment, a motion for reconsideration is construed as filed pursuant to Rule 59(e). Bass v. United States Dep't of Agriculture, 211 F.3d 959, 962 (5th Cir. 2000).  Reconsideration motions (EFC 208)(EFC 209) necessitate consideration under Rule 59(e) which serve the function of correcting "manifest errors of law or fact"." United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006)

The  district court has inherent jurisdiction to modify, alter, or revoke a prior order. United States v. Martin, 226 F.3d 1042, 1049 (9th Cir. 2000) Reconsideration is appropriate if the Court

"committed clear error or the initial decision was manifestly unjust" <u>School Dist. No. 1J v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993).   Walker establishes both.

**1) THE LACK OF DISCOVERY FOR WALKER PRIOR TO THE ANTI-SLAPP DISMISSAL IS UNCONSTITUTIONAL AND IN VIOLATION <u>OF PLANNED PARENTHOOD</u> -- IT'S CLEAR ERROR MANIFESTLY UNJUST**

Germain claims that Walker's argument is simply reargued (EFC 211 pg 4-5 ll 24-3) Germain's assertion is obtuse. Walker claims there are a lack of findings on this issue.  Oddly, the Court (EFC 184, pg 2) allowed Walker to file a 40 page Combined Response to the Motions to Dismiss (EFC's 159, 169) but then seemingly ignored Walker's Response (EFC 197) because it was over 24 pages (EFC 206, n. 4).  Walker, thus, properly presents this issue to give the Court a chance to address the issue that was overlooked and/or to preserve error for appeal.

Germain points to no Court ruling or finding on a procedural error under <u>Planned Parenthood v. Center for Med. Progress</u> 890 F.3d 828, 833-834 (9th 2018).  Thus, Germain presents no reason why the Court did not make a clear error in denying discovery to Walker, or at least, make a finding:

*As the Ninth Circuit most recently explained in Planned Parenthood, 890 F.3d at 834, there are two standards under which an anti-SLAPP motion is assessed in federal court. First, defendants can challenge the legal sufficiency under the Rule 12(b)(6) standard. Second, defendants may challenge the factual sufficiency under the Rule 56 standard. However,* ***when a factual sufficiency challenge is made, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court."*** *Id. 890 F.3d at 834.*

As shown above, the District Court clearly followed the second standard articulated above (relying upon and requiring evidence), though earlier claiming to only be dealing with the sufficiency of the Complaint. Yet, the Court did not allow Walker "opportunities to supplement evidence based on the factual challenges" but, oddly, stuck factual sufficiency burdens upon Walker. (EFC 206, pg 10 fn. 6, "Plaintiff bears the burden at this second step of the analysis")

Similar to another case, Walker "filed repeated objections to the district court's decision not to allow discovery, arguing that it needed particular discovery as to specific falsity issues," Metabolife Intern., Inc. v. Wornick, 264 F.3d 832, 838 n.8 (9th Cir. 2001) Defendants have an abundance of documents and discovery which would establish Walker's claim which was denied due to a stay (EFC 157)  and 200 documents of Germain (EFC 210-1, pg 2) The " information is in the defendants' exclusive control, and may be highly probative to [Walker's] burden of showing falsity" Metabolife Intern., Inc. v. Wornick, 264 F.3d 832, 847

(9th Cir. 2001) (alterations in original)

"Requiring a presentation of evidence <u>without accompanying discovery</u> would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure. That result would effectively allow the state anti-SLAPP rules to usurp the federal rules. We could not properly allow such a result"
<u>Planned Parenthood v. Center for Med. Progress</u> 890 F.3d 828, 833-834 (9th 2018)

The Court cannot allow such an unfair result here in depriving Walker with an opportunity to get evidence to present his claims and refute Defendants Anti-Slapp motion.  The truth of this matter could very well be hidden in the 200 pages of documents of Germain or the other documents of the other Defendants that were denied only due to the discovery stay. This is a manifestly unjust result and clear error, in violation of Walker's due process rights and rules 8, 12, 56 and the enabling Act. <u>Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress</u>, 890 F.3d 828, 834 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018) (."when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, **discovery must be allowed.**" )

**2) FRAUD: DEFENDANTS CONCEDED THEY HAVE NOT EXHIBITED CANDOR ABOUT WALKER'S CLAIM TO BE A SUBCONTRACTOR UNDER FAR 52.232-40 / FAR 52.203-19**

"The integrity of the justice system is not served when an attorney, who has been sworn to tell the whole truth in a proceeding, refuses to answer simple, straightforward questions, whether posed by the court or by opposing counsel." <u>In the Matter of Keven A. McKENNA</u>. 110 A.3d 1126, 1148 (2015)(holding allegations against the ethics of an attorney were subject to Anti-Slapp)

Defendants still don't want to face the music -- Walker never alleged he was simply a "subcontractor", he alleged he was a 2nd tier subcontractor under FAR 52.232-40 / FAR 52.203-19 in the SAC and the VA contracting officers. They all knew Walker was merely providing market research and related assistance <u>to Winters</u> before their remarks to the VA. None of the Defendants told the "whole truth" to the VA, then, and none of them have the "candor" to tell the "whole truth" now.  Defendant's have danced around Walker's assertions that he was a 2nd tier subcontractor under FAR 52.232-40 / FAR 52.203-19 to the VA and they have done so now(EFC 159)(EFC169)(EFC 211)(EFC 212).

Defendants claim "Defendants made no misrepresentations to the Court"(EFC 212, pg 3, line 6).

Yet, Defendants Cited an 80 year old out-dated case stating (having no applicability):
"The United States Supreme Court defines the term "subcontractor," as follows: "a subcontractor includes anyone who has a contract to furnish labor or material to the prime contractor." Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 108, 64 S. Ct. 890, 894 (**1944**) (EFC 169, pg 10, line 22-25)

4

Defendants even claimed, mis-quoting a 2010 case:

"Federal Acquisition Regulations ("FARs') do not apply to "subcontractors" who do not have contracts with the prime contractor."(EFC 169, pg 11, line 3-5)

However, Federal Courts **NOW** hold "under the Federal Acquisition Regulation, a `**subcontactor' is defined** as `any supplier, distributor, vendor, or **firm** that furnishes supplies or **services** to or **for a prime contractor <u>or another subcontractor</u>**." Per Aarsleff A/S v. United States , 121 Fed.Cl. 603, fn 39 (2015) rev'd on other grounds Per Aarsleff A/S v. United States, 829 F.3d 1303 (Fed. Cir. 2016)

On the provisions Walker, relied, Walker clearly showed,
".....In **November 2013**, following guidance memoranda issued by the Office of Management and Budget ["OMB"], the FAR was amended to require a mandatory clause for all contracts (FAR Clause 52.232-40), providing that upon receipt of accelerated payments from a government agency, the prime must accelerate payments to its small business subcontractors 'to the maximum extent practicable and prior to when such payment is otherwise required under the subcontractor.' See FAR 32.009" (emphasis added) (alterations in "[ ]")(EFC 197, pg 19, fn 6)

All that's required under the Federal Acquisition Regulations is that one provide "services" to another "subcontractor" like Walker, admittedly, did for Winters :

FAR 52.203-19(a) [48 CFR § 52.203-19(a)] ".......... *Subcontractor* means any supplier, distributor, vendor, or **firm (including a consultant)** that furnishes supplies or **services** to or for a prime contractor or **another subcontractor**.

FAR 52.232-40 [48 CFR § 52.232-40  which refers to 48 CFR § 52.222-54 for the definition]
".......... Subcontractor means any supplier, distributor, vendor, or firm that furnishes supplies or **services** to or for a prime Contractor or **another subcontractor**."

Also See  <u>Per Aarsleff A/S v. United States</u> Id.

Defendants have conceded that Walker supplied **services** to Winters consistent with these definitions but keep alluding to State-law to say Walker was not a "subcontractor".  The FAR's definition is not based upon state-law.  Even if Winters was terminated in Feb. 2018, the FAR does not provide an out-clause under ***STATE-LAW*** to not pay for subcontractor's services already rendered. See FAR 52.232-40. Nor does the FAR require State-law "authority" to report prime contractors for late payment for services rendered.   Defendant does not explain its reasoning or how its treatment of Walker and Winters comports with FAR 52.232-40 in its VA contracts (along with Far part 52.203-19) (See e.g EFC 136, pg 7, 23, 31,32)  Federal law trumps state law when it comes to IHS' VA contracts which protect 2nd tier subcontractors:

"Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent that there is a clear congressional mandate, specific congressional action that makes this authorization clear and unambiguous."<u>Hancock v. Train,</u> 426 U.S. 167, 179, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976)[US Const. Art. VI, cl. 2. ("The laws of the United States . . . shall be

5

the supreme law of the land . . . any thing in the constitution or laws of any state to the contrary notwithstanding.")]

In *Airport Constr. & Materials, Inc. v. Bivens,* 279 Ark. 161, 649 S.W.2d 830 (1983), the Arkansas Supreme Court also applied the *Leslie Miller (Leslie Miller, Inc. v. Arkansas, 352 U.S. 187 (1956))* rule to subcontractors on federal contracts. It did so even though the subcontract was made seven months after the prime contract was awarded. According to the court, the expressed federal policy of selecting the lowest responsible bidder would have been frustrated by subjecting even the subcontractor to state regulations. *Id.,* 649 S.W.2d at 832

Here, state law cannot override FAR 52.232-40/FAR 52.203-19, to "frustrate" Walker's rights to of subcontractor payments.  Even though Walker's agreement was under state law -- IHS' obligations and VA Contracts were governed by FAR 52.232-40/FAR 52.203-19, including timely payments to Winters (their subcontractor). When IHS did not make timely payments to Winters, so he could provide timely payments to **Walker --his** subcontractor, IHS violated FAR 52.232-40.  State law cannot frustrate this scheme enacted by Congress and enhanced by the OMB to ensure "firm[s]" or "consultant[s]" supplying "services" within the chain of federal subcontractors are being paid. As such, Defendants' claim of Walker's lack of "authority" and "invalidity" under state law fail altogether. (EFC 212, pg 3, ll. 16-24). Defendants point to no Federal provision allowing a prime to obviate its requirements to pay for services its received. Walker provided services and he should have been paid. FAR  52.232-40.  Defendants have no authority to invalidate this provision in their contract which, obligated them to pay on time. Defendants know this, which is why they have misled the VA and the Court.

  Defendants have displayed an utter lack of candor around Walker's claim that he was a subcontractor under the Federal Acquisition Regulations, obstructing the judicial process. See United States v. Shaffer Equipment Co., 11 F.3d 450,  (4th Cir.1993) (upholding sanctions where an attorney, inter alia,  "wrongfully obstructed the [other party's]  efforts to root out the discrepancies and failed to reveal them once they learned of them" recognizing the "broader general duty of candor and good faith required to protect the integrity of the entire judicial process." under Supreme Court precedent finding a  *"general duty of candor to the court exists in connection with an attorney's role as an officer of the court."*)

In re Napster, Inc. Copyright Litigation, 479 F.3d 1078 (9th Cir. 2007) The plaintiffs in *Napster* alleged as grounds for the crime-fraud exception that the defendant committed "a fraud upon the court" by allegedly misrepresenting its relationship *vis a vis* Napster as a lender rather than as an owner. Here, Defendants misrepresentWalker's assertions under FAR 52.232-40 under state law.

6

The Court cannot tolerate Defendants' deliberate recasting of Walker's assertions [ in order to uphold that their statements were "truthful" to VA contracting officers].. Defendants simply refer to the same generalizations and misapprehensions of Walker's claims in the Order (EFC 206)  as a ground to uphold it (EFC 210, 212).  As such, Defendants arguments fail.

Walker has "(1) prove[d] by clear and convincing evidence that the [judgment] was obtained through fraud, misrepresentation, or other misconduct, and (2) establish[ed] that the misconduct prevented the plaintiff from fully and fairly presenting her case. " Jones v. Aero/Chem Corp., 921 F.2d 875, 880 (9th Cir. 1990)  (reversing the judgment when "**the district court did not hold a hearing to determine whether there had been misconduct, either knowing or accidental, nor did it make findings on this issue**" Id. at 879)

**3) THE  COURT ERRONEOUSLY FOUND DEFENDANTS "INABILITY TO CONTRACT CLAUSE" IN THE WINTERS-IHS CONTRACT CONSTITUTED A VALID ANTI-ASSIGNMENT CLAUSE (AND AGENCY CLAUSE**

To be clear, since the court was not "clear" of Walker's positions.  The:

> ***i) The Independent Contractor Clause is improperly dubbed "No Contractor Clause"***

*The Court held:*
"IHS *forbade* Winters from entering into any contracts **on IHS's behalf**" (EFC 206, pg 7, line 17-18) **and makes the illogical leap that** "**Winters's agreement to <u>pay Plaintiff</u> half of <u>his commission</u>** is such a commitment" [on behalf of IHS]  (EFC 206, pg 9, line 1) and **makes a perplexing jump** to "Winters's agreement with Plaintiff is therefore **invalid**, as Winters had no authority to enter into it."(EFC 206, pg 9, ll. 3-4)

How Winters' agreement *with Walker* could be a "commitment on behalf of " IHS, escapes any logical rationale.  First, ***Winter's agreement with Walker does not even mention IHS***, nor does it purport to. Secondly, Nevada law gave Winters an explicit right to subcontract out **his own  commissions** <u>Easton Bus Opp v. Town Executive Suites</u>, 230 P.3d 827, 833 ( Nev. 2010) (  *"nothing extraordinary about the assignment of commission rights here"* )  [IHS does not have any "authority" to declare otherwise]

Winters did not sign away his ability to pay for sales and consulting assistance -- Winters signed a bilateral contract with IHS -- not all of his rights to function as a independent contractor: *"Defendant .... structured [Winter's] relationship '[a]s independent [Distributor]' without 'any right to **make commitments of any kind or to create any obligation for or on behalf of the other**" <u>Henderson v. United Student Aid Funds, Inc.,</u> Case No.: 13cv1845 JLS (BLM), at \*11 (S.D. Cal. Feb. 27, 2017)  Winters did not need consent to contract with Walker for half of his commissions -- he had a right to (without an anti-assignment clause explicitly declaring this right to invalid) <u>Easton Bus Opp v. Town Executive Suites</u>* Id.  Defendants have misled the court as to the import of its "independent contractor clause" by conveniently dubbing it a "no contracting clause" and shredding the meaning of subcontracting rights of Nevada. The words "No

7

Contractor Clause" appear nowhere in IHS' contract and Defendants cite no authority for this phrase. [Note: In the only authority ever cited by Defendants listing its clause "make commitments for or on behalf of", Swafford v. DECA Health, Inc., 2011-Ohio-2301, ¶ 21 (EFC 114, pg 7), it fails to connect the case in any way to this one.  Winters did not specifically sign a contract listing IHS  (like Swafford did for DECA Health) ]

### ii) There was no Agent clause or evidence of Winters being IHS' agent

Perhaps, noticing its deficiency above, Defendants alternatively claimed Winters was their "agent", relying on an antiquated ruling from the 1800's which was not tied to this case: "Edwards v. Carson Water Co., 21 Nev. 469, 484, 34 P. 381, 386 (1893) ("It is a cardinal principle in the law of agency that the powers of the agent are to be exercised for the benefit of the principal and not for the agent or third parties,....." (EFC 169, p14-15, ll 28-2)

The Court adopted Defendants position that Winters was IHS' agent. without analysis (EFC 206, pg 9, ll. 5-12) and without reference to an "agent" clause or any other evidence.

> It should be noted,
>
> "Agency is the fiduciary relationship that arises **when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control**, and the agent manifests assent or otherwise consents so to act." Mavrix Photographs, LLC v. LiveJournal, Inc., 873 F.3d 1045, 1054 (9th Cir. 2017).
>
> To establish Winters as an agent by its clause, IHS' contract would have stated he  "<u>**shall act** on the principal's behalf</u>" and explicitly dictate his sales activities were "subject to the principal's control".   IHS' contract is inappropriate of an agent clause because it specifically states he "**shall not have the right to make any contracts or commitments for or <u>on behalf of IHS</u>** without first obtaining the express written consent of IHS" and it does not state "control".
>
> Thus, it's puzzling how the Court could simply accept Defendants claim of Winters as an "agent", without any "agent" clause or evidence. That was Defendant's burden to prove (not Walker's as the Court held) Hamm v. Arrow creek Homeowners' Ass'n, 124 Nev. 290, 300, 183 P.3d 895, 903 (Nev. 2008)("**The party asserting the agency relationship has the burden** of proving the relationship by a preponderance of the evidence.")[Compare EFC 206 pg. 9, line 2-3, "**Plaintiff has proffered no evidence** that IHS consented to Winters's agreement with Plaintiff")
>
> Nevada does not even require a subcontractor to **divulge *HIS*** subcontractors to the prime contractor. Easton Bus Opp v. Town Executive Suites, 230 P.3d 827, 833 ( Nev. 2010)(failure to inform prime contractor "normally does not invalidate an otherwise valid assignment"). Thus,

even more puzzling why the Court would find Winters' subcontracting as "circumstances known to both parties make the contract or agreement absolutely void" (EFC 206 pg 9, ll. 6-7)

Contracts are construed from the written language of the document and enforced as written. Ellison v. Cal. State Auto. Ass'n, 797 P.2d 975, 977 (Nev. 1990)

The Court has interpreted IHS' contract clause (with Winters) as an all-encompassing clause to call Winters an "agent", "invalidate" the contract, "void" the contract, absolves IHS from paying Winters for services rendered, declare unlimited "authority" over him, require "consent" to subcontract, and deem his subcontracted (and legitimate) sales and marketing activities as justifying termination without prior notice. None of this was "written language of the document" signed between Winters and IHS and cannot be "enforced" any differently.

As such, The Court clearly erred in equating IHS' contract with an anti-assignment clause or agent clause, without any evidence, authorities, or findings justifying its conclusions.

**4) THE COURT ERRONEOUSLY FOUND NEVADA LAW REQUIRES A DIRECT-KNOWN - BENEFIT TO ALLEGE UNJUST ENRICHMEN*T***

The Nevada high Court has consistently held that a direct (known) benefit is not required:

"Even an indirect benefit will support an unjust enrichment claim. Topaz Mut. Co., Inc. v. Marsh, 108 Nev. 845, 839 P.2d 606, 613 (1992) (recognizing an actionable unjust enrichment claim where there was an indirect benefit conferred upon the defendant)." Momot v. Mastro, 2:09-cv-00975-RLH-LRL, 3-4 (D. Nev. May. 13, 2011)

[The FAR does not require that one "know" of their 2nd tier subcontractors before mandating payments being made. FAR 52.232-40  In fact the Court has even apparently sanctioned the reporting of late payments in violation of the FAR.  See FAR 52.203-19/FAR 52.232-40 ["Plaintiff began complaining about slow payments—prompting IHS to quickly move to terminate Winters."(EFC 206 pg. 9, line 26-28)]

Defendants silently concede that they've misled the Court in citing Maine law and misdirecting the Court from Federal law on this issue.  The Court is supposed to  look to the highest State Court in Nevada *and only, then,* "for `guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482 (9th Cir.1986).  Here, the Court skipped the highest state Court rulings.

Yet, it is disquieting that the Court relied upon Maine law in finding IHS did not  "know" of Walker to resolve this unjust enrichment claim, when Nevada already resolved this issue. (EFC 206 pg. 9, line 26, finding IHS  "did not even know about Plaintiff and his arrangement with Winters" )  It is could even more troubling that the Court jumps to the illogical conclusion

9

that , "Defendants did not, and not have, appreciated any benefit that Plaintiff conferred on them." (EFC 206, pg 10 line 1).

To say Defendants have not appreciate benefits is to ignore $300,000+ in payments owed to Winters and Walker that Defendants circumvented:

"On Feb. 9, 2018, James Winters stated via email, "Intelli-Heart informed me, verbally, that **they would not being sending payment** as they will need to use those dollars for an attorney based on Terrence[sic] Walker's correspondence. They have also sent correspondence to me (February 8, 2018) to terminate our distributor agreement/contract to **circumvent their payment obligations.** (EFC 136, ¶¶ 56-57)"   (EFC 197, pg 9, ll. 4-19)

The Court's result is not consistent with Nevada law. Unjust enrichment is " 'the unjust retention … of money or property of another against the fundamental principles of justice or equity and good conscience.' " Topaz Mutual Co. v. Marsh, 108 Nev. 845, 856, 839 P.2d 606, 613 (1992) (quoting Nevada Industrial Dev. v. Benedetti, 103 Nev. 360, 363 n. 2, 741 P.2d 802, 804 n. 2 (1987)). Unjust enrichment occurs "**when ever** [sic] a person has and retains a benefit which in equity and good conscience belongs to another." Unionamerica Mtg., 97 Nev. at 212, 626 P.2d at 1273.

In no case is a requirement made that required the prime to "know" the 2nd tier subcontractor See e.g. Morris Pumps v. Centerline Piping, Inc., 273 Mich.App. 187, 729 N.W.2d 898, 904 (2006) (finding the defendant, a general contractor, liable for unjust enrichment where the defendant used materials that the plaintiff had supplied to another subcontractor and did not pay the plaintiff for those materials) ; United States ex rel. Ash Equip. Co. v. Morris, Inc., 4:14-CV-04131-VLD, at *25 (D.S.D. Aug. 8, 2017)"[Walker] is a subsubcontractor (sometimes also called a "second tier subcontractor"), which has no contractual relationship with [IHS], the general contractor. Therefore, the remedies against the various parties are distinct. As against [IHS]... [Walker's] ... remedies are.... as to [IHS], quantum meruit." ) (alterations in original)

**5) FINDING THAT DEFENDANTS' CONDUCT WAS PROTECTED IS CLEAR ERROR**

The SAC listed a number of false statements and omissions of Defendants that were missed by the Court's Order (EFC 206). 200+pages were withheld (EFC 210-1, pg 2), but others were:

" Defendants stated that Walker had never had any affiliation whatsoever with IHS-heart, that Walker had never been a subcontractor of IHS (EFC 136, ¶¶ 59, 66-67,72-73,80-83), and that IHS never made late payments to subcontractors. (EFC 136, ¶. 76)" (EFC 197, pg 8, ll. 13-16)

1 | "Germain's statements contain specific factual assertions about Walker's subcontract with Winters, the connection of Winters to both IHS and Walker, and the timeliness of payments flowing from the VA down to Winters and Walker, that will be proven either true or false in this litigation. ………..... In particular, Germain's statements contain certain factual representations whether Walker had any connections to IHS. These alleged misrepresentations are not simply Germain's opinion about a matter before the VA. [He supposedly was tasked to do any investigation into the matter] Germain's statement about Walker merely harassing customers is likewise a factual assertion that is probably true or false. When Germain made these statements to the VA about Walker's business relationship to IHS or to THEIR subcontractor Winters, "a reasonable person, reviewing [Germain's] statements, would likely understand the statements to suggest or involve factual assertions rather than general opinion... [and these ] misrepresentation-based business tort claims are not precluded by the First Amendment" Rimini St., Inc. v. Oracle Int'l Corp., Case No. 2:14-cv-1699-LRH-CWH, at *15 (D. Nev. Sep. 21, 2017)" (EFC 197, pg 33, ll. 6-21)

Further,
"Given the numerous assertions by Walker emails to IHS, passed along to Germain, that Walker was a 2nd tier subcontractor (and Winters confirmation of such), Germain should've known better than to disavow Walker's connection with IHS "in any way", recommending Winters' termination, or attempt to get Winters to disavow his contract with Walker. Germain does not establish these as any ethical lawyerly acts. Germain cannot make "statements unfair or untrue." Rimini St., Inc. v. Oracle Int'l Corp., Case No. 2:14-cv-1699-LRH-CWH, at *13 (D. Nev. Sep. 21, 2017)" (EFC 197, pg 37-38, ll 13-3)

The Court, without noting SAC's numerous assertions of falsehood, jumped to the illogical conclusion that it:

"finds that Defendants' communications were at least made without knowledge they contained any false statements" (EFC 206 pg 7, ll. 10-11)

As shown above, the provisions (FAR 52.232-40) were in IHS's contracts that they had with the VA. The notion that Defendants wouldn't know that the definition under FAR 52.232-40 covers late payments to subcontractors and 2nd tier subcontractors escapes rationale.  Further, the notion the Defendants did not know they were never late in making payments to Winters also is odd.

Also, in responding to the VA,
"Germain had a legal and ethical duty to state the whole truth as to Walker's claims of being Winter's subcontractor (and, thus, IHS' 2nd tier subcontractor) to the VA. Pavicich v. Santucci (2000) 85 Cal. App. 4th 382, 397-398, 102 Cal. Rptr. 2d 125.) (holding that an attorney "had a duty to abstain from injuring [a third party] through express misrepresentation . . . . [¶] . . .[¶] . . . [`W]here one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. . . . One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.'") (EFC 197,  pg 34, ll. 22-28)

Lastly, violation of alleged ethical duties -- like those alleged against Germain, are not the type of activity that is subject to an Anti-Slapp suit. Castleman v. Sagaser 2013 WL 1984360 (Cal.App. 5 Dist.) (: "[a] growing body of case law holds that actions based on an attorney's breach of professional and **ethical duties** owed to a client are not SLAPP suits, even though protected litigation activity features prominently in the background." (Id. at *5.) )

11

Defendants, "were not candid and not directed towards the truth, however literally true some of [their] responses may have been"In the Matter of Keven A. McKENNA. 110 A.3d 1126, 1149 (RI 2015)

**6) WALKER WAS, AT THE MINIMUM, ENTITLED TO AN AMENDMENT SINCE THE COURT DID NOT CLEARLY UNDERSTAND THE SAC**

Oddly, the Court jumped from finding Walker's SAC was not **clear** (and disregarded a large portion of his response to a procedural rule about page limits it had earlier waived --EFC 184, pg 2) to absolute conviction in finding the SAC futile. If the Court found the SAC unclear, the proper response was to dismiss without prejudice and allow an amendment:

"Unless it is **absolutely clear** that no amendment can cure the defect, ... a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Lester v. J.P. Morgan Chase Bank, No. C 12-05491 LB, 15 (N.D. Cal. Jun. 18, 2013)("the court dismissed these claims **without prejudice** because, in short, **the court was unclear** what, exactly, Mr. Lester alleged Chase represented to him or why, exactly, those representations were false or misleading." )

"the Court **was unclear** on which avenue of subject matter jurisdiction Plaintiff was attempting to proceed and that Plaintiff failed to state a claim on which relief may be granted. **Plaintiff was directed to file an Amended Complaint addressing those deficiencie**s." Jones v. Wal-Mart Assocs., Inc., Case No. 3:13-cv-1254-J-34JRK, (M.D. Fla. May. 5, 2014)

Defendants allude to an unpublished case off-point case. Century Sur. Co. v. Prince, 782 F. App'x 553, 557 (9th Cir. 2019) (EFC 212, pg 2, ll. 22-26) Yet, in that case the "special motion to dismiss did not challenge 'the factual sufficiency' of Plaintiff's claims". Century Sur. Co. v. Prince This case is inapposite because the Court in THIS case ruled on the evidence --- the "factual sufficiency of Plaintiff's claims".

**7) SANCTIONS, IF ANY, ARE WARRANTED AGAINST DEFENDANTS (NOT WALKER)**

Defendants rely upon mere generalities that Walker's arguments are simply "frivolous", even though the Court initially found Walker's arguments about the SAC sufficient to uphold the Complaint (EFC 135, pg 9) If Walker was so frivolous, Defendants don't explain this.

In Walker's appeals he has never been labeled "unclear" or bringing "frivolous" issues. State v. Corsi, 686 N.W.2d 215 (Iowa 2004)(participated as researcher/draft writer); Yellow Book Sales v. Walker, 791 N.W.2d 429 (Iowa App. 2010)(participated pro se); Walker v. Charter Communs., Inc.,2018 U.S. App. LEXIS 30842 (9th Cir. Oct. 31, 2018)(participated as researcher) Defense counsel's only known federal appeal was lost in a similar case where "Despite its earlier

ruling, the district court reversed course in a brief order dismissing Complaint Two in full." Garity v. APWU Nat. Labor Organization, 828 F.3d 848, 854 (9th Cir. 2016).

By Contract Defendants backed the Court's initial decision to **DENY discovery** when it held it was simply **considering the Complaint** on the Motions to Dismiss. Defendants even claimed they were only challenging the complaint (not filing for summary judgment) (EFC 202, pg 5, ll. 23-24, "Defendants request that their 12(b)(6) motion not be converted to a summary judgment")  Now, when the Court converted their motions to summary judgment, challenging the **sufficiency of the factual evidence**, Defendants abandon their initial positions, assailing Walker for not providing evidence he was denied via discovery. (EFC 212, pg 5, ll. 26-27, "Walker submitted no evidence of his allegation of "deceptive half truths"")  Defendant's have abandoned their role as attorneys with candor and good faith. United States v. Shaffer Equipment Co., 11 F.3d 450, (4th Cir.1993) (" recognizing the "broader general duty of candor and good faith required to protect the integrity of the entire judicial process.") If any sanctions, issue, it should be against Defense counsel.

### III. CONCLUSION

There is "clear error" and "manifestly unjust"[ness] of the Courts rulings and the process (or lack thereof) in which it was obtained. School Dist. No. 1J v. ACandS, Inc. Id. Defendants make conclusory claims which have no merit. Defendants do not specifically address Walker's assertions and the Court should find that they conceded these issues. Bojorquez v. Wells Fargo Bank, NA, 2013 WL 6055258, *5 (D.Or. Nov. 7, 2013) ("if a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded")

**WHEREFORE**, Walker prays for an ORDER reversing its judgment and having a hearing.

Respectfully submitted,
By /s/  Terrance Walker                              Dated:  Mar. 20, 2020
Terrance Walker

### CERTIFICATE OF SERVICE

The undersigned certifies that the undersigned is over the age of 18 and that on Mar 20, 2019, that he personally served, through the court's electronic filing system and U.S. mail, one copy of this filing to the parties listed below.   /s/ TERRANCE WALKER signed, Terrance Walker

Copy to:
Will & Kristen Geddes, Esq.
THE GEDDES LAW FIRM, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455  Fax: (775) 853-6899
Will@TheGeddesLawFirm.com,
E-Mail: kristen@thegeddeslawfirm.com

Hall Jaffe Clayton LLP
Steven T. Jaffe
7425 Peak Drive
Las Vegas NV 89128
E-Mail:
Email: sjaffe@lawhjc.com, msylva@lawhjc.com
cwagner@lawhjc.com, lholding@lawhjc.com,
mschwarz@lawhjc.com